SEP-28-2011 14:59 From:9547574981



## JETPAY ISO SERVICES, LLC
## INDEPENDENT SALES AGENT AGREEMENT

THIS JETPAY ISO SERVICES, LLC INDEPENDENT CONTRACTOR AGREEMENT (this "Agreement") is entered into by and between JETPAY ISO SERVICES, LLC, a Texas Limited Liability Company, with its principal place of business at 3361 Boyington STE 160, Carrollton, TX 75006 ("JISO"), and _Chilly Dill Consulting_ a _Florida_ Corporation _6155 NW 76th Ct, FL 33016_ ("Agent").

**WHEREAS**, JISO is a registered Independent Sales Organization ("ISO") with VISA, U.S.A., and a registered Member Service Provider ("MSP") with MasterCard, International, and maintains contractual agreements with MasterCard, VISA U.S.A. and Member Banks (hereinafter "Banks"), whereby JISO solicits prospective merchants to apply to Banks for Merchant Processing Agreements, and provides various merchant account services to Banks; and,

**WHEREAS**, JISO desires to retain Agent as an independent contractor and non-exclusive sales Agent to assist JISO in soliciting prospective Merchants to apply to Banks for Merchant Processing Agreements and in providing various Merchant services to Banks, and Agent desires to render such assistance to JISO in accordance with the terms and conditions of this Agreement.

**NOW, THEREFORE**, JISO and Agent, in consideration of the mutual covenants and agreements, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, agree as follows:

### DEFINITIONS

For purposes of this Agreement, the following terms shall have the meaning set forth below:

(a) **Bankcard** means a credit card or debit card issued by a member of either MasterCard or VISA and bearing its respective trade names, trademarks, and/or trade symbols.

(b) [Intentionally Left Blank]

(c) **Cardholder** means (i) a person whose name is embossed upon the face of a card or (ii) any authorized user of a Bankcard.

(d) **Chargeback** means a disputed charge by a Cardholder or rejected Sales Draft that is returned unpaid for any reason by the issuer of the Bankcard.

(e) **Confidential Information** means all proprietary, secret or confidential information or data relating to either party and its affiliates, operations, employees, products or services, clients, customers or potential customers. Confidential Information shall include customer lists, Cardholder account numbers, pricing information, computer access codes, instruction and/or procedural manuals, and the terms and conditions of this Agreement. Information shall not be considered Confidential Information to the extent, but only to the extent, that such information is: (i) already known to the receiving party free of any restriction at the time it is obtained; (ii) subsequently learned from an independent third party free of any restriction and without breach of this Agreement; (iii) or becomes publicly available through no wrongful act of the receiving party; (iv) independently developed by the receiving party without reference to any Confidential Information of the other; or (v) required to be disclosed by law.

(f) **Credit Transaction** means the exchange, return of, and adjustment on merchandise or services sold by a Merchant in a Sales Transaction and the face amount thereof when used in this Agreement in reference to payments to the Cardholder.

Initials: _RW_
Initials: _____

**EXHIBIT** _A_

SEP-28-2011 14:59 From:9547574981



(g) **Front-End Products** means all products used in the authorization, draft capture and settlement process.

(h) **Interchange Fee** means the then-current fee charged by MasterCard and VISA for each Transaction.

(i) **MasterCard** means MasterCard International, Incorporated.

(j) **Merchant** means each merchant directly solicited by Agent on behalf of JISO and Banks that becomes a party to a Merchant Processing Agreement with JISO and/or Banks due to Agent's efforts.

(k) **Merchant Processing Agreement** means a written agreement entered into between the Banks and a Merchant pertaining to Transactions involving the Merchant.

(l) **Program** means the program of Merchant participation in the MasterCard and VISA systems described in the Merchant Processing Agreement.

