**EXPERT REPORT REGARDING COMPENSATION OF CHILLY DIL CONSULTING, INC.**

**BY JETPAY ENTITIES**

*By*:

Rod R. Katzfey

Katzfey's International

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

October 5, 2015

## I.    QUALIFICATIONS

**A.** I am the principal of Katzfey's International.  The company specializes in electronic payments consulting that includes due diligence, contract review, reputational risk along with strategic planning.  Previous work also includes litigation, deposition and pre-trial work.

**B.** I have been working and consulting in the banking and electronic payments industry since 1992; this includes International and US Domestic Processing, Banking, Payment Gateway & Gift Cards for the following organizations:

- ABN AMRO Merchant Services
- Bank of America Merchant Services
- Boatmen's Merchant Processing Co./First Data
- Boatmen's Bank of Southern Missouri
- Comdata Processing Systems
- Credorax Group
- PayLeap USA
- Unified Merchant Services/First Data
- U.S. Bank Merchant Services

**C.** I have held various positions in the above companies in no corresponding or particular order that included:

- COO
- SVP – General Manager
- VP of Sales
- VP of Enterprise Sales & Business Development, NA
- Territory Manager
- Account Executive
- New Accounts, Loan Representative and Teller

**D.** I received a Bachelor of Science in Accounting from Missouri State University.

**E.** I am very active in the electronic payments industry through participation in the following volunteer groups:

- Board Vice President - Midwest Acquirers Association (MWAA)        2014 – Current

- Director – Midwest Acquirers Association (MWAA)            2007 - 2014
- Member – ETA Nominating Committee for the Board of Directors   2015 – Current
- Member - First Data Advisory Council                      2011 – 2012
- Member - Discover Network Acquirer Operating Committee    2008 – 2010
- Advisory Board Member - The Green Sheet                   2009 – Current
- Advisory Board Member - ISO & Agent Weekly               2008 – Current
- Advisory Board Member - Midwest Acquirers Association (MWAA)   2005 – 2007

## II.      REPORT OBJECTIVES

**A.** In this case, I have been asked to review the complaint, ISO agreement, referral agreement, merchant agreement, and commission report(s) along with emails to formulate an opinion as to the accuracy of the accounting for referral fees provided to Chilly Dil.

**B.** I have been retained by David Steiner & Associates, attorneys for the Plaintiff.

**C.** Charges for reviewing, preparation and developing this report along with any deposition or trial testimony, time related to preparation for those activities and travel will be billed at $400 per hour.

**D.** In preparation for this report and analysis of findings, I reviewed the following materials:

- The Complaint for Damages and Accounting
- Defendant's Answer to the Complaint for Damages and Accounting
- JETPAY ISO Services, LLC Independent Sales Agent Agreement for Chilly Dil Consulting dated September 11, 2011
- JetPay Merchant Application & Agreement for Confidential Merchant dated and signed on September 26, 2013
- Referral Agreement between JetPay Solutions LTD and Chilly Dil Consulting Group dated February 7, 2014
- Tripartite Merchant Agreement between Bank Frick & CO AG, JetPay Solutions Limited and Payments Solutions BV dated February 2014 (Signed February14 and February 17)
- Emails ranging in date from August 7, 2013 – June 4, 2014 including individuals Patricia Weber, Todd Fuller, Trent Voigt and Carl Ferrer

- Commission Statement(s)
- Form 10-K for JetPay Corporation

### III.    SUMMARY OPINION

####    A.    The Payment Processing Structure

By way of background, in the payment hierarchy, the card associations, Visa USA, Inc. ("Visa") and MasterCard International ("MasterCard") (collectively, the "Associations") are at the top of the processing pyramid. These Associations have direct agreements with banking institutions, like Wells Fargo and JP Morgan Chase, which issue the cards and accept payments made using Visa and MasterCard bankcards. Thus, pursuant to the agreements with the Associations, banking institutions are able to process payments made using Visa and MasterCard bankcards, provided that the banking institution abides by Visa and MasterCard's regulatory framework. This process is called "acquiring" and the banks are often referred to as "acquirers." In this case, the acquirer is Bank Frick.

