THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CHILLY DIL CONSULTING INC.**, a Florida corporation, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:14-cv-02749-P |
| **JETPAY ISO SERVICES, LLC**, a Texas limited liability company; **JETPAY, LLC**, a Texas limited liability company; **JETPAY CORPORATION**, a Delaware corporation; and **TRENT R VOIGT**, an individual, | § § § § § § § | |
| Defendants. | § | |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO *EMERGENCY* MOTION TO EXTEND TRIAL DATE AND SCHEDULING ORDER DEADLINES**

# I.
# OVERVIEW

Plaintiff Chilly Dil Consulting, Inc. ("Chilly Dil") hereby submits its Reply to Defendants JetPay ISO Services, LLC ("JetPay ISO"), JetPay LLC, JetPay Corporation, and Trent Voight's (collectively, "Defendants") Response to Chilly Dil's *Emergency* Motion to Extend Trial Date and Scheduling Order Deadlines ("Response").

# II.
# INTRODUCTION

Defendants' Response demonstrates the lengths Defendants <u>and their attorneys</u> will go to mislead the Court about their wrongful conduct in obstructing Chilly Dil's access to discovery, the legitimacy of Chilly Dil's claims and the extent of damages suffered by Chilly Dil. Defendants argue that Chilly Dil has not demonstrated good cause for the extensions sought in its *Emergency* Motion to Extend Trial Date and Scheduling Order Deadlines ("Motion") because (1) Defendants have already provided a significant amount of discovery; (2) Defendants did not frustrate Chilly Dil's ability to take Todd Fuller's deposition; and (3) The "parties" reached an agreement concerning the scope of the Esquire Bank subpoena. Adding insult to an injury, Defendants point the finger at Chilly Dil for failing to conduct sufficient discovery and depositions by this point in the litigation. None of these arguments are credible.

Any documents actually produced by Defendants were turned over after considerable haggling by Chilly Dil. Further, most of those documents that were produced were only provided after Chilly Dil filed its Motion to Compel. Moreover, there is still a significant number of documents which have not been produced, necessitating the pending Motion to Compel.

The documents produced by Todd Fuller (consisting of only four redacted pages) is likewise incomplete, and the agreement concerning the Esquire Bank subpoena was reached between Esquire Bank and Chilly Dil only; Defendants had no meaningful involvement. Importantly, Defendants do not deny their efforts to impede the Todd Fuller deposition and to quash the Esquire Bank subpoena on the eves of Mr. Fuller's deposition and the due date for the subpoena production, respectively. Additionally, as has been explained in the Motion, because Defendants have refused to provide the discovery sought, Chilly Dil has been unable to schedule and conduct any productive depositions, or even to properly assess the extent of its damages.

As further proof of Defendants' discovery abuse, Chilly Dil has recently learned after receiving and reviewing the documents produced by Esquire Bank, that Defendants and their attorneys have purposefully and improperly concealed damning evidence from Chilly Dil. What's more unconscionable is that Defendants have had these same documents obtained from Esquire Bank in their possession all along, but have never produced them when requested by Chilly Dil through discovery. <u>The newly uncovered evidence goes to the heart of the instant dispute and demonstrates that while Defendants were telling Chilly Dil and its counsel that Defendants did not do business with Esquire Bank, Esquire Bank had actually received deposits of no less than $27 million!</u>  The documents produced by Esquire also identify other third parties from whom Chilly Dil would need to subpoena records to determine the full extent of Defendants' deception and the extent of damages suffered by Chilly Dil. Clearly, Defendants cannot be relied upon to abide by the Federal Rules of Civil Procedure and produce these documents even though they have already been requested.

Defendants' obstructive behavior to prevent necessary discovery in this litigation and frustrate Chilly Dil's ability to fully prepare its case for trial as demonstrated by the concealment

of the Esquire Bank documents, is a further proof of the necessity to extend of the trial date and Scheduling Order deadlines.  For these reasons, the Court should grant Chilly Dil's Motion.

### III.
### ARGUMENT

A.  **Chilly Dil Has Established Good Cause for the Court to Grant Its Motion**

Defendants argue that Chilly Dil has failed to establish good cause that would allow the Court to grant the Motion.  Specifically they argue that they have produced 1085 pages of discovery, including JetPay Corporation's 10K filing with the SEC.  They additionally argue that Todd Fuller has now produced documents that he was supposed to produce at his deposition, and that the "parties" had reached agreement as to the scope of the Esquire Bank subpoena.  According to Defendants, these "facts" demonstrate that there has been no obstruction to discovery.  However, these are simply half-truths that fail to reveal the extent of Defendants' bad faith actions.

