THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHILLY DIL CONSULTING INC., a Florida corporation, | § § § | |
| Plaintiff, | § § | |
| V. | § § | CIVIL ACTION NO. 3:14-cv-02749-P |
| JETPAY ISO SERVICES, LLC, a Texas limited liability company; JETPAY, LLC, a Texas limited liability company; JETPAY CORPORATION, a Delaware corporation; and TRENT R VOIGT, an individual, | § § § § § § | |
| Defendants. | § § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO AMEND THE COMPLAINT AND TO FILE FIRST AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Defendants, in the above-styled and numbered cause, file this Response to Plaintiff's Motion to Amend the Complaint and to File First Amended Complaint and respectfully allege the following:

### I.
### INTRODUCTION

Plaintiff's Motion is untimely and Plaintiff has failed to establish the threshold requirement of good cause under Rule 16(b) of the Federal Rules of Civil Procedure, which applies when the deadline for seeking leave to amend pleadings has expired, as determined in light of the four factor test established by the Fifth Circuit. First, Plaintiff has provided no valid explanation for its failure to timely amend its complaint in accordance with the Court's scheduling order. Second, the attempt to provide an explanation based on the deposition falls

short based on the fact that Mr. Fuller's testimony does not support Plaintiff's proposed amendments.  Third, Defendants would be severely prejudiced by the proposed amendment.

This is a simple case.  Plaintiff signed a contract with a different company than Plaintiff sued.  Plaintiff has no damages related to Defendants.  Plaintiff's claim is akin to someone shopping for a Toyota, buying a Honda, and suing Toyota for the Honda's alleged defects.  This case does not need more time and Plaintiff's request should be denied.

## II.
## PROCEDURAL SUMMARY

The initial Complaint in this subject litigation was filed on July 31, 2014 and included claims for breach of written contract, money had and received, tortious interference with existing contract, violation of the Texas Theft Liability Act, and negligence.

On January 6, 2015, the Court issued a Scheduling Order that provided the discovery and trial deadlines. (Doc. No. 22)  The Scheduling Order provided July 15, 2015 as the deadline to amend pleadings.  (Doc. No. 22)

Plaintiff waited over eight (8) months from the filing of the initial Complaint, to serve Defendants its First Set of Requests for Production of Documents and its First Set of Special Interrogatories.  Three (3) months after the deadline to amend pleadings has passed, the Plaintiff is now seeking leave to file an Amended Complaint to include a claim for Breach of Oral Contract.  (Doc. No. 76)

## III.
## ARGUMENTS

### A.  Plaintiff's Motion Misstates the Legal Standard Governing Its Untimely Amendment

Plaintiff's Motion and Brief misstates the legal standard governing the untimely

amendment of a pleading. (*See* Pl's. Mtn and Brief., Doc. No. 76 and 77). "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. **Only upon the movant's demonstration of good cause** to modify the scheduling order [under Rule 16(b)] will the more liberal standards of 15(a) apply to the district court's decision to grant or deny leave." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA,* 315 F.3d 533, 535–36 (5th Cir. 2003); *see also Fahim v. Marriott Hotel Servs., Inc.,* 551 F.3d 344, 348 (5th Cir. 2008); *Valcho v. Dallas Cnty. Hosp. Dist.*, 658 F. Supp. 2d 802, 814 (N.D. Tex. 2009). Plaintiff would have the Court assess the merits of its untimely motion to amend under the liberal standards of Rule 15(a) without first establishing good cause for modifying the scheduling order at this late date. (*See* Pl's. Mtn and Brief., Doc. No. 76 and 77). Plaintiff's attempt to avoid Rule 16(b)'s requirement to establish good cause justifying leave to amend its pleadings is inappropriate and should be rejected.

Additionally, even the brief attempt to discuss good cause in Plaintiff's Motion should be disregarded due to the failure to provide any actual evidence to support the allegation that Mr. Fuller's deposition corroborated the new proposed theories.  Therefore, Plaintiff's Motion should still be denied under Rule 16(b) and Rule 15(a).

