UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CHILLY DIL CONSULTING INC., a Florida corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JETPAY ISO SERVICES, LLC, a Texas limited liability company; JETPAY, LLC, a Texas limited liability company; JETPAY CORPORATION, a Delaware corporation; and TRENT VOIGT, an individual,<br><br>Defendants. | §§§§§§§§§§§§§§§§<br><br>CIVIL ACTION NO. 3:14-cv-02749-P |

# FIRST AMENDED COMPLAINT FOR DAMAGES AND AN ACCOUNTING

Plaintiff Chilly Dil Consulting Inc. ("Plaintiff" or "Chilly Dil"), by its attorneys, hereby files this First Amended Complaint (the "Complaint") for damages and an accounting against Defendants JetPay ISO Services, LLC; JetPay, LLC; JetPay Corporation; and Trent Voigt (collectively "Defendants"), and alleges:

## JURISDICTION AND VENUE

1.     This Court has diversity jurisdiction pursuant to 28 U.S.C. Section 1332(a)(1) as the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens of different states.

2.     This Court has personal jurisdiction over each of the Defendants, and venue in this District is proper under 28 U.S.C. § 1391(b), in that all of the Defendants except for JetPay Corporation reside in this District, JetPay Corporation does business in this District, and a substantial portion of the events and omissions giving rise to the claims occurred in this District.

## PARTIES

3. Plaintiff Chilly Dil Consulting Inc. ("Chilly Dil") is a Florida corporation, with its principal place of business located at 1001 Yamato Road, Suite 305, Boca Raton, Florida 33431. Its owner and CEO is Patricia Weber-Carlin, who has been involved in the e-commerce payment processing industry since 1999. Chilly Dil is what is known in the industry as a "reseller."

4. Defendant JetPay ISO Services, LLC ("JetPay ISO") is a Texas limited liability company, with its principal place of business located at 3361 Boyington Drive, Suite 180, Carrollton, Texas 75006.

5. Plaintiff is informed and believes and thereon alleges that Defendant JetPay, LLC is a Texas limited liability company, with its principal place of business located at 3361 Boyington Drive, Suite 180, Carrollton, Texas 75006. JetPay, LLC does business under the name JetPay Payment Services. Plaintiff is informed and believes, based on JetPay Corporation's 10-K for 2013, that JetPay ISO also is sometimes referred to as JetPay, LLC and that they both do business under the name JetPay Payment Services. That 10-K also suggests that JetPay ISO is a wholly-owned subsidiary of JetPay, LLC. JetPay ISO and JetPay, LLC are collectively referred to herein as the "JetPay Texas entities."

6. Defendant JetPay Corporation is a Delaware corporation, with its principal place of business located at 1175 Lancaster Avenue, Suite 100, Berwyn, Pennsylvania 19312. Its stock is publicly traded on NASDAQ (symbol "JTPY").

7. Defendant Trent Voigt is an individual citizen of Texas who Plaintiff is informed and believes resides in this District. Among other things, he is the Chairman of JetPay, LLC and is the direct or indirect owner of Wles LP, the sole member of JetPay, LLC. Wles LP is not presently being named as a party but may be added later based upon further information obtained.

8. Plaintiff is informed and believes and thereon alleges that directly or indirectly, individual Defendant Trent Voigt owns, operates, and controls for his personal benefit Defendants JetPay ISO and JetPay, LLC as well as non-party Wles LP, which in turn is a significant beneficial owner of shares in Defendant JetPay Corporation. JetPay ISO, JetPay, LLC, and Wles LP are operated by Mr. Voigt as a common enterprise out of the same office, located at 3361 Boyington Drive, Suite 180, Carrollton, Texas 75006.