(m) **Program Standards** means the credit criteria, standards and policies and procedures established by JISO and Banks to be used by Agent in connection with the solicitation of prospective Merchants and other policies and procedures established by JISO and Banks that are designed to promote Merchant satisfaction, to preserve relationships with existing Merchants, to facilitate the growth of the Program, and to ensure the financial safety or soundness of JISO, the Banks and their Program.

(n) **Rules** means all bylaws, rules, operational regulations, procedures and guidelines promulgated by MasterCard and/or VISA, as they may from time to time be amended.

(o) **Sales Draft** means a form provided or approved by Banks to be executed by a Cardholder as evidence of a purchase of merchandise or services from a Merchant through the use of a Bankcard.

(p) **Sales Transaction** means a sale by a Merchant of merchandise or services through the use of a Bankcard and the face amount thereof when used in this Agreement in reference to payments to the parties.

(q) **Transaction** means a Visa or MasterCard Sales Transaction, Credit Transaction, or Chargeback.

(r) **VISA** means VISA U.S.A., Inc. or VISA International.

(s) **Negative Merchant Income** means any occurrence where Merchant costs exceed income, including and not limited to Merchant Chargebacks or lack of payment.

## 2. RELATIONSHIP OF THE PARTIES

JISO and Agent acknowledge and agree that Agent's relationship with JISO is solely that of an independent contractor and nothing contained in this Agreement shall be construed to constitute JISO and Agent as partners, joint venturers, co-owners or otherwise as participants in a joint or common undertaking. Agent shall have no power or authority, express or implied, to represent, act for, or otherwise create or assume any obligation on behalf of, or binding upon, JISO other than as expressly set forth in this Agreement. As a Agent, it is understood and agreed that Agent

Initials: ___
Initials: ___

SEP-28-2011 14:59 From:9547574981



is not entitled to participate in any group medical plans, pension plans, bonus, stock, or similar benefits that JISO provides to its employees. It is further understood that Agent is responsible for paying (and that JISO has no responsibility to withhold on Agent's behalf) any and all required state and federal taxes, including, but not limited to FICA (Social Security), unemployment insurance, federal or state income taxes, disability insurance and worker's compensation insurance.

### 3. APPOINTMENT OF AGENT AS NON-EXCLUSIVE SALES AGENT

JISO appoints Agent, on a non-exclusive basis, and Agent accepts such appointment, as a marketing and sales Agent of JISO for the purpose of soliciting prospective Merchants to make application to Banks for Merchant Processing Agreements, and to provide various Merchant account services on behalf of Banks as more specifically set forth in this Agreement. Agent shall utilize its best efforts in the performance of its obligations hereunder, and shall at all times conduct itself in a reputable manner and in full compliance with all applicable laws, rules, regulations, decisions and orders, including any and all applicable rules and regulations of VISA and MasterCard. Agent understands that this Agreement is non-exclusive as to JISO, and that JISO reserves the right to enter into similar agreements with other independent contractors as marketing and sales Agents of JISO. Agent is acting as a non-exclusive Agent and that: (i) Agent may enter into similar agreements or arrangements with other ISO's or Member Banks to act as a marketing and sales Agent to solicit Merchant Processing Agreements; (ii) It is in the sole discretion of Agent to decide which Agent or Member Bank that Agent may solicit and/or offer any merchant package or Merchant Processing Agreement. It is understood that the foregoing shall not preclude Agent from using sub-agents in the performance of activities by Agent unrelated to the duties and obligations of Agent in Paragraph 4 below. Agent understands and acknowledges that the utilization or employment of any sub-agents by Agent in violation of the terms and conditions of this Agreement, is a violation of regulations of VISA and/or MasterCard.

### 4. DUTIES OF AGENT

The duties and obligations of Agent shall be as follows:

(a) **Solicitation.** Agent will use its best efforts to solicit prospective Merchants to execute Merchant Processing Agreements with JISO and Banks. Agent will (i) communicate to Merchants the existence and availability of the Program, provided that the nature and content of such communication shall be approved by JISO and Banks; (ii) distribute promotional materials approved by JISO and Banks regarding the Program to Merchants in a manner specified from time to time by JISO and Banks; and (iii) perform other reasonable services which JISO deems desirable to promote and market the Program. It is understood and agreed that JISO shall own all rights in the Merchant Processing Agreements solicited under this Agreement.