Directly below the banks are processors, which sometimes do and sometimes do not have agreements with the card Associations. These processors are known as independent sales organizations or "ISOs." The ISOs are the ones who solicit relationships with merchants desiring to set up accounts that would enable them to process Visa, MasterCard, Discover and American Express payments. ISOs also manage the day-to-day activities of the merchants, including returns, chargebacks, fraud activity and other issues that arise in the day-to-day operations. Here, there are a number of ISOs. One is JetPay ISO Services, LLC. Another is JetPay Solutions Ltd.

Typically, ISOs identify merchant clients in two ways: one is by direct contact through its own sales agents or, alternatively, through a referral. Referring merchants in the payment processing space is a big business and individuals and companies often focus solely on the sales side of the business, i.e. locating suitable merchants and referring them to ISOs for boarding. In the industry, such a referring agent is called an "independent sales agent" or a "reseller." Plaintiff Chilly Dil is such an independent sales agent. Thus, Chilly Dil locates and develops relationships with online merchants who Chilly Dil then refers to companies like JetPay ISO who in turn set up the merchants for processing with acquirer banks. A reseller receives compensation from the intermediary companies like JetPay ISO for as long as a particular referred merchant remains in good standing with the intermediary company, and for as long as it processes through acquiring banks introduced by intermediaries like JetPay ISO. Referral fees

typically consist of a percentage of the profits realized by the ISO from the merchant relationship.  The profit, in turn, typically consists of a percentage of the discount fee realized by the ISO as a profit and, also a portion of the add on "transaction fees" charged by the processor to the merchant.

The following graphic demonstrates the hierarchy of the payment processing structure and Chilly Dil's role in that hierarchy:



**B.    The Parties**

Plaintiff Chilly Dil Consulting Inc. ("Chilly Dil") is a Florida corporation, with its principal place of business located at 1001 Yamato Road, Suite 305, Boca Raton, Florida 33431.  Its owner and

CEO is Patricia Weber Carlin, who has been involved in the e-commerce payment processing industry since 1999. Chilly Dil is what is known in the industry as a "reseller."

Defendant JetPay ISO Services, LLC ("JetPay ISO") is a Texas limited liability company, with its principal place of business located at 3361 Boyington Drive, Suite 180, Carrollton, Texas 75006.

Plaintiff is informed that Defendant JetPay, LLC is a Texas limited liability company, with its principal place of business located at 3361 Boyington Drive, Suite 180, Carrollton, Texas 75006. JetPay, LLC does business under the name JetPay Payment Services. Plaintiff understands based on JetPay Corporation's 10-K for 2013, that JetPay ISO also is sometimes referred to as JetPay, LLC and that they both do business under the name JetPay Payment Services. That 10-K also suggests that JetPay ISO is a wholly-owned subsidiary of JetPay, LLC. JetPay ISO and JetPay, LLC are collectively referred to herein as the "JetPay Texas entities."

Defendant JetPay Corporation is a Delaware corporation, with its principal place of business located at 1175 Lancaster Avenue, Suite 100, Berwyn, Pennsylvania 19312. Its stock is publicly traded on NASDAQ (symbol "JTPY").

Defendant Trent Voigt is the Chairman of JetPay, LLC and is the direct or indirect owner of Wles LP, the sole member of JetPay, LLC.

### C.    Chilly Dil's Introduction of Confidential Merchant to Trent Voight

The following factual background is taken from the allegations of the Complaint filed on behalf of Chilly Dil and attached as Exhibit A hereto.

In 2013, Chilly Dil and its owner, Patricia Weber-Carlin developed a relationship with a very large e-commerce subscription website, Confidential Merchant. Confidential Merchant had hundreds of thousands of transactions each month with a very low chargeback rate but was losing its acquirer. Chilly Dil had previously found a European acquirer for Confidential Merchant.

In August 2013, Patricia contacted Todd Fuller of JetPay ISO Services, LLC and presented the Confidential Merchant opportunity to JetPay ISO pursuant to the 2011 Independent Sales Agent Agreement. She stressed that a U.S. acquirer was sought and that Confidential Merchant already had one based in Europe.