First, of the 1085 pages of documents produced by Defendants: (1) only four pages were produced as part of their Federal Rule of Civil Procedure ("Rule") 26 Initial Disclosures; (2) only 228 pages of documents were produced in response to Chilly Dil's discovery requests; and (3) the remaining documents were produced after several attempts to meet and confer by Chilly Dil and only after Chilly Dil finally filed its Motion to Compel.  Moreover, the production still does not include many of the requested documents as detailed in Chilly Dil's Reply brief in support of its Motion to Compel.  (*See* Dkt. No. 53, Part III(B), p. 4.)  The fact that Defendants produced 1085 pages is of no legal significance as that number in no way signify a complete production.  As far as Chilly Dil knows, Defendants are concealing an additional 1085 pages of highly relevant documents, as is demonstrated by Defendants' deliberate concealment of

documents concerning Esquire Bank, which included emailed exchanges with a number of JetPay employees, that were omitted from production by Defendants.

Further the amended Notice of Intention to Take Deposition of Todd Fuller ("Notice of Deposition") requested 42 categories of documents to be produced at the deposition. (*See* Dkt. No. 74, Appendix to Emergency Motion, Exh. B, 7-13.) Defendants do not deny that Mr. Fuller did not produce a single document at his deposition. Further, Chilly Dil requested for the documents at least twice after the deposition before only four pages of heavily redacted documents were produced.[1] (*Id.*, Declaration of Jerl Leutz, 3, ¶10.) Also, as acknowledged in the Declaration of Jerl Leutz submitted with Chilly Dil's Motion, the scope of the Esquire Bank subpoena was limited based upon agreement by Esquire Bank and Chilly Dil only; Defendants did not meaningfully participate in that discussion. (*See Id.*, 4, ¶ 12.)

Notably, Defendants do not deny that despite knowing and agreeing well in advance to the date, time and location of Mr. Fuller's deposition, just three days before the deposition, Defendants' attorney, Lauren Tow, threatened to quash the deposition if Chilly Dil did not agree to delay the deposition by an hour just so that she wouldn't have to get up early and drive for the deposition. Similarly, Defendants do not deny that they threatened to move to quash the Esquire Bank subpoena just one business day before the production was due, without any attempt to meet and confer and even though they had a copy of the subpoena three weeks before the production due date. Moreover, the threat to quash the subpoena was devoid of any legal basis as the

---

[1] Interestingly, relying on the fact that key documents were withheld, Todd Fuller elected to lie at his deposition by testifying that he only received a few hundred dollars in commissions in connection with the Confidential Merchant. When the redacted 4-page document was finally produced, it revealed that in the space of only a few months, Todd Fuller received in excess of $75,000 in commission based on un-redacted numbers alone. Additional documents are expected to reveal additional commissions received by him. (Appendix to Plaintiff's Reply, Declaration of Eugene Rome ("Rome Decl."), ¶ 7.).

4
PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO MOTION TO SCHEDULING ORDER DEADLINES

documents sought did not reveal "a trade secret or other confidential research, development, or commercial information" and did not disclose an unretained expert's opinion. *See* Fed. R. Civ. P. 45(d)(3)(B). Defendants even admit in their Response that their threat to quash was baseless as "Esquire Bank controls the production of these documents, not Defendants…" (Dkt. No. 79, Defendants' Response, Part II(B)(iii), p. 5.) Clearly, this is demonstrable proof of Defendants' bad faith behavior as the sole purpose of the threatened motion to quash was merely to cause delay and prevent Chilly Dil's access to key evidence.

Defendants argue that it is Chilly Dil that has been dilatory in failing to conduct necessary discovery and depositions since the filing of the Complaint. However, as Chilly Dil's Motion to Compel, Motion for Extension to Time to Seek Leave to File First Amended Complaint, and the instant Motion argue, it is because of Defendants' refusal to produce the discovery requested that has impeded Chilly Dil's ability to schedule and take key depositions. In order to conduct a productive deposition, Chilly Dil would need to review the documents requested and use the deposition to further obtain more information concerning the documents. Indeed, it is also because of this lack of production that Chilly Dil's expert has been unable to formulate an opinion regarding Chilly Dil's damages. (*See* Dkt. No. 70, Expert Report, Part III(F), p. 16.).

There are several motions pending with the Court, including Chilly Dil's Motion to Compel. If the Court grants the Motion to Compel, and Defendants choose to abide by the Court's order, then Chilly Dil will finally have access to the documents it needs to conduct the key depositions as part of its trial preparation. For these reasons, Chilly Dil has established good cause for the Court to extend the trial and scheduling order deadlines.