**B. <u>Plaintiff's Motion Misleads the Court as to the Facts it Alleges Provide Good Cause</u>**

Rule 16(b)(4) limits the circumstances under which a district court can extend deadlines contained in a scheduling order once a deadline for amendment has passed. Specifically, Rule 16(b)(4) provides, "[a] schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The Fifth Circuit has ruled that Rule 16(b)—rather than the more liberal amendment standard established in Rule 15—governs the late amendment of a scheduling order deadline established by a district court. *S & W Enters., L.L.C.*, 315 F.3d at 534; *see also Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013); *Cole v. Sandel*

*Med. Indus., L.L.C.*, 413 Fed. Appx. 683, 689 (5th Cir. 2011). The "good cause" standard in Rule 16(b)(4) "requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S & W Enters.*, 315 F.3d at 534 (citing WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990)). Further, mere inadvertence on the part of the movant, and the absence of prejudice to the non-movant, are insufficient to establish good cause. *Am. Tourmaline Fields v. Int'l Paper Co.*, No. 3:96–CV–3363–D, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998).

> The Fifth Circuit has established a four-factor test for a party seeking to show good cause for extension of an expired scheduling order deadline. Specifically, courts consider: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.

*S&W Enters.*, 315 F.3d at 536; FED. R. CIV. P. 16(b). Courts "do not mechanically count the number of factors that favor each side," rather, "at all times . . . the good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order." *Connect Insured Telephone, Inc. v. Qwest Long Distance, Inc.*, 2012 WL 3150957, at *3-4 (N.D. Tex. Aug. 3, 2012) (quoting *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009)). Courts are afforded broad discretion in applying these tests to preserve their inherent power to control their own dockets and to maintain the integrity and purpose of their pretrial orders, which include achieving efficiency and expediting procedures. *S & W Enters.*, 315 F.3d at 535-36 (citations omitted). In fact, courts may deny untimely motions for leave to amend under this test when only one of the four factors weighs in favor of the non-movant. *See, e.g., Connect Insured Telephone*, 2012 WL 3150957, at *3-4 (denying motion for leave to amend). Applying this four-factor test, Plaintiff has not, and indeed cannot, establish good cause justifying leave to amend at this late date.

**1.  Plaintiff has failed to provide a valid explanation for its failure to timely move for leave to amend.**

Courts have consistently denied motions for leave to amend when the party seeking amendment fails to provide an explanation for its untimely filing. *See, e.g., Fahim*, 551 F.3d at 348 (affirming denial of motion to amend where movant "offered no explanation for her untimely request"); *Conceal City, L.L.C. v. Looper Law Enforcement, LLC*, No. 3:10-CV-2506-D, 2013 WL 5786281, at *3 (N.D. Tex. Oct. 28, 2013) (denying motion for leave where movant offered no explanation for amendment after deadline).

Here, Plaintiff provides a feeble, inaccurate reason.  Specifically, Plaintiff states in its Brief that Plaintiff "now seeks amendment based on the testimony it obtained from the Fuller deposition." (*See* Pl's. Brief., Doc. No. 77).  Despite this overbroad statement, Plaintiff never bothers to actually tell the Court what Fuller allegedly said that would be good cause, nor does Plaintiff bother to attach any part of Fuller's deposition to its Appendix.  The only support Plaintiff actually bothers to provide is a statement made in the Declaration of David Steiner, counsel for the Plaintiff, where he states, "Fuller's testimony during the deposition in part confirm and further corroborate facts that support an additional claim for breach of oral contract between Chilly Dil on the one hand, and defendants JetPay LLC and Trent Voigt on the other hand.  These amendments are the subject of this Motion." (*See* Pl's. App., Doc. No. 78, App. 0003).

In the proposed Amended Complaint, in the new cause for Breach of Oral Contract, the Plaintiff cites to two emails.  First, is an email sent on December 12, 2013 from Trent Voigt to Patricia Weber that includes Trent Voigt stating he is meeting with the EU business to discuss pricing.  This email does not include any reference to transaction fees.  The second email is a response from Patricia Weber where she states that she wants to make transaction fees.  Trent

Voigt did not respond stating that he agreed to the transaction fees, yet the Plaintiff contends that this email exchange establishes a meeting of the minds that would qualify as an oral contract where Chilly Dil would be entitled to transaction fees.