9. Plaintiff is informed and believes and based thereon alleges that JetPay ISO and JetPay, LLC are dominated and controlled by Trent Voigt in such a way that JetPay ISO and JetPay, LLC are in essence merely alter egos of Trent Voigt. In order to avoid financial liabilities, Mr. Voigt improperly uses their limited liability company form for his personal gain. JetPay ISO and JetPay, LLC are mere instrumentalities of Trent Voigt (as is non-party Wles LP). Plaintiff is informed and believes and based thereon alleges that JetPay ISO and JetPay, LLC are simply limited liability company shells (which adhere to few LLC formalities) over which Mr. Voigt maintains domination and pervasive control and through which he has conducted his personal business.

10. Recognition of the separate existence of Trent Voigt, JetPay ISO, and JetPay, LLC would promote injustice in that it may permit Trent Voigt to insulate himself from personal liability for contract breaches and tortuous injuries he caused Plaintiff Chilly Dil to suffer. Accordingly, JetPay ISO and JetPay, LLC should be deemed to constitute alter egos of each other and both companies should be deemed to constitute alter egos of Trent Voigt, with the fiction of separate existence disregarded. JetPay, LLC should be liable for JetPay ISO's contract breaches and torts and Trent Voigt should be personally liable for JetPay ISO's contract breaches and the torts of JetPay ISO and JetPay, LLC. Further, as between all of the JetPay named defendants, there exists a "single business enterprise" under Texas common law. Plaintiff is

informed and believes and based thereon alleges that the JetPay Defendants have common offices, common employees, centralized accounting, common business names, employees of one corporation render services on behalf of another, common record keeping, transfers of funds between the entities, and common shareholders or ownership. (*Paramount Petroleum Corp. v. Taylor Rental Center*, 712 SW 2d. 534, 1986).

### FACTS PERTINENT TO CAUSES OF ACTION

11. Plaintiff incorporates by this reference Paragraphs 1-10 above as if set forth in full herein.

12. Internet merchants who sell goods and services online require processing of customer payments by credit cards and debit cards. Such online merchants electronically send credit card data that is ultimately processed by an "acquirer" – a banking company that is a member of card associations such as Visa Inc. and MasterCard Inc. The acquirer bank settles the transaction, distributing funds to the merchants and certain intermediaries while retaining fees for itself.

13. Defendant JetPay ISO is a type of company (called an "ISO" or "independent sales organization" or "Processor") that markets merchant services to online merchants who need help in establishing a relationship with an acquirer bank. After JetPay ISO helps a merchant establish a relationship with an acquirer, JetPay ISO acts as an intermediary in the subsequent business relationship between the merchant and acquirer. Companies like JetPay ISO receive commissions from the acquirer derived from the acquirer's revenue from each merchant.

14. Plaintiff Chilly Dil is a type of company referred to as an "independent sales agent" or a "reseller." Chilly Dil locates and develops relationships with online merchants who Chilly Dil then refers to companies like JetPay ISO who in turn hook the merchants up with

acquirer banks.  A reseller receives compensation from the intermediary companies like JetPay ISO for as long as a particular referred merchant remains in good standing with the intermediary company, and for as long as it processes through acquiring banks introduced by intermediaries like JetPay ISO.

15. On or about September 11, 2011, Chilly Dil Consulting Inc. entered into a written contract entitled "Independent Sales Agent Agreement" (the "Agreement" or the "2011 Agreement") with JetPay ISO Services, LLC.  A true and correct copy of the Agreement is attached hereto as Exhibit A and is incorporated herein by this reference.  The governing law was specified in Paragraph 18 as the laws of Texas.

16. As noted on page 1 of the Agreement, "JISO [i.e., JetPay ISO] desire[d] to retain Agent [i.e., Chilly Dil] as an independent contractor and non-exclusive sales agent to assist JISO in soliciting prospective Merchants to apply to Banks for Merchant Processing Agreements and in providing various Merchant services to Banks, and Agent desire[d] to render such assistance to JISO in accordance with the terms and conditions of this Agreement."