(b) **Information.** Agent shall instruct Merchants to furnish JISO with such financial information as JISO may from time to time request. Agent will use its best efforts to inform JISO of any information that it reasonably considers relevant to an existing or potential Merchant's creditworthiness. Agent shall follow the Visa and MasterCard Association Standards in soliciting prospective Merchants.

(c) **Duties.** Agent shall obtain such information and take such action as JISO may from time to time require in connection with its processing applications of prospective Merchants, including, without limitation:
(i) Assist each Merchant in fully completing JISO's Merchant Processing Application

Initials: ____
Initials: ____

SEP-28-2011 15:00 From:9547574981



(ii) Take all necessary action to verify that each prospective Merchant conducts or intends to conduct a bona fide business operation, including, but not limited to, inspecting the Merchant's premises to determine whether Merchant has the proper facilities, equipment, inventory and license or permit, if necessary, to conduct the business;

(iii) Submit a written inspection report to JISO in such form as JISO may from time to time designate; and

(iv) Obtain and submit to JISO, as required by JISO and/or Banks, financial statements, Bankcard statements and corporate resolutions for each prospective Merchant. Agent warrants that as of the date of submission to JISO, the inspection report and all other information provided to JISO by Agent shall, to Agent's knowledge, be correct,
complete and not misleading. Notwithstanding the foregoing, JISO acknowledges and agrees that Agent is not obligated to verify any financial information and makes no warranties regarding the accuracy of any financial information.

(d) **Assistance.** Agent will use its best efforts to cause each Merchant to fully pay and perform its obligations under the Merchant Processing Agreement and shall have joint responsibility in collecting any amounts owed by a Merchant to either JISO and/or Banks.

(e) **Merchant Fees.** Agent shall be entitled to charge and collect directly from each prospective Merchant a reasonable fee or charge for completing and submitting a completed Merchant Processing Agreement to JISO and for the sale or other provision of point-of-sale terminals and other electronic devices, imprinters and other supplies. Such fees and charges shall be established by JISO and Banks from time to time, with the exception of items specified in paragraph 4(f). All such approved fees and charges must be (i) clearly and conspicuously disclosed to each prospective Merchant and shall be disclosed in writing and provided to the prospective Merchant in advance of submission of the Merchant Processing Application for consideration by JISO, and (ii) charged and collected in accordance with all applicable laws and regulations and the Rules. In the event a Merchant or prospective Merchant is entitled to a refund of any such fee or charge, Agent will refund said fee or charge in full no later than thirty (30) days from the date on which the Merchant or prospective Merchant is entitled to such refund or immediately upon demand by JISO or a Merchant for a refund, whichever is earlier.

(f) **Equipment.** The sale and/or rental of point-of-sale terminals and other equipment shall be solely pursuant to separate written agreements between Agent and the Merchants. Agent agrees that JISO and Banks assume no responsibility and shall not be liable in any manner for any such sale or rental.

## 5. COVENANTS AND WARRANTIES OF AGENT

Agent warrants and represents to JISO the following:

(a) **Rules and Regulations of Master Card and Visa:** Agent is familiar with and understands all of the rules and regulations of VISA and MasterCard (including authorized, legitimate and proper use of VISA, MasterCard and affiliated credit card marks and names), and expressly agrees that it shall strictly abide by all such rules and regulations, as those rules and regulations may be amended from time to time. Agent agrees that it shall indemnify and hold Banks and JISO harmless for any violation of those rules and regulations by Agent.