In August 2013, Mr. Fuller confirmed that the 2011 Agreement was still in force and applicable to the Confidential Merchant referral, and that the acquisition/merger transaction involving JetPay Corporation that had closed around December 2012 did not affect the 2011 Agreement. Mr. Fuller

noted that Schedule A of the 2011 Agreement was applicable.  There were discussions both by telephone and through many emails of specific referral compensation details such as the "splits."

On or about August 26, 2013, Patricia conducted a conference call to formally introduce her main contact at Confidential Merchant to Trent Voigt and Todd Fuller of the JetPay Texas entities and to walk through the model of how things would work if a U.S. bank acquirer accepted Confidential Merchant.  In that call, Mr. Voigt gave the main contact at Confidential Merchant his direct line phone number.  In the weeks that followed, Patricia learned that Mr. Voigt was often having communications with the main contact by phone and email that she did not know about at the time.  A proposal was presented to a U.S. bank acquirer to establish a merchant services account for Confidential Merchant.

In October 2013, Trent Voigt informed Chilly Dil that the Jetpay Texas entities were trying to set up Confidential Merchant with a European acquirer bank, even though Patricia had already informed him that a European bank was not needed and that the need was for a U.S. acquiring bank.

In December 2013, Chilly Dil complied with the JetPay Texas entities' request that it set up a personal meeting where personnel from Confidential Merchant could tour the JetPay Texas entities' facilities with Trent Voight.  In mid-December, Trent Voigt informed Chilly Dil that the U.S. bank had denied Confidential Merchant's application but a European bank was still in the picture.  The contact at Confidential Merchant provided Patricia with a copy of a proposed contract between Confidential Merchant and a European bank that Trent Voigt was advocating that Confidential Merchant enter into.

In January 2014, Confidential Merchant let Patricia know that it was in the process of testing with that European bank that Trent Voigt had convinced Confidential Merchant to utilize as an acquirer.  Trent Voight for Defendants established pricing on the account without Plaintiff's knowledge, nor provided proposed or established buy rates, to Plaintiff.

Throughout the October 2013 through February 2014 period, Patricia had difficulty reaching Trent Voigt and even more difficulty having any substantive communications with her primary contact at Confidential Merchant regarding what was happening with this specific account after Trent Voight met with Confidential Merchant, with whom she had previously had a very good and active relationship.

In February 2014, out of the blue with no prior notification or communication, Trent Voigt presented Patricia with a proposed new written contract for her to sign on behalf of Chilly Dil.  Appended as Exhibit B to this Report is a copy of the contract entitled "Referral Fee Agreement" and was not with either of the JetPay Texas entities (or with JetPay Corporation).  Instead it was with a United Kingdom limited company called JetPay Solutions LTD.  Plaintiff does not know who owns non-

party JetPay Solutions LTD or how it might be related to the named Defendants. Defendants withheld pricing, terms for their new European bank and got Confidential Merchant to sign a contract with that bank without ever involving Patricia who originally provided the referral, introduction and repeatedly asked to be involved in the process and instead sent it directly from JetPay.

The Referral Fee Agreement does not reflect the discussions about splits and other compensation terms that Patricia repeatedly had with Todd Fuller and Trent Voigt.

**D.    Defendants' Accounting to Chilly Dil**

Appended as Exhibit C to this Report is a copy of the Tripartite Merchant Agreement along with Terms & Conditions between Bank Frick & Co AG ("Bank Frick"), JetPay Solutions Ltd. ("JetPay Solutions") and Payment Solutions BV ("Payment Solutions").  Accordingly, under this Agreement, Bank Frick serves as the acquiring bank, JetPay Solutions is the Partner/ Independent Sales Organization and Payment Solutions is the Merchant, which I understand to be a special purpose European entity organized by Confidential Merchant in order to have a European entity processing through a European ISO and with a European bank.

Appendix 2 to the Tripartite Agreement entitled "Settlement, Bank Frick Rates, Fees and Charges" sets forth the pertinent set of terms upon which Confidential Merchant would process transactions (through its European entity, Payment Solutions) with Bank Frick.  In significant part, the Appendix identifies the "Merchant Discount Rate" as 2.99%.  Further, for the "Transaction Fee" portion, it states: "JetPay to Charge."  This statement is incomprehensible.