B.  **Defendants and Their Attorneys Have Intentionally and Improperly Withheld Significant Evidence**

On October 19, 2015, Esquire Bank produced documents in response to a subpoena issued by Chilly Dil. Among those documents produced were 412 pages of documents representing correspondence and attachments thereto between Esquire Bank and Trent Voight on behalf of JetPay LLC between September 26, 2013 and February 24, 2015 concerning the Confidential Merchant. The Esquire Bank documents revealed that Defendants had <u>secretly</u> established a processing relationship with a U.S. Bank (i.e. Esquire Bank) for the Confidential Merchant, and that <u>$27 million</u> worth of payments were processed for the Confidential Merchant during this time and apparently deposited with Esquire. JetPay Solutions Ltd, the United Kingdom entity, was not involved in this transaction. Further, this relationship between JetPay, LLC and Esquire Bank was formed prior to any proposed contract with JetPay Solutions Ltd and during the time when the only contract at issue with Chilly Dil was the one with JetPay ISO. (*See* Appendix to Plaintiff's Reply, Rome Decl., 2, ¶3.)

Moreover, Defendants neither informed Chilly Dil about the $27 million that was apparently processed and deposited with Esquire, nor did Chilly Dil receive any referral fees from Defendants related to that processing. (*See Id.*)

Specifically, in email exchanges with the subject heading listing the Confidential Merchant, Esquire Bank admitted that "<u>We've</u> had that merchant for 6+ mos." (*Id.*, Exh. A at 9.)

Separately, when Esquire Bank decided to stop processing American Express payments, JetPay LLC stated: "Dave [Chester] told me you don't want the AMEX deposits going through your bank... understood. Is it a problem if we move it after spring release?" (*Id.*, Exh. A at 7.)

Similarly, Trent Voight of JetPay LLC confirmed to Esquire Bank that as of April 10, 2014, "[the Confidential Merchant] was moved to Wells Fargo's banking." (*Id*., Exh. A at 14.)

Finally, in an email dated February 24, 2015 to which a "Settlement Report" covering December 1, 2013 to May 31, 2014 is attached, Dave Chester, Chief Operating Officer of JetPay, LLC, writes to Esquire Bank stating: "This report shows [the Confidential Merchant]. Esquire has no liability for this as it is a deposit only account. JetPay is the acquirer of record with American Express for [the Confidential Merchant]." (*Id*., Exh. A at 15-41.) Self-evidently, there was a processing relationship between the Confidential Merchant, JetPay, LLC and Esquire Bank which, until now, was concealed from Chilly Dil. (*Id*.)

The Esquire Bank production sheds a light on the untruths spewed by Defendants and their counsel in their Response.  First, Defendants claim that they have produced a significant number of documents related to Esquire Bank, including correspondence between Trent Voight and Esquire Bank concerning the Confidential Merchant. (Dkt. No. 79, Defendants' Response, Part II(A), p. 3.)  Defendants produced only 59 pages of correspondence. (*See* Appendix to Plaintiff's Reply, Rome Decl., 2, ¶4.)  Esquire Bank produced 412 pages of unrelated materials of which there was substantial correspondence with Defendants, which Defendants concealed. This means that Defendants withheld and hid from Chilly Dil 353 pages of emails and other correspondence with Esquire Bank that Chilly Dil had previously requested through discovery. (*Id*.)  Importantly, none of the documents produced by Defendants included any mention of the processing relationship formed with Esquire Bank related to the Confidential Merchant, nor did it include any information about the apparent $27 million of receipts by Esquire Bank. (*See Id*.., 2-3, ¶4.)  These emails were cherry picked out of the production by Defendants.  This is deliberate obfuscation of the record.  But for the production by Esquire Bank, Chilly Dil would

7
PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO MOTION TO SCHEDULING ORDER DEADLINES

not have possession of documents that reveal important and consequential facts related to its claims, including the previously concealed $27 million in transactions and $1,550,787.50 in processing fees. (*See Id.*, Exh. A, 15-41.)

Second, Defendants claim that they tried to board the Confidential Merchant with US Banks, including Esquire Bank, but were unable to do so, stating: "The discovery conducted by Plaintiff to date shows that Defendants diligently attempted to obtain a processing relationship with all of the US Banks that Defendants had valid business relationships with but was unsuccessful in placing the Confidential Merchant domestically."[2] (Dkt. No. 79, Defendants' Response, Part I, p. 2.)