At his deposition, Mr. Fuller was not shown the second email from Ms. Weber that referred to the transaction fee so he provided no testimony on that matter.  He was shown the first email from Mr. Voigt and when asked about it he stated the following:

> Q.   Do you see yourself as a recipient of this e-mail both on the first page of the document and also on the second page of the document that forwarded the e-mail from December 12th, 2013, at 4:50 p.m.?
>
> A.   Yes.  One of them I was the recipient and the one on the first page I was carbon copied.
>
> Q.   Right.  So in the one that you were the recipient, it's a forward of the e-mail from Trent Voigt where he said, "Patricia, we are going to meet with Carl today, and I wanted to let you know that I'm pretty sure we can meet the pricing that we put together for the U.S. Esquire business for the E.U. business."  Do you see that?
>
> A.  I do.
>
> Q.  Were you a part of that meeting?
>
> A.   This is in December so -- hang on.  Let me read this.  Okay.  That's from Trent. Okay.  I'm sorry.  I read that.  What was the question again?
>
> Q.  Were you a part of the meeting?
>
> A.  No.  Nothing to do with -- anything E.U. I was not a part of.
>
> Q.  Do you have an understanding as to why you were being copied on these e-mails?
>
> A.  Probably to let me know -- out of courtesy, Trent was probably letting me know that he's working on it.  That's my guess.
>
> Q.  Did you ever talk to Trent about the E.U. side of the deal?
>
> A.  No.  It had nothing to do with me, had no reason to.
>
> (See Exhibit A, App. 000006-000007)

In fact, during the process of trying to locate a US bank Mr. Fuller actually explained to Ms. Weber that he does not know the agent fees up front, because it depends on the bank. Specifically he states,

Q.  Patricia Weber kept inquiring about the per transaction rate.  Do you see that?

A.  I'm not sure.  Specifically which part of the e-mail are you talking about?  I'm still reading.

Q.  Sure.  Right in the middle of where it says, "Wells Fargo pricing to client pass through 50 basis points."

A.  I do see that.

****

A.  I'm reading this, but I'm having a hard time understanding what she was saying because I don't think she was understanding what I was saying.  I had told her at the bottom that Esquire's pricing -- let's see.  Hang on.  Where did it go?  "Esquire is wanting more for this particular count," which I told her that because Esquire doesn't price upfront, they price  individually.  I said so this -- so the amount is unknown.  I didn't know what it was.

Q.  (BY MR. ROME)  Sure.

A.  She was trying to get specific, and I was trying to explain -- I believe what the intent of this was was that I was trying to tell her I don't know what it's going to be yet.

Q.  I understand.

A.  It's the cart before the horse.

(See Exhibit A, App. 000004-000005)

Basically, Mr. Fuller's testimony contradicts the idea that there could have been an oral contract regarding agent split prior to a bank agreeing to board the Confidential Merchant, because JetPay would not know the pricing and he made Ms. Weber aware of this.  (See Exhibit A, App. 000004-000005)  As such, Mr. Fuller's testimony not only fails to show good cause for

why an amendment should be allowed at this time, but it actually contradicts the claim for Breach of Oral Contract.

### 2. Plaintiff has failed to establish the importance of its requested amendment.

Plaintiff's Motion does not expressly address the second factor regarding the importance of the requested amendment. Courts have recognized that a lengthy delay in seeking to amend pleadings by the party requesting an untimely amendment of a scheduling order "undermines [the] argument regarding the importance of the amendment." *See, e.g., Lowery v. Allstate Texas Lloyds, Inc.*, CIV.A. 306CV1886L, 2007 WL 2331026, at *3 (N.D. Tex. Aug. 15, 2007) (recognizing that plaintiff's lengthy delay in seeking to add potential claims known about for over a year undermined the argument regarding the importance of the amendment). In the case at bar, Plaintiff delayed moving for leave to amend for three months. Plaintiff had ample opportunity to amend its pleadings, especially in light of the fact that the emails that are the basis of the proposed amendment were equally available to both parties. (*See* Scheduling Order, Doc. No. 22). Plaintiff's three month delay in seeking to amend its pleadings undermines the importance of Plaintiff's requested amendment. For the foregoing reasons, Plaintiff's proposed amendment is simply not "important" within the meaning of the rule.