17. Chilly Dil's duties were specified in Paragraphs 3 and 4 of the Agreement.  Chilly Dil has performed all of its obligations under the Agreement except to the extent excused by JetPay ISO's failure to perform.

18. JetPay ISO's obligation to compensate Chilly Dil was described in Paragraph 6 of the Agreement and its attached Schedules A, B, and C.  Paragraph 6 states in part: "Agent shall be entitled to receive compensation as shown on Schedules A, B, and C attached and part of this Agreement, for so long as JISO is receiving its corresponding compensation from banks for such approved Merchant [subject to an exception in the event of certain types of contract terminations]."

19. Under Paragraphs 9-11, the Agreement's term was for one year, with automatic annual renewals. Either party could terminate the Agreement for any reason during a specified window (with a notice period) each year or immediately for certain specified causes (such as bankruptcy). Notwithstanding termination of the Agreement (except for terminations for cause), JetPay ISO's obligation to compensate Chilly Dil for income arising from a referred merchant client would continue into the future for as long as that income stream lasted. Paragraph 20 allowed JetPay ISO to assign the Agreement at any time and stated the Agreement "shall be binding upon and inure to the benefit of the parties and their successors and assigns."

20. In 2012, Chilly Dil tried to refer a few online merchants but JetPay ISO did not give approval for them. From the outset, Patricia Weber-Carlin ("Patricia") of Chilly Dil informed Trent Voigt and Todd Fuller, an executive officer of the JetPay Texas entities, that they should focus on finding United States acquirer banks for any merchants she referred because she already had relationships with European bank acquirers that would benefit her merchants and result in favorable payments to her.

21. In 2013, Patricia and Chili Dil developed a relationship with a very large e-commerce subscription website. That merchant will be referred to herein as the Confidential Merchant because of confidentiality terms with Chilly-Dil and Ms. Weber-Carlin. The Confidential Merchant had hundreds of thousands of transactions each month with a very low chargeback rate but was losing its acquirer. Chilly Dil had previously found a European acquirer for the Confidential Merchant.

22. In August 2013, Patricia contacted Todd Fuller and presented the Confidential Merchant opportunity to JetPay ISO pursuant to the 2011 Independent Sales Agent Agreement. She stressed that a United States acquirer was sought and that the Confidential Merchant already had one based in Europe.

23. In August 2013, Mr. Fuller confirmed that the 2011 Agreement was still in force and applicable to the Confidential Merchant referral, and that the acquisition/merger transaction involving JetPay Corporation that had closed around December 2012 did not affect the 2011 Agreement. Mr. Fuller noted that Schedule A of the 2011 Agreement was applicable. There were discussions both by telephone and through many emails of specific referral compensation details such as the "splits."

24. On or about August 26, 2013, Patricia conducted a conference call to formally introduce her main contact at the Confidential Merchant to Trent Voigt and Todd Fuller of the JetPay Texas entities and to walk through the model of how things would work if a United States bank acquirer accepted the Confidential Merchant. In that call, Mr. Voigt gave the main contact at the Confidential Merchant his direct line phone number. In the weeks that followed, Patricia learned that Mr. Voigt was often having communications with the main contact by phone and email that she did not know about at the time. A proposal was presented to an American bank.

25. In October 2013, Trent Voigt informed Chilly Dil that the Jetpay Texas entities were trying to hook up the Confidential Merchant with a European acquirer bank, even though Patricia had already informed him that a European bank was not needed and that the need was for an American acquiring bank.

26. In December 2013, Chilly Dil complied with the JetPay Texas entities' request that it set up a personal meeting where personnel from the Confidential Merchant could tour the JetPay Texas entities' facilities with Trent Voigt. In mid-December, Trent Voigt informed Chilly Dil that the U.S. bank had denied the Confidential Merchant's application but a European bank was still in the picture. The contact at the Confidential Merchant provided Patricia with a copy of a proposed contract between the Confidential Merchant and a European bank that Trent Voigt was advocating that the Confidential Merchant enter into.