(b) **Disclosure of Representation** Agent shall disclose to each prospective Merchant the fact that Agent is acting as an independent sales Agent of JISO and the identity and location (address) of Banks. During the term of this Agreement, Agent is authorized to display the names and/or trademark of JISO on Agent's business cards and solicitation materials, subject, however to JISO's approval, such approval not to be unreasonably withheld. Only a registered Agent that

Initials: ___
Initials: ___

4

SEP-28-2011 15:01 From:9547574961



has a direct written contract with Visa or MasterCard may perform services on their behalf. The requirements of this paragraph will be considered fulfilled upon the receipt by JISO of a letter from Agents registering institution stating that Agent is a registered ISO/MSP.

(c) Non-interference So long as any Merchant Processing Agreement of any Merchant solicited by Agent remains in effect, Agent shall not interfere in any manner whatsoever with the contractual rights and interests of Banks and/or JISO under any such Merchant Processing Agreement, either directly or indirectly (including, without limitation, through any partnership, joint venture as an employee or other entity or arrangement whatsoever), or to cause or attempt to cause any approved Merchant or other merchant of Banks and/or JISO to engage in Bankcard transaction processing through any person or entity other than Banks and/or JISO. The covenants of Agent and all other provisions of this Subparagraph 5 (c), shall survive termination of this Agreement.

### 6. COMPENSATION OF AGENT

Subject to the provisions of this Agreement, including without limitation the provisions of Paragraph 10 and Paragraph 11 below, Agent shall be entitled to receive from JISO as compensation for the services rendered by Agent the following:

(a) Fee on Net Sales. Agent shall be entitled to receive compensation as shown on Schedules A, B and C attached and part of this Agreement, for so long as JISO is receiving its corresponding compensation from Banks for such approved Merchant, provided, however, that in any instance where this Agreement is terminated by JISO for any of the reasons enumerated in Paragraph 10 or Paragraph 11, all payments to Agent shall cease, and JISO shall have no further obligation to make any such payments. JISO shall have the right to amend the provisions of Schedules A, B and C hereto by giving Agent not less than thirty (30) days prior written notice of the upcoming change.
(b) Merchant Losses. All Negative Merchant Income not covered by the Merchant will be borne by JISO, Agent will be liable to JISO for all losses, fines, fees, and expenses arising out of Agents fraud, negligence, or failure to comply with the terms of this Agreement.

### 7. ACCOUNTING AND PAYMENT

JISO shall pay all fees due and owing to Agent calculated each month under Paragraph 6 (a) above within thirty (30) days after receipt from Bank by JISO.

### 8. REPORTING

In conjunction with each monthly fee payment, if any, from JISO to Agent pursuant to the provisions of Paragraphs 6(a) and 7 above, JISO shall provide to Agent a report setting forth the basis upon which the fee payment is computed.

### 9. TERM OF AGREEMENT

Subject to Sections 10 and 11, this Agreement shall be effective upon the execution by both parties and shall continue for an initial term of one (1) year, and at the expiration of the initial term (and any renewal term), then this Agreement shall automatically renew for consecutive additional one (1) year terms. Either party may terminate this Agreement, unilaterally and without cause, at the expiration of the initial term or any renewal term, upon no less than ninety (90) days written notice to the other party. Either party may elect on not less than three (3) days prior written notice to terminate this Agreement at any time during the initial ninety (90) day period of this Agreement,

Initials: _____
Initials: _____

SEP-28-2011 15:01 From:9547574981



for any reason whatsoever, or for no reason, in its sole discretion. In the event of termination under this Paragraph 9, Agent shall continue to receive compensation as described in Paragraph 6(a) above.

## 10. TERMINATION BY JISO

Notwithstanding any terms to the contrary in this Agreement, this Agreement may be terminated by JISO upon the occurrence of any of the following:

(a) **Regulatory Order** JISO may immediately terminate this Agreement upon written notice to Agent if JISO, Agent and/or Banks become subject to any change in a statute, law, rule, regulation, policy or other official pronouncement of any state or federal government entity, regulatory agency or of MasterCard and/or VISA which would prohibit JISO, Agent and/or Banks from continuing the business described in this Agreement.