Specifically, attached as Exhibit D hereto are the referral fee statements provided to Chilly Dil. Based on my assessment of the information contained therein, the merchant (Confidential Merchant) is being charged Cost (assuming standard industry practices would include Interchange + Dues/Assessments + Scheme Fees) + an additional 40 basis points.  This is confirmed on the commission statement in the column BPS Margin 40 and also based on taking Total Comm / Volume (Example: $11,291.00/ $2,822,695.00 = 0.0040).  This serves as the basis for the calculation and payment of the referral fees to Chilly Dil.  Stated another way, Chilly Dil's referral fees are based on the charges stated in these statements.

However, looking at these statements and viewing them in context with Appendix 2 of the Tripartite Merchant Agreement, I cannot reconcile the two sets of financial information for accuracy, i.e. the payments being made by some entity to Chilly Dil with the statement of fees charged to the merchant (Confidential Merchant).  Rather it appears that the statement of the charges to the Merchant

set forth in the Tripartite Merchant Agreement appear to be entirely inconsistent with the charges to the Merchant reflected in the Accounting Statements.

### E.    Preliminary Conclusions

Due to the unexplained inconsistency in the agreements and the reporting provided to Chilly Dil, I am presently unable to formulate an opinion as to the accuracy of the accounting for referral fees provided to Chilly Dil.  I am equally unable to render an opinion as to whether the mechanism by which Defendants calculate the referral fees due to Chilly Dil are done in conformity with standard industry practices and, specifically, whether they operate in a way which does not unfairly serve to undercompensate Chilly Dil for the referral fees owed.

I understand that the following documents were requested from Defendants:

Request for Production No. 1: All documents which evidence, refer, or relate to any processing relationship between plaintiff and any defendant.
Response: No processing relationship.
Production: No accounting produced. Repeated claims that we already have it in our monthly statements.

Request for Production No. 16: All documents which evidence, refer, or relate to any communications with Confidential Merchant.
Response: To the extent these exist, see production.
Production: No communications produced showing discussion of rates, etc. with Confidential Merchant.

Request for Production No. 17: All documents which evidence, refer, or relate to any dealings with Confidential Merchant.
Response: To the extent these exist, see production.
Production: No communications produced outside of early emails with Confidential Merchant. No emails re negotiation of rates etc., nor concerning other deals or solutions.

Request for Production No. 19: All documents which evidence, refer, or relate to your communications with any person regarding the Confidential Merchant.

Response: To the extent these exist, see production.

Production: No communications produced showing actual rates or structure. They have produced Tripartite Merchant Agreement, but nothing else with respect to Bank Frick.

Request for Production No. 20: All documents which evidence, refer, or relate to any agreements (whether draft, signed, unsigned, amended, etc.) which involve the Confidential Merchant as a party.

Response: To the extent these exist, see production.

Production: Have only produced the Tripartite Merchant Agreement and JetPay Merchant Application & Agreement.

Request for Production No. 21: All documents which evidence, refer, or relate to any effort by you to place the Confidential Merchant with a payment processor.

Response: To the extent these exist, see production.

Production: They produced some communications with failed bank attempts, but no communications with Bank Frick. They produced Tripartite Merchant Agreement. They have produced nothing internal. They have not produced anything following the shut down or other attempts at processing solutions.

Request for Production No. 22: All documents which evidence, refer, or relate to any effort by any defendant to place the Confidential Merchant with a payment processor.

Response: To the extent these exist, see production.

Production: They produced some communications with failed bank attempts, but no communications with Bank Frick. They produced Tripartite Merchant Agreement. They have produced nothing internal. They have not produced anything following the shut down or other attempts at processing solutions.

Request for Production No. 23: All documents which evidence, refer, or relate to any processing solution procured by you for the Confidential Merchant.

Response: None

Production: They produced some communications with failed bank attempts, but no communications with Bank Frick. They produced Tripartite Merchant Agreement. They have produced nothing internal. They have not produced anything following the shut down or other attempts at processing solutions.

Request for Production No. 24: All documents which evidence, refer, or relate to any agreement in your possession pursuant to which the Confidential Merchant is processing payment transactions, irrespective of whether the agreement was procured through your efforts or not.
Response: To the extent these exist, see production.
Production: They produced some communications with failed bank attempts, but no communications with Bank Frick. They produced Tripartite Merchant Agreement. They have produced nothing internal. They have not produced anything following the shut down or other attempts at processing solutions.