Yet, the correspondence produced by Esquire Bank (which that was improperly withheld by Defendants) shows that Esquire Bank boarded the Confidential Merchant for American Express card payments, and may have processed about $27 million worth of payments for the Confidential Merchant from approximately December 2013 to June 2014. Defendants therefore hid from Chilly Dil (despite being requested to provide the same during discovery) that Esquire Bank had boarded the Confidential Merchant and was processing payments for which JetPay LLC appears to have been paid a commission. Under the existing contract between Chilly Dil and JetPay ISO, Chilly Dil was entitled to 60% of the processing fees realized by JetPay, which means that a potential $930,472.50 in fees owed to Chilly Dil. This is a staggering amount

---

[2] On reflection, the language used by Defendants in formulating this representation to the Court is telling. Defendants assert that the discovery conducted by Chilly Dil does not demonstrate the existence of the processing relationship. In other words, Defendants deliberately concealed documents from Chilly Dil and thereafter, in argument to the Court, are stating that, as a result of their concealment, Chilly Dil does not have documents in its possession substantiating the existence of a relationship with Esquire Bank. Rather than plainly state that no such documents exist, Defendants are intimating that Chilly Dil simply does not have them in its possession. The Court should not tolerate such maneuvering by counsel.

PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO MOTION TO SCHEDULING ORDER DEADLINES

8

which Defendants deliberately concealed from Chilly Dil! Chilly Dil did not receive any such payments. (*See* Appendix to Plaintiff's Reply, Rome, Decl. 3, ¶5.)

Finally, the documents produced by Esquire Bank shows that Esquire Bank eventually stopped processing payments for the Confidential Merchant, and that this has been transferred to Wells Fargo Bank since on or about April 14, 2014. (*Id*. at 3, ¶6.) Chilly Dil must now subpoena Wells Fargo for the relevant information, and we can expect Defendants to continue their efforts to obstruct further discovery into this matter. Further, Chilly Dil is now undertaking efforts to depose Esquire Bank and its officers, including Fred Horn, to determine the exact scope of processing activity it conducted with JetPay. These issues go to the heart of this dispute yet Defendants and their lawyers continued to conceal documents and mislead the Court about their proffered "compliance."

Therefore, as the Esquire Bank documents show, Chilly Dil has begun uncovering the amounts owed to it that Defendants and their counsel have concealed. Further discovery will be required in order to determine the extent of Chilly Dil's damages and to develop its case for trial. The subject delay in obtaining information is the direct product of Defendants and their lawyers' machinations. Yet, absent a continuance, the prejudice to Chilly Dil will be intolerable as it simply cannot complete discovery by December 4, 2015 given the repeated efforts by Defendants and their counsel to interfere with its discovery efforts. Any delay in obtaining this information was as a result of trusting Defendants to provide the same when it was requested during discovery, and not due to Chilly Dil's own inaction.

### III.
### CONCLUSION

For the reasons stated above, the Court should entered an order extending the trial date and the deadlines in the Scheduling Order as set forth in the Motion.

Respectfully submitted,

**David Steiner & Associates, PLC**

BY:      /s/David Paul Steiner
David P. Steiner
California Bar No. 64638
dpsartnetlaw@gmail.com
DAVID STEINER & ASSOCIATES, PLC
1801 Century Park East, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 557-8422
Facsimile: (310) 556-0336
Attorneys for Plaintiff

**LEHTOLA & CANNATTI PLLC**

BY:      /s/Patricia Beaujen Lethola
Patricia Beaujean Lehtola
State Bar No. 01997700
plehtola@lc-lawfirm.com
Phillip E. Cannatti
State Bar No. 00793456
pcannatti@lc-lawfirm.com
Patrick C. Joost
State Bar No. 24078759
pjoost@lc-lawfirm.com
LEHTOLA & CANNATTI PLLC
5001 Spring Valley Road,
Suite 400 East
Dallas, Texas 75244
(972) 383-1515 (Telephone)
(866) 383-1507 (Facsimile)
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      This is to certify that on October 28, 2015, the foregoing was served upon counsel of record in accordance with the Federal Rules of Civil Procedure as set forth below by U.S. Mail or electronic filing.

COOPER& SCULLY, P.C.
Timothy Micah Dortch
Founders Square
900 Jackson Street, Suite 100
Dallas, Texas 75202
Tel.: 214/712-9501
Fax: 214/712-9540
**COUNSEL FOR DEFENDANTS**

                                          BY: */s/Eugene Rome*
                                                  Eugene Rome