### 3. Allowing amendment would prejudice Defendants and reward Plaintiff for its own dilatory conduct.

The third factor, which requires the Court to consider the potential prejudice to Defendants if the amendment were allowed, also weighs against granting Plaintiff's Motion. *See S & W Enters., L.L.C.,* 315 F.3d at 536. Courts have consistently found prejudice to the non-movant in instances in which amendment would require additional discovery, extensions of other pretrial deadlines, and/or the non-movant to incur additional expenses. *See, e.g., id.* at 536-37; *Garcia v. Univ. of Texas Sw. Med. Ctr. at Dallas*, 3:11-CV-3282-B, 2012 WL 4457499, at *2

(N.D. Tex. Sept. 26, 2012). In the instant case, Plaintiff's requested amendment would necessarily require Defendants to prepare additional responsive pleadings, engage in additional discovery and incur additional expenses.

Additionally, Plaintiff's untimely motion should also be denied because granting it would merely reward Plaintiff for its own "dilatory conduct." *Connect Insured Telephone*, 2012 WL 3150957, at *4 (denying movants' motion for leave to amend when movant failed to exercise minimal level of diligence that would have revealed the need for amendment prior to the deadline set forth in the scheduling order). The emails related to the proposed Amended Complaint were equally available to both parties prior to even the First Complaint being filed, since they were exchanges between Trent Voigt and Patricia Weber. Plaintiff should not be entitled to this late proposed Amended Complaint when it had the information related to the cause of action for Breach of Oral Contract since prior to filing the First Complaint.

### 4. A Continuance would only Prejudice the Defendants

The fourth factor requires the Court to consider whether a continuance could cure the potential prejudice to Defendants if the amendment were allowed. *S & W Enters., L.L.C.,* 315 F.3d at 536. To the extent the Plaintiff attempts to argue this is a valid basis for its request for a continuance, the Defendants contend that they should not be forced to incur more attorney's fees on the litigation that is already being brought against the parties that did not contract with the Plaintiff.

Each factor of the four-factor test weighs against Plaintiff's requested Motion for Leave to Amend Complaint and File First Amended Complaint. Because Plaintiff has failed to show good cause as to why leave to amend should be granted approximately three months after the deadline for motions to amend pleadings, the Court is precluded from assessing the merits of

Plaintiff's untimely motion under the liberal standards of Rule 15(a). Accordingly, Plaintiff's Motion should be denied.

**C.  Plaintiff's Untimely Motion Should Also be Denied Under Rule 15(a).**

Even if Plaintiff's Motion did establish the threshold requirement of good cause under Rule 16(b) (which it has not), Plaintiff's Motion should still be denied under Rule 15(a). Under Rule 15(a)(2), absent the opposing party's written consent, the movant must additionally show that justice requires the court to grant leave to amend. FED. R. CIV. P. 15(a)(2). In determining whether justice requires granting leave to amend, the Court may consider factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment, etc." *In re Southmark Corp.*, 88 F.3d 311, 314-315 (5th Cir. 1996), cert denied, 519 U.S. 1057 (1997). In the instant case, those factors evidence that even if Plaintiff could show good cause, the amendment should nevertheless be denied.

As discussed in more detail above, Plaintiff has had access to the emails that are the basis of its Motion for Leave to Amend Complaint, since prior to filing the initial Complaint against Defendants.  Plaintiff's failure to cure the deficiencies in its pleadings at an earlier date is the sole fault of Plaintiff, and weighs against granting Plaintiff's Motion even under the more liberal Rule 15 standard.