27. In January 2014, the Confidential Merchant let Patricia know that it was in the process of testing with that EU bank that Trent Voigt had convinced the Confidential Merchant to utilize as an acquirer. Trent Voigt for Defendants priced that account without Plaintiff's knowledge, nor provided buy rates, to Plaintiff.

28. Rather, Trent Voigt assured Patricia that even though processing would be completed through a European bank, the commissions payable to Plaintiff in connection with the processing would remain the same and the terms would be slightly more favorable to the Confidential Merchant.

29. Specifically, in an e-mail dated December 12, 2013, Trent Voigt wrote:

> "Patricia,
>
> We are going to meet with Carl today and I wanted to let you know that I am pretty sure we can meet the pricing that we put together for the U.S. Esquire business for the EU business. Therefore, [Confidential Merchant] would not have to know any different other than a little bit of interchange difference which would actually be in their favor."

30. For her part, Patricia relied on Trent Voigt's representations regarding the pricing and acquiesced to that meeting.

31. Throughout the October 2013 through February 2014 period, Patricia had difficulty reaching Trent Voigt and even more difficulty having any substantive communications with her primary contact at the Confidential Merchant regarding what was happening with this specific account after Trent Voigt met with the Confidential Merchant, with whom she had previously had a very good and active relationship.

32. In February 2014, out of the blue, Trent Voigt presented Patricia with a proposed new written contract for her to sign on behalf of Chilly Dil. The proposed contract was entitled "Referral Fee Agreement" and was not with either of the JetPay Texas entities (or with JetPay Corporation). Instead, it was with a United Kingdom limited company called JetPay Solutions

8

LTD.  Plaintiff does not know who owns non-party JetPay Solutions LTD or how it might be related to the named Defendants. Defendants withheld pricing, terms for their new EU bank and got the Confidential Merchant to sign a contract with that bank without Patricia seeing it directly from JetPay.

33.     The Referral Fee Agreement did not reflect the discussions about splits and other compensation terms that Patricia had had with Todd Fuller and Trent Voigt.  Trent Voigt presented it on a take-it-or-leave it basis, suggesting that the Confidential Merchant was now under his influence and he would see to it she was cut out entirely if she did not agree to it. Critically, in making this statement, Trent Voigt specifically omitted to inform Patricia that under the deal he struck between the Confidential Merchant and JetPay Solutions Ltd., no profits would be realized (and therefore no commissions paid) on the tens of thousands of monthly transactions completed by the Confidential Merchant.  If in fact the case, the omission of the transaction fee add-on has the practical effect of reducing profits at least nine-fold.

34.     Patricia reluctantly ended up signing the Referral Fee Agreement in early February 2014.  JetPay Solutions LTD has sought to send Chilly Dil a few small wires (about $5,000 each) purportedly under the Referral Fee Agreement but Chilly Dil has not accepted any of them.  The Confidential Merchant has been using the Defendants' EU bank as its acquirer bank since about March 2014.

35.     If, for the sake of argument, the Referral Fee Agreement with JetPay Solutions LTD were in force and effect and binding on Chilly Dil, the 2011 Agreement with JetPay ISO would still be the operative agreement with respect to the referral of the Confidential Merchant since that referral occurred in August 2013, a time when the 2011 Agreement was the only contract Chilly Dil had with any entity with "JetPay" in its name.  The Referral Fee Agreement with JetPay Solutions LTD did not exist, even in draft form, at that time.  The Referral Fee

Agreement contains an integration clause that only covers prior agreements between the parties to that 2014 contract – i.e., Chilly Dil and JetPay Solutions LTD.  The integration clause does not have any effect on the 2011 Agreement between Chilly Dil and Jetpay ISO.

36.     The 2011 Agreement is in full force and effect with respect to Chilly Dil's referral of the Confidential Merchant.  Thus, compensation is due from JetPay ISO (or its alter egos) pursuant to the terms of the 2011 Agreement.