(b) **Breach of VISA/MasterCard Rules** JISO may immediately terminate this Agreement upon written notice to Agent, if Agent materially violates any of the rules or regulations of VISA and/or MasterCard.

(c) **Loss of VISA/MasterCard Membership: Bank Relationship** JISO may immediately terminate this Agreement upon written notice to Agent, if: (i) JISO's de-registration with VISA as Agent and/or JISO's de-registration with MasterCard as an MSP; (ii) termination of Bank's VISA and/or MasterCard license, its membership in VISA and/or MasterCard, or both; (iii) termination of JISO's agreement with Banks; or (iv) termination of registration of Agent with VISA and/or MasterCard.

(d) **Failure to Comply with Applicable Laws, Rules, and Regulations** JISO may immediately terminate this Agreement upon written notice to Agent that Agent has materially failed to comply with or violate any applicable laws, rules and/or regulations relating to the performance of Agent under this Agreement, including without limitation, the commission of any material act of dishonesty, fraud, misrepresentation, or other act of moral turpitude.

(e) **Unsound Business Practices** JISO may immediately terminate this Agreement upon written notice to Agent, if JISO determines in good faith that Agent's conduct under this Agreement constitute unsound business practices, or might have an adverse effect on JISO or Banks' reputation, or impose a financial risk to JISO or Banks.

## 11. TERMINATION BY EITHER PARTY

In addition to any other remedies, either party may terminate this Agreement immediately upon written notice to the other party, if:

(a) **Material Breach** The other party commits a material breach which is not cured within five (5) days after receipt of written notice from the non-breaching party (or in the event such breach can be cured but cannot reasonably be cured within five (5) days then within such longer period of time (not to exceed sixty (60) days) as is required to cure, provided the breaching party promptly commences and diligently pursues remedial action to completion.

(b) **Insolvency** The other party files a voluntary petition in bankruptcy or files a petition seeking or acquiescing in any relief for itself under any federal, state or other law relating to bankruptcy, insolvency or other relief for debtors; or seeks or consents to in the appointment of any trustee, receiver or liquidator of all or any part of its property; or admits in writing its inability to pay its debts generally as they become due.

Initials: ___
Initials: ___

6

SEP-28-2011 15:01 From:9547574981



(c) **Dissolution** The other party is dissolved or otherwise ceases to engage in its normal business operations and is unable to fulfill its obligations under this Agreement.

(d) **Ownership of Merchant Accounts** Should this Agreement be terminated for any reason, ownership of Merchant accounts shall remain with JISO.

## 12. INDEMNIFICATION

Agent shall indemnify, defend, and hold harmless JISO and Banks, their employees, officers, directors, shareholders, agents, corporate parents and affiliates against any and all claims, liabilities, losses, damages, costs or expenses (including, without limitation, fees and expenses of attorneys and consultants and court costs) either directly or indirectly related or attributable to the negligence or wrongful act of Agent, or any of its employees, agents or nominees, in performance hereunder, or the breach of this Agreement or any provision hereof by Agent, or any of its employees, agents or nominees in any way associated with or related to this Agreement. This indemnification obligation of Agent shall include, without limitation, any and all claims for contractual, tortuous, exemplary, punitive or statutory damages of any nature whatsoever and any and all injunctive or other equitable relief. Agent's covenants in this Paragraph 12 shall survive any termination of this Agreement.