Request for Production No. 25: All documents which evidence, refer, or relate to any applications submitted to you by Confidential Merchant.
Response: To the extent these exist, see production.
Production: They produced some application documents, but it is unclear if it is everything or if they have tried later, especially after the association cut-off.

Request for Production No. 26: All documents which evidence, refer, or relate to any applications submitted to any defendant by Confidential Merchant.
Response: To the extent these exist, see production.
Production: They produced some application documents, but it is unclear if it is everything or if they have tried later, especially after the association cut-off.

Request for Production No. 28: All documents which evidence, refer, or relate to fees collected by you in connection with the Confidential Merchant from any person.
Response: None
Production: They produced one incoherent and jumbled spreadsheet, but it is out of date and is not useful. They also claim None, which is a misrepresentation. Todd Fuller has said he received

commissions, so presumably, others did as well. They also repeatedly have said this information is in the monthly statements, but they have not produced any internal accounting.

Request for Production No. 29: All documents which evidence, refer, or relate to fees collected by any of the defendants in connection with the Confidential Merchant from any person
Response: None
Production: They produced one incoherent and jumbled spreadsheet, but it is out of date and is not useful. They also claim None, which is a misrepresentation. Todd Fuller said he received commissions, so presumably, others did as well. They also repeatedly have said this information is in the monthly statements, but they have not produced any internal accounting.

Request for Production No. 30: All documents which evidence, refer, or relate to the referral fee agreement.
Response: To the extent these exist, see production.
Production: They produced one incoherent and jumbled spreadsheet, but it is out of date and is not useful. They also claim None, which is a misrepresentation. Todd Fuller said he received commissions, so presumably, others did as well. They also repeatedly have said this information is in the monthly statements, but they have not produced any internal accounting.

Request for Production No. 32: All documents which evidence, refer, or relate to communications between the defendants about the referral fee agreement.
Response: To the extent these exist, see production.
Production: They have not produced any internal communications about the referral fee agreement or any with Confidential Merchant or with Bank Frick, they only produced external communications with plaintiff, which we already had.

Request for Production No. 33: All documents which evidence, refer, or relate to any payments received by any person under the referral fee agreement.
Response: To the extent these exist, see production.
Production: They produced one incoherent and jumbled spreadsheet, but it is out of date and is not useful. Todd Fuller said he received commissions, so presumably, others did as well. They

also repeatedly have said this information is in the monthly statements, but they have not produced any internal accounting.

Request for Production No. 34: All documents which evidence, refer, or relate to any payments made pursuant to the referral fee agreement.

Response: None

Production: They produced one incoherent and jumbled spreadsheet, but it is out of date and is not useful. Todd Fuller said he received commissions, so presumably, others did as well. They also repeatedly have said this information is in the monthly statements, but they have not produced any internal accounting.

Request for Production No. 36: All agreements by and between Jetpay ISO, Jetpay, JTPY, and Jetpay Solutions Ltd or any of them.

Response: Irrelevant.

Production: They produced one incoherent and jumbled spreadsheet, but it is out of date and is not useful. Todd Fuller said he received commissions, so presumably, others did as well. They also repeatedly have said this information is in the monthly statements, but they have not produced any internal accounting. They have not produced any agreements between defendants either, however, we do have the 10k and it references the master servicing agreement between Jetpay LLC and Jetpay Solutions Ltd in UK.

Request for Production No. 37: All documents adequate to identify the locations of bank accounts maintained by Jetpay ISO, Jetpay, JTPY, and Jetpay Solutions Ltd.

Response: Irrelevant.

Production: Nothing.

Request for Production No. 38: All documents adequate to identify the corporate structure of Jetpay ISO.

Response: Irrelevant, see 10k.

Production: We only have 10k.

Request for Production No. 39: All documents adequate to identify the corporate structure of Jetpay.

Production: We only have 10k.

Response: Irrelevant, see 10k.

Production: We only have 10k.


Request for Production No. 40: All documents adequate to identify the corporate structure of Jetpay Solutions Ltd.