Additionally, as discussed above, the proposed Amended Complaint would cause undue prejudice by forcing the Defendant to conduct additional discovery and file responsive pleadings, thus, incurring more unnecessary attorney's fees.

In addition, the amendment is not warranted because it would be futile.  To determine futility, the inquiry focuses on whether the proposed amendment could survive a motion to

dismiss under Federal Rule 12(b)(6).  *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003).
Where the proposed amendment would fail to state a claim upon which relief could be granted,
the court may properly deny leave to amend.  *Id.*  A motion to dismiss for failure to state a claim
upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure
tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a
defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v.
United States,* 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied,* 536 U.S. 960 (2002).

      "The elements of a valid contract are (1) an offer, (2) an acceptance, (3) a meeting of the
minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with
the intent that it be mutual and binding. The elements of written and oral contracts are the same
and must be present for a contract to be binding. For an agreement to be enforceable, there must
be a meeting of the minds with respect to its subject matter and essential terms. The
determination of a meeting of the minds, and thus offer and acceptance, is based on the objective
standard of what the parties said and did.  The execution of a contract includes the performance
of all acts necessary to render it complete as an instrument." *Tyco Valves & Controls, L.P. v.
Colorado*, 365 S.W.3d 750, 771 (Tex. App.—Houston [1st Dist.] 2012), aff'd, 432 S.W.3d 885
(Tex. 2014).  In the instant matter, there is no evidence of meeting of the minds or the essential
terms that would be required to establish a valid oral contract.   The proposed Amended
Complaint cites to an email from Ms. Weber where she states what she wants, but there is no
responsive email from Mr. Voigt assenting to that statement.  Additionally, Mr. Fuller testified
that he informed Ms. Weber that pricing could not be determined until a bank was established.
(See Exhibit A, App. 000004-000005)

Additionally, Plaintiff is attempting to bring a claim for Breach of Oral Contract regarding a discussion with Trent Voigt, who is CEO of JetPay Solutions, LTD in the UK, when there was a later written contract with JetPay Solutions, LTD. "No contract whether oral or written can be varied, contradicted, or discharged by an antecedent agreement. Today may control the effect of what happened yesterday; but what happened yesterday cannot change the effect of what happens today." *Carolina Metal Products Corp. v. Larson*, 389 F.2d 490, 494 (5th Cir. 1968).

Therefore, Plaintiff has failed to plead a claim for Breach of Oral Contract that would not be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the attempt to Amend the Complaint to include this cause of action would be futile.

## IV.
## CONCLUSION

Plaintiff's Motion for Leave to Amend Complaint and File First Amended Complaint should be denied, because it would substantially prejudice the Defendants and the Plaintiff has not provided a good faith basis for the requested extension.

## V.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Defendants request that the Court deny Plaintiff's Motion for Leave to Amend Complaint and File First Amended Complaint, and such other and further relief to which Defendants may be entitled to at law and in equity.

Respectfully submitted,


BY: _____ */s/ Timothy M. Dortch* _____
          **TIMOTHY MICAH DORTCH**
          State Bar No. 24044981
          micah.dortch@cooperscully.com
          **R. BRENT COOPER**
          State Bar No. 04783250
          brent.cooper@cooperscully.com
          **LAUREN TOW**
          State Bar No. 24081179
          Lauren.Tow@cooperscully.com

**COOPER & SCULLY, P.C.**
Founders Square
900 Jackson Street, Suite 100
Dallas, Texas 75202
Tel.:  214/712-9500
Fax:  214/712-9540

**COUNSEL FOR DEFENDANTS JETPAY ISO
SERVICES, LLC; JETPAY, LLC; JETPAY
CORPORATION; AND TRENT R. VOIGT**


**CERTIFICATE OF SERVICE**

I hereby certify that I served a true and correct copy of Defendants' Response to

Plaintiff's Motion to Amend the Complaint and File First Amended Complaint to all counsel of

record for all parties via ECF on the 2nd day of November, 2015.


_*/s/ Timothy M. Dortch*_ _____
**TIMOTHY MICAH DORTCH**