## COUNT ONE

## BREACH OF WRITTEN CONTRACT

**(Against Defendants JetPay ISO and (as alter egos) JetPay, LLC and Trent Voigt)**

37.     Plaintiff incorporates by this reference Paragraphs 1-36 above as of set forth in full.

38.     Defendant JetPay ISO has breached the 2011 Agreement by failing to make the payments due under the 2011 Agreement starting in or about March 2014.  Plaintiff believes that the principal amount currently due is at least $200,000.

39.     Plaintiff requests that Defendants be ordered to make an accounting so that the exact amount due under the 2011 Agreement can be determined. The facts presented are complex and thus adequate relief may not be obtained at law. Further, information cannot be obtained completely through ordinary discovery procedures.

40.     Like every contract in Texas, the 2011 Agreement contained an implied covenant of good faith and fair dealing such that neither party was to unfairly deprive the other of the expected benefits of the contract.  In addition to breaching the express compensation provisions of the 2011 Agreement, JetPay ISO also breached the implied covenant of good faith and fair dealing by its hardball tactics and subterfuges akin to "bait and switch" to try to get Chilly Dil to

accept what turned out to be substantially lower referral compensation than that to which Chilly Dil was entitled under the 2011 Agreement.

41. Chilly Dil's breaches of express contract provisions and the implied covenant have proximately caused damages (and will continue to cause damages) to Chilly Dil in an amount to be determined at trial, the principal amount of which exceeds $75,000 (and at the time of filing the Complaint already exceeds approximately $200,000.). Chilly Dil is also entitled to an award of prejudgment interest and, pursuant to Paragraph 12 of the 2011 Agreement, an award of attorneys' fees.

42. As set forth in Paragraphs 8-10 above, JetPay, LLC and Trent Voigt are the alter egos of JetPay ISO and should be determined to also be liable for JetPay ISO's breaches on that basis.

## COUNT TWO

## BREACH OF ORAL CONTRACT

### (Against Trent Voigt and JetPay, LLC)

43. Plaintiff incorporates by this reference Paragraphs 1-42 above as if set forth in full herein.

44. To the extent that the referral of the Confidential Merchant occurred outside of the 2011 Agreement, then, in that event, Chilly Dil on the one hand and Trent Voigt/JetPay, LLC on the other hand were parties to an oral agreement which Trent Voigt and JetPay LLC breached.

45. Specifically, on December 12, 2013, writing from his JetPay, LLC e-mail account, Trent Voigt wrote Patricia the following e-mail:

> Patricia,
>
> We are going to meet with Carl today and I wanted to let you know that I am

>pretty sure we can meet the pricing that we put together for the U.S. Esquire business for the EU business.   Therefore, [Confidential Merchant] would not have to know any different other than a little bit of interchange difference which would actually be in their favor.
>However, I can only do a 50/50 agent deal on that volume.   Is that OK with you?  If so please let me know ASAP as I would like to discuss the pricing with Carl at lunch but do not want to cut the agent out of the deal as that is not our way of doing business.
>
>Regards,
>
>**Trent Voigt – CEO – (o) 972-503-8900 Ext. 103 – (m) 214-632-7740 – (f) 972-503-9100**
>
>www.jetpay.com  NASDAQ (JTPY)

46.     On December 12, 2013, Patricia responded:

>Hey Trent,
>
>50/50 is fine with me. However, I need to know that we are making the same basis points on the deal as in the US. We have to be making at min $.10 per trans plus the basis points. Per trans is where the rev is.

47.     At all times, Patricia (on behalf of Chilly Dil) was allowing and assisting Trent Voigt/JetPay, LLC to continue with the referral of the Confidential Merchant to their EU bank under the condition that the subject referral and resulting processing relationship include compensation for transactions, which constitute the bulk of the profit in a processing relationship subject of this referral and having the qualities of the Confidential Merchant.  At all times, Trent Voigt assured Patricia that he would negotiate fees for the transactions generated by the Confidential Merchant.