JISO shall indemnify, defend, and hold harmless Agent, their employees, officers, directors, shareholders, agents, corporate parents and affiliates against any and all claims, liabilities, losses, damages, costs or expenses (including, without limitation, fees and expenses of attorneys and consultants and court costs) either directly or indirectly related or attributable to the negligence or wrongful act of JISO, or any of its employees, agents or nominees, in performance hereunder, or the breach of this Agreement or any provision hereof by JISO, or any of its employees, agents or nominees in any way associated with or related to this Agreement. This indemnification obligation of JISO shall include, without limitation, any and all claims for contractual, tortuous, exemplary, punitive or statutory damages of any nature whatsoever and any and all injunctive or other equitable relief. JISO covenants in this Paragraph 12 shall survive any termination of this Agreement. JISO shall have no liability to provide indemnification hereunder to the extent any losses, liability, damages, penalty or expenses (including attorney's fees and cost of defense) is caused or contributed to by Agent.

## 13. LIMITATION OF LIABILITY

Notwithstanding anything in this Agreement to the contrary, in no event shall either party, its respective affiliates or any of their respective directors, officers, employees, agents or subcontractors, be liable under any theory of tort, contract, strict liability or other legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, regardless of whether the damages were foreseeable or whether any party has been advised of the possibility of the damages.

## 14. FORCE MAJEURE

Neither party shall be liable for any failure to perform any obligations under this Agreement because of acts of God, nature or a federal, state or local government agency, war, civil disturbance, labor disputes or shortages, electrical or mechanical breakdowns, or any other cause beyond the control of that party, including the issuance of an injunction by either a state or federal court prohibiting the party from carrying on its day-to-day operations as contemplated under the terms of this Agreement.

Initials: _____
Initials: _____

SEP-28-2011 15:02 From:9547574981



### 15. PROPRIETARY INFORMATION OF JISO

Agent acknowledges and agrees that JISO has expended great time and effort in developing its merchant account services for the retail marketplace. Agent further acknowledges that all Confidential Information of JISO shall be regarded by Agent as confidential and proprietary. JISO Confidential Information includes, but is not limited to, information pertaining to JISO business methods, all information relating to Merchants accepted by JISO, details regarding the functioning of the computer systems, trade secrets, know-how, inventions, techniques, processes, programs, schematics, software source documentation, customer lists, financial information, sales, business and marketing plans and all of the contracts and correspondence generated by JISO concerning the same. Agent's use of JISO Confidential Information is limited to the term of this Agreement. Agent shall not use or disclose any JISO Confidential Information to any other person or entity during the term of this Agreement and for three (3) years thereafter. Agent agrees that upon the expiration or termination of this Agreement, all JISO Confidential Information in Agent's possession will be returned to JISO within thirty (30) days of such expiration or termination. This Paragraph shall be inoperative as to such portions of information which (i) are or become generally available to the public other than as a result of any breach of this Agreement by Agent or its agents or employees, or (ii) becomes available to Agent on a non-confidential basis from a source other than JISO, which source is entitled to disclose that information. In the event that Agent is advised that it is under a legal obligation to disclose JISO Confidential Information, and provided that a protective order or other remedy is not obtained or JISO waives compliance with the provisions of this Agreement, Agent will furnish only that portion of the information which is legally required and will exercise its best efforts to obtain reliable assurances that confidential treatment will be accorded the information.

### 16. NOTICE

Any notice that the parties are required or may desire to deliver shall be delivered by facsimile transmission, with a confirming copy sent by United States mail, certified or registered, return receipt requested, proper postage prepaid to the other party at the address set forth below. Such notice shall be deemed delivered on the date of receipt, which shall be evidenced by a signed confirmation receipt by the U.S. Postal Services or other courier or delivery services.