Response: None

Production: We only have 10k.


Request for Production No. 41: All documents adequate to identify the corporate structure of Jetpay ISO.

Response: See 10k.

Production: We only have 10k.


Request for Production No. 47: All documents adequate to identify the bank identification number ("BIN") employed by you or any of the defendants in the course of provision of payment processing services to Confidential Merchant.

Response: None

Production: Nothing, just one incoherent spreadsheet that may be payment records.


Request for Production No. 48: All documents adequate to identify the acquiring institutions (bank) funding merchants through the BIN employed by you or any defendant in the course of provision of payment processing services to Confidential Merchant.

Response: None

Production: Nothing, just one incoherent spreadsheet that may be payment records.


Request for Production No. 49: All documents adequate to identify the type of BIN employed by you or any of the defendants in the course of provision of payment processing services to

Confidential Merchant (e.g., shared or rent-a-BIN, direct BIN access without assignment, BIN assignment with portability, and BIN assignment without portability).

Response: None

Production: Nothing, just one incoherent spreadsheet that may be payment records.

Request for Production No. 51: All documents and/or communications by and between any of the defendants and Bank Frick regarding or related to the Confidential Merchant.

Response: To the extent these exist, see production.

Production: Nothing produced with Bank Frick.

Request for Production No. 50: All documents adequate to identify any merchants other than the Confidential Merchant processing transaction through the BIN employed by you or any of the defendants in the course of provision of payment processing services to Confidential Merchant.

Response: None

Production: Nothing, just one incoherent spreadsheet that may be payment records.

Special Interrogatory No. 1: Identify all documents reflecting any bank card processing activity undertaken by you for any merchant referred by plaintiff.

Response: None

Production: Nothing, but they claim there is none.

Special Interrogatory No. 2: Identify all documents reflecting any bank card processing activity transacted by the Confidential Merchant.

Response: None

Production: Nothing, just one incoherent spreadsheet that may be payment records.

Special Interrogatory No. 3: Identify each person involved in business relationship between you and plaintiff.

Response: No relationship.

Production: Fuller said he received commissions on this, but they have not supplemented the response.

Special Interrogatory No. 4: Identify each person employed by you with knowledge of any aspect of business relationship between any defendant and plaintiff.

Response: No relationship.

Production: Todd Fuller said he received commissions on this, but they have not supplemented the response.

Special Interrogatory No. 8: State the dollar amount any of the defendants realized as gross profit in connection with any processing activity conducted by Confidential Merchant.

Response: None

Production: Todd Fuller said he received commissions on this, but they have not supplemented the response. They have also not produced any internal accounting, claiming we have enough with our monthly statements. They have not produced anything with respect to Bank Frick either.

The production of these documents would enable me to formulate an opinion as to the accuracy of the accounting for referral fees provided to Chilly Dil. Further, provided that all the requested documents are produced, I should be able to render an opinion as to whether the mechanism by which Defendants calculate the referral fees due to Chilly Dil are done in conformity with standard industry practices and, specifically, whether they operate in a way which does not unfairly serve to undercompensate Chilly Dil for the referral fees owed. I hereby reserve the right to do so after all the requested documents are provided by Defendants. Accordingly, a supplemental disclosure under Rule 26(a)(2)(E), Rule 26(e) shall be filed once the necessary information is obtained.

**F.    Conclusion**

As set forth above, I cannot conclude my opinions until such time as Defendants provide the entirety of the requested information which is mandatory for a complete assessment of the transactions upon which I have been engaged to render an expert opinion. I reserve the right to complete and supplement this report after Defendants provide the entirety of the documents requested of them.

Respectfully submitted,

_____                    _____ `
       Rod R. Katzfey                                                            October 5, 2015
                                                        Date

**Exhibit A –**

**Complaint for Damages and Accounting**

**Exhibit B –**

**JetPay Solutions LTD**

**Referral Fee Agreement**

**Exhibit A Referral Fees**

**Exhibit C –**

**Bank Frick**

**Tripartite Merchant Agreement**

**Tripartite Merchant Agreement – Terms & Conditions**

**Appendix 1-5**

**Exhibit D –**

**Commission Statement(s)**