48.     Accordingly, an oral agreement existed between Chilly Dil on the one hand and Trent Voigt and JetPay, LLC on the other hand that the latter would not refer the Confidential Merchant to an alternate bank or processor unless the Confidential Merchant could be boarded under a commission structure that included the per-transaction fees specifically required by

Patricia and which were accepted by Trent Voigt and Chilly Dil in proceeding with the referral of the merchant.

49. Plaintiff Chilly Dil performed all of its obligations.

50. Defendants Trent Voigt and JetPay, LLC, for their part, breached the terms of the oral agreement and referred the Confidential Merchant to a processor which proceeded to do the very act prohibited by the oral agreement, i.e., board the Confidential Merchant pursuant to terms which apparently omitted inclusion of per-transaction fees that were required by Plaintiff, as detailed in Paragraphs 41 and 42 above and otherwise supported by the parties oral and written communications.

51. Trent Voigt and JetPay, LLC's breaches of the subject oral agreement have proximately caused damages to Chilly Dil in an amount to be determined at trial, the principal amount of which exceeds $75,000, which damages consist of the direct losses of profits Chilly Dil would have realized from the required transactional costs but for the act of Defendants of boarding the Confidential Merchant on terms different than orally agreed to.

## COUNT THREE

## MONEY HAD AND RECEIVED

**(Against All Defendants)**

52. Plaintiff incorporates by this reference Paragraphs 1-51 above as if set forth in full herein.

53. JetPay ISO and/or JetPay, LLC, and Trent Voigt, and JetPay Corporation have received funds from the processing of the Confidential Merchant's accounts, a portion of which (believed to currently be about $200,000) rightfully belongs to Chilly Dil but which they have refused to transmit to Chilly Dil despite its demands.

54. In equity and good conscience, the money in question rightfully belongs to Plaintiff Chilly Dil and the Court should order its payment to Chilly Dil to avoid unjust enrichment of JetPat ISO, Jet Pay, LLC, or Trent Voigt.

## COUNT FOUR

### TORTIOUS INTERFERENCE WITH EXISTING CONTRACT

#### (Against All Defendants)

55. Plaintiff incorporates by this reference Paragraphs 1-54 above as if set forth in full.

56. Chilly Dil has had a written consulting agreement with the Confidential Merchant since July 2013. In addition to amounts of money paid directly by the Confidential Merchant to Chilly Dil for each new processing relationship that Chilly Dil locates for it, Chilly Dil obtains major indirect benefits by receiving substantial referral compensation from each ISO that Chilly Dil arranges to have enter a relationship with the Confidential Merchant.

57. At all relevant times, Defendants have been aware of the existence of that contractual relationship. Defendant Voigt's tortious activities are outside the scope of his duties as CEO of JetPay ISO and JetPay, LLC, dba JetPay Payment Services. He is therefore jointly and severally liable in his personal capacity along with other Defendants.

58. Commencing in or about September 2013, the Defendants willfully and intentionally interfered with that contractual relationship by alienating the Confidential Merchant (including its main contact person) from Chilly Dil and its principal, Patricia. Plaintiff believes that as part of Defendants' campaign, they defamed Patricia and engaged in trade libel of Chilly Dil, including discussing Chilly Dil's splits as an agent, despite Defendants' promises to the contrary consistent with industry practices.

59.     Defendants' acts of interference succeeded in interfering with that contractual relationship and have proximately caused compensatory damages to Plaintiff in an amount to be determined at trial.

60.     In so interfering, Defendants acted with malice or oppression so as to justify an award of punitive damages against them.