### 17. MEDIATION AND ARBITRATION

If any dispute between JISO and Agent arising under this Agreement cannot reasonably be resolved by the parties through mutual negotiation, the parties hereto agree that the claim or dispute will be resolved by mediation and/or arbitration as set forth in this Paragraph. Any dispute under this Agreement will first be submitted to informed and non-binding mediation in Dallas, Texas before an impartial mediator or referee acceptable to both parties, who will hear the issues and attempt to guide the parties to a fair and equitable resolution. If the dispute or claim cannot be resolved through mediation, the parties agree that the matter will then be submitted to and decided by arbitration to be conducted in Dallas, Texas under the Commercial Arbitration Rules of the American Arbitration Association, in front of a sole arbitrator selected by the parties (who does not have to be an American Arbitration Association arbitrator) and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Each party shall bear its own expenses and attorneys' fee incurred in connection with these dispute resolution procedures and will share equally the fees and expenses of the mediator or arbitrator, regardless of the outcome of the mediation or arbitration. Should a party not participate in arbitration, the non-participating party shall have a default judgment for the amount in dispute entered against it, plus costs of the participating party's fees and expenses for the arbitration

Initials: _____
Initials: _____

8

SEP-28-2011 15:03 From:9547574981



proceeding. This agreement to mediate or arbitrate waives any right to trial by jury.

### 18. GOVERNING LAW

This Agreement, and all the documents referred to herein, shall in all respects, be interpreted, enforced and governed by and under the laws of the state of Texas, without regard to its principles of conflicts of laws.

### 19. CREDIT AND BACKGROUND INVESTIGATION

Agent authorizes JISO to obtain, from time to time, credit, financial and other information regarding Agent (including information regarding prior criminal convictions) from other persons or entities, including commercial and consumer reporting agencies and private investigators. Agent consents to such background investigation and releases JISO from any and all claims, demands or liabilities arising out of or in any way related to such investigation.

### 20. ASSIGNMENT

No interest or right of Agent under this Agreement shall be assigned or transferred in any manner by Agent without the express written consent of JISO, such consent to not be unreasonably withheld. JISO may assign this Agreement at any time without prior written notice to Agent. Subject to the foregoing, this Agreement, including but not limited to all schedules and attachments, shall be binding upon and inure to the benefit of the parties and their successors and assigns.

### 21. COUNTERPARTS

This Agreement may be executed in one or more counterparts, by facsimile, each of which shall be deemed an original and all of which, taken together, shall constitute a single agreement. All signatories agree to execute a conformed copy of this Agreement within thirty (30) days of the execution of counterparts thereto.

### 22. MODIFICATION

This Agreement may be modified only by a writing which has been signed by both parties. Notwithstanding the foregoing, JISO shall have the right to amend this Agreement unilaterally in the event that any provision of this Agreement is deemed to be in violation of any rule or regulation of VISA or MasterCard, provided that JISO shall give Agent immediate written notice of any such amendment.

### 23. INVALIDITY

Should any portion of this Agreement be held to be invalid, unenforceable or void, such holding shall not have the effect of invalidating or voiding the remainder of this Agreement and the parties agree that the portion held invalid, unenforceable or void, shall, if possible, be deemed amended or reduced in scope, or otherwise be stricken from the Agreement, to the extent required for the purpose of the validity and enforcement.

### 24. AUTHORITY

All signatories executing this Agreement represent that they have the full right, capacity and authority to enter into this Agreement and perform the Agreement.

Initials: ___
Initials: ___

9

SEP-28-2011 15:03 From:9547574981



### 25. WAIVER

No waiver of any term, covenant, condition or obligation of this Agreement or any breach, shall be effective unless granted in writing. The waiver by any of the parties of any term, covenant, condition or obligation of this Agreement or of any breach of this Agreement shall not be deemed to be a waiver of any other term, covenant, condition or obligation of this Agreement or any prior, concurrent or subsequent right.

### 26. CAPTIONS

The captions in this Agreement are for convenience only and shall not be considered a part of this Agreement or affect the interpretation of any provision.

### 27. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement of the parties and supersedes all prior agreements, understandings and contracts between the parties with respect to its subject matter.

IN WITNESS WHEREOF, the parties have executed this Agreement by their duly authorized officers.

Accepted this __11th__ day of __Sept__, 20__11__.

AGENT

Print Name: _____

By: _____

JETPAY ISO SERVICES LLC

By: _____

Initials: _____
Initials: _____