## COUNT FIVE

## VIOLATION OF THE TEXAS THEFT LIABILITY ACT

**(Against All Defendants)**

61.     Plaintiff incorporates by this reference Paragraphs 1-60 above as if set forth in full herein.

62.     The Texas Theft Liability Act (the "Act") declares in Civil Practice & Remedies Code Section 134.003(a) that a "person who commits theft is liable for the damages resulting from the theft." "Theft" is defined in Section 134.002(1) as "unlawfully appropriating property or unlawfully obtaining services" as described by specified sections of the Penal Code.

63.     Defendants are liable under both prongs of the theft definition in the Act.

64.     Defendants engaged in the unlawful appropriation of property in violation of Penal Code section 31.03 by taking and holding onto for themselves without Chilly Dil's consent the money due to Chilly Dil under the 2011 Agreement in connection with the referral of the Confidential Merchant.

65.     Defendants engaged in theft of services in violation of Penal Code Section 31.04(4) by intentionally or knowingly securing the performance of referral services by Chilly Dil by agreeing to provide compensation under the 2011 Agreement and then, after Chilly Dil referred the Confidential Merchant, JetPay ISO and the other Defendants (who are all

interrelated and mutually benefitted) failed to make anything close to full payment after Chilly Dil demanded it.

66. If Plaintiff prevails on this cause of action, Plaintiff is entitled to an award of costs and reasonable attorneys' fees under Section 134.005(b).

## COUNT SIX

## NEGLIGENCE

### (Against All Defendants)

67. Plaintiff incorporates by this reference paragraphs 1-66 above as if set forth in full herein.

68. In the relationship between Plaintiff as reseller and defendants as ISO, as delineated above, Defendants have a legal duty to reseller to act in a commercially reasonable manner according to industry standards and practices. Defendants breached that duty to Plaintiff by inappropriately disclosing agent splits to the reseller's customer (the Confidential Merchant), and by not having knowledge or of understanding appropriate pricing, buy rates and other details in relation to EU processing in the context of the EU bank Defendants brought to process Confidential Merchant's transactions. Defendants were negligent in breaching those duties to Plaintiff, their agent, and have caused damages that were proximately caused by those breaches in an amount that exceeds the jurisdictional minimum of this Court.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For an accounting of moneys owed to Plaintiff by JetPay ISO Services, LLC;

2. For actual damages in a principal amount to be determined (which will be in excess of $75,000) plus an amount of prejudgment interest;

    3.  For punitive damages under Count Three in an amount to be determined;

    4.  For Plaintiff's costs;

    5.  For Plaintiff's reasonable attorneys' fees, pursuant to both Paragraph 12 of Plaintiff Chilly Dil Consulting Inc.'s Independent Sales Agent Agreement with JetPay ISO Services, LLC and the Texas Theft Liability Act; and

    6.  For such other and further relief as the Court deems proper.

## JURY DEMAND

Plaintiff Chilly Dil Consulting Inc. hereby requests trial by jury of all issues so triable.

**David Steiner & Associates, PLC**

BY:    */s/David P. Steiner*
       David P. Steiner
       California Bar No. 64638
       dpsartnetlaw@gmail.com
       DAVID STEINER & ASSOCIATES, PLC
       1801 Century Park East, Suite 1600
       Los Angeles, CA 90067
       Telephone: (310) 557-8422
       Facsimile: (310) 556-0336
       Attorneys for Plaintiff

**LEHTOLA & CANNATTI PLLC**

BY:    */s/Patricia Beaujean Lehtola*
       Patricia Beaujean Lehtola
       State Bar No. 01997700
       plehtola@lc-lawfirm.com
       Phillip E. Cannatti
       State Bar No. 00793456
       pcannatti@lc-lawfirm.com
       Patrick C. Joost
       State Bar No. 24078759
       pjoost@lc-lawfirm.com

>LEHTOLA & CANNATTI PLLC
>5001 Spring Valley Road,
>Suite 400 East
>Dallas, Texas 75244
>(972) 383-1515 (Telephone)
>(866) 383-1507 (Facsimile)
>*Attorneys for Plaintiff*