# THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| **CHILLY DIL CONSULTING INC.**, a Florida corporation, § § § | |
| **Plaintiff,** § § | |
| v. § § | **CIVIL ACTION NO. 3:14-cv-02749-P** |
| **JETPAY ISO SERVICES, LLC**, a Texas limited liability company; **JETPAY, LLC**, a Texas limited liability company; **JETPAY CORPORATION**, a Delaware corporation; and **TRENT R VOIGT**, an individual, § § § § § § § | |
| **Defendants.** § § | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BACKPAGE, LLC, PAYMENT SOLUTIONS, B.V., ADTECH, B.V., AD REPUTATIONS SOLUTIONS, B.V., AND CARL FERRER'S EMERGENCY MOTION TO INTERVENE AND SEAL DOCUMENTS**

## **TABLE OF CONTENTS**

I.  OVERVIEW ................................................................................................................ 1

II. RELEVANT FACTS .................................................................................................. 2

III. ARGUMENT ............................................................................................................. 5

A.  Intervention as a Matter of Right is Not Available the Moving Defendants ...................... 6

　　1.  The Moving Parties Cannot Demonstrate a Threatened Injury Warranting Intervention as a Matter of Right ............................................................................ 6

B.  Permissive Intervention is Not Authorized Under These Facts ......................................... 8

C.  The SAC Does Not Contain Confidential or Trade Secret information ........................... 8

D.  The Moving Parties Will Not Be Prejudiced if Named as Defendants at this Time ........ 12

IV. CONCLUSION ......................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases**

*Alliantgroup, L.P. v. Feingold*, 803 F.Supp.2d 610 623-4 (S.D. Tex. 2011) ............................... 11

*American Bowling Supply Co. v. Al Martin, Inc.*, 96 F.Supp. 35, 37-38 (D.Kan. 1951)................ 7

*Apple Inc. v. Psystar Corp.*, 2012 WL 10852, *1-2 (N.D. Cal. 2012)............................................ 9

*Chalmers v. U.S.*, 43 F.R.D. 286, 290 (D.Kan. 1967) ................................................................... 7

*Encyclopedia Brown Productions, Ltd. v. Home Box Office, Inc.*, 26 F.Supp.2d 606, 613
   (S.D.N.Y. 1998) ....................................................................................................................... 11

*TPI Corp. v. Merchandise Mart of South Carolina, Inc.*, 61 F.R.D. 684, 690-691 (D.S.C. 1974) 7
*VFD Consulting, Inc. v. 21st Servs., 21st Holdings, LLC*, No. C 04-2161, 2005 WL 1115870, at
   *4–5 (N.D. Cal. May 11, 2005) ................................................................................................ 7

*Wysong Corp. v. M.I. Industries*, 412 F.Supp.2d 612, 626 (E.D. Mich. 2005) ............................ 11

# I.
# OVERVIEW

Since the inception of this action nearly two years ago, defendants JetPay ISO Services, LLC, JetPay, LLC and JetPay Corporation (the "JetPay Defendants") repeatedly misrepresented to plaintiff Chilly Dil Consulting, Inc. ("Plaintiff" or "Chilly Dil") and to this Court about the existence of their business relationship and activity with Backpage, LLC ("Backpage"), a client referred to them by Plaintiff.  However, after reviewing a limited document production from Backpage pursuant to a subpoena, Plaintiff finally learned the truth – the JetPay Defendants, Backpage, and Backpage's affiliated companies, have been conducting considerable business together and circumventing Plaintiff's entitlement to processing fees.  Shortly after this discovery, Plaintiff sought leave from the Court to amend the operative First Amended Complaint ("Motion for Leave") and to file a Second Amended Complaint ("SAC") that includes new claims and new parties. (Dkt. Nos. 100, 101).

Plaintiff identifies the proposed defendants as follows: Backpage, LLC, Payment Solutions, B.V., AdTech, B.V., Ad Reputations Solutions, B.V., and Carl Ferrer (collectively, the "Moving Parties"). For their part, the Moving Parties bring their Motion to (1) Intervene and (2) Seal the proposed SAC (the "Motion") on the grounds that the proposed SAC allegedly discloses purported "trade secrets." However, the Motion is unfounded for a number of reasons:

*First*, Federal Rule of Civil Procedure 24 does not allow intervention under these circumstances because the intervention is not yet ripe.  If the Court denies Plaintiff's Motion for Leave, then the Moving Parties will not become defendants to this action, making intervention unnecessary.  Conversely, if the Motion for Leave is granted and the SAC is deemed filed, then

the Moving Parties will be joined to this case and will only then be in a position to vindicate their interests directly by answering the SAC, moving to dismiss or otherwise.

*Second,* in the event that Plaintiff's Motion for Leave is denied, Plaintiffs will simply file a separate, direct action against the Moving Parties. Therefore, any attempt at "sealing" would be temporary and, ultimately, an idle act.

*Third*, as a practical matter, the Moving Parties' Motion and the accompanying declaration of its CEO, Carl Ferrer, is devoid of facts identifying the purported "trade secrets." As a result, the Moving Parties' contentions are too vague and prevent a meaningful response as to any aspect of the purported trade secrets or confidential information.

In sum, the subject Motion is meritless both procedurally and substantively. The Moving Parties assert vague confidentiality claims as a basis for sealing publicly available material that will inevitably make its way into the public record. For these reasons, the Motion should be denied.

## II.
## RELEVANT FACTS

Chilly Dil filed this action on July 31, 2014, alleging claims for breach of written contract; money had and received; tortious interference with existing contract; violation of the Texas Theft Liability Act; and negligence against the JetPay Defendants and their chief executive officer, defendant Trent Voigt ("Voigt"). (Dkt. No. 1.) Chilly Dil conducted substantial written discovery in this action. (Rome Dec., ¶¶ 3, 7.) The JetPay Defendants' responses uniformly denied the existence of any payments made by Backpage related to processing to the JetPay Defendants. For instance, in response to Plaintiff's Request for Production of Document No. 11 propounded to Defendant JetPay, LLC, JetPay, LLC pointedly

2

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BACKPAGE, LLC'S, PAYMENT SOLUTIONS, B.V.'S, ADTECH, B.V.'S, AD REPUTATIONS SOLUTIONS B.V.'S, AND CARL FERRER'S EMERGENCY MOTION TO INTERVENE AND SEAL DOCUMENTS

denied the existence of any monies paid to JetPay Defendants, stating in significant part: "Subject to and without waiving the foregoing objections, no monies were paid to JTPY for any business activity with the Confidential Merchant." [1]  (Rome Dec., ¶¶ 8-9, Exh. B, p. 6.)

However, Plaintiff discovered that these responses were misrepresentations of fact.  On December 11, 2015, Plaintiff issued a subpoena to Backpage, seeking, *inter alia*, documents reflecting processing completed by Backpage with the JetPay Defendants.  (Rome Decl. ¶ 11, Exh. D.)  For months, Backpage refused to comply, eventually producing two indecipherable spreadsheets.  (Rome Decl. ¶ 12, Exh. E.)  Plaintiff requested further responses to clarify, but Backpage refused. (Rome Decl. ¶ 13, Exh. F.) Ultimately, months later, in response to a March 3, 2016 letter, Backpage's newly retained outside counsel, Perkins Coie, promised to look into Backpage's noncompliance. (Rome Decl. ¶ 14, Exh. G.) After further delay and continued probing by Plaintiff's attorneys, on April 12, 2016, Backpage finally produced seventeen (17) processing statements, which show, beyond any conceivable doubt, ***that throughout the pendency of this action, the JetPay Defendants were processing transactions for Backpage, even though they denied the existence of this processing relationship to Plaintiff and the Court.***  (Rome Decl., ¶ 15.)

---

[1] Per the Requests for Production definitions, "JTPY" referred to "JetPay Corporation, a Delaware corporation, and includes any of its divisions, subsidiaries, related parent, and affiliated companies, as well as all of their respective agents, current and former employees, accountants, attorneys, investigators, representative, and anyone else acting on its behalf:; the "Confidential Merchant" referred to "Backpage.com, Payment Solutions, B.V., and any other associated, related, affiliated, co-owned, co-controlled, connected, networked, and/or collaborating business entities and/or affiliated online portals or URLs of any form, and including but not limited to such other affiliated online portals such as the collection of sites commonly known as "BigCity," TruckSales," and any other such merchants associated therewith.

3
PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BACKPAGE, LLC'S, PAYMENT SOLUTIONS, B.V.'S, ADTECH, B.V.'S, AD REPUTATIONS SOLUTIONS B.V.'S, AND CARL FERRER'S EMERGENCY MOTION TO INTERVENE AND SEAL DOCUMENTS

These misrepresentations are unequivocal. The documents show that JetPay, LLC, located at 3361 Boyington Drive, Suite 180, Carrolton, TX 75006, was processing American Express transactions for Backpage from June 2014 to September 2015 *and generating specific statements to Backpage* reflecting the processing. Backpage processed $12,107,957.15 in American Express transactions alone with defendants JetPay, LLC, realizing a stated processing fee of $703,908.75. (Rome Decl. ¶ 15, Exh. H.) Not only did the JetPay Defendants deliberately suppress these documents and information from production, but they also lied to the Court about their existence in their Opposition to Plaintiff's Motion to Compel, and in their Motion for Summary Judgment and supporting papers. (*See* Dkt. Nos. 34, 45.) Adding insult to injury, the JetPay Defendants refused to pay Plaintiff its share of the $703,908.75 in fees they realized from the relationship. Instead, Defendants misrepresented in discovery that no fees were generated from any business.[2]

According to general payment processing statistics, American Express transactions constitute anywhere between 5% and 10% of the total transaction volume, with the balance composed of Visa and MasterCard transactions. (Rome Dec. ¶ 16.) The seventeen (17) statements produced by Backpage represent American Express transactions *only*. Based on the general payments processing statistics, the total processing conducted by the JetPay Defendants (assuming Visa and MasterCard are included) therefore should be in the $120 million to $240 million range and the processing fees in the $7 million to $14 million range. (*Id*., Exh. I, p.3.) Plaintiff is entitled to its portion of those fees as mandated by its agreements with the JetPay Defendants. (*See* Dkt. No. 100-4, SAC, ¶¶ 27, 28, 32.) Furthermore, the statements produced

---

[2] Notably, only two (2) days after Backpage produced these processing documents, the JetPay Defendants produced the same documents to Plaintiff without any explanation for why they concealed them for a year and a half and lied about their existence. (Rome Decl. ¶ 15.)

represent transactions for Backpage only and exclude its affiliates Payment Solutions B.V., AdTech, B.V. dba Cracker.com, Ad Reputation Solutions B.V., dba Postfastr.com, i.e. the Moving Parties, who are also subject to the fee sharing provisions of the 2011 Agreement.

Backpage, for its part, colluded to insulate Defendants and itself from suit. Not only did they stonewall Plaintiff's legitimate discovery efforts, but they also concealed the domestic nature of their processing by setting up a system where transactions were pre-authorized domestically but settled internationally. (Rome Decl. ¶ 17.)

Further still, Plaintiff's recent investigation revealed that Backpage is administering various websites such as www.buybpcredits.com and www.backpagecredits.com (the "Credit Websites") that allow users of Backpage to purchase "credits" surreptitiously. (Rome Decl., ¶ 20.) Those users can then redeem those "credits" on the Backpage website. (*Id*.)

Stated another way, Plaintiff discovered that the JetPay Defendants, Backpage and the Moving Parties formed a massive all-encompassing conspiracy to enable the JetPay Defendants to circumvent their payment obligations to Plaintiff. The Moving Parties now *admit* to possessing additional documents evidencing processing activity. However, without any explanation, they refuse to produce these documents.

### III.
### ARGUMENT

The Moving Parties improperly seek to intervene in this matter. Their Motion must fail because their claimed interest in the subject of the action is unripe, and intervention is therefore unmerited. Further, the Motion's claims with respect to confidentiality are also unfounded and do not provide grounds for intervention.

5

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BACKPAGE, LLC'S, PAYMENT SOLUTIONS, B.V.'S, ADTECH, B.V.'S, AD REPUTATIONS SOLUTIONS B.V.'S, AND CARL FERRER'S EMERGENCY MOTION TO INTERVENE AND SEAL DOCUMENTS

A.  **Intervention as a Matter of Right is Not Available the Moving Defendants**

Federal Rules of Civil Procedure Rule 24 ("Rule 24") provides, in relevant part:

> (a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:
> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
> (b) PERMISSIVE INTERVENTION.
> (1) *In General.* On timely motion, the court may permit anyone to intervene who:
> (A) is given a conditional right to intervene by a federal statute; or
> (B) has a claim or defense that shares with the main action a common question of law or fact.

The Moving Parties bring their Motion under both subsections (a) and (b), seeking intervention as a matter of right or alternatively under the permissive standard. Plaintiff has no injury-in-fact yet to warrant intervention. Since the SAC has not yet been filed, the Moving Parties' claims are too speculative to warrant relief at this point. Further, the supposed confidential or trade secret information sought to be protected, does not warrant protection and is publicly available.

1.  **The Moving Parties Cannot Demonstrate a Threatened Injury Warranting Intervention as a Matter of Right**

As a basis for the Motion, Moving Parties assert that they have "protectable interests" that are "substantially affected" and that they are "unable to adequately represent" their interests without intervening. (Dkt No. 102, Motion, p. 4.) However, this Motion is ill-suited "for the limited purpose of opposing Plaintiff's Motion [for leave to amend and file the SAC] and seeking to seal documents." (*Id*. at p. 3.)

Intervention is ancillary and supplemental to existing litigation and serves the purpose of permitting proper parties to enter litigation and vindicate their rights to some title, property, res, or fund involved therein. *American Bowling Supply Co. v. Al Martin, Inc*., 96 F.Supp. 35, 37-38

(D.Kan. 1951). *See also*, *Chalmers v. U.S.*, 43 F.R.D. 286, 290 (D.Kan. 1967). In applying this rule, courts seek to prevent the multiplicity of suits involving common questions of law or fact. *TPI Corp. v. Merchandise Mart of South Carolina, Inc.*, 61 F.R.D. 684, 690-691 (D.S.C. 1974). Rule 24(a) provides that intervention "as of right" is available to the movant where it is so situated that "***disposing of the action*** may as a practical matter impair or impede the movant's ability to protect its interest." (emph. added).

In this case, Plaintiff seeks just the opposite – to seek disposition of the action ***with*** the Moving Parties as parties to the action. Therefore, intervention under Rule 24(a) is not available to the Moving Parties by its own terms since the pending Motion for Leave does not threaten a disposition of the action without them.

What the Moving Parties seek is unprecedented – to intervene for the purpose of opposing a Motion for Leave that seeks to include them in a legal action. Indeed, the relief sought is so extraordinary, that the Moving Parties have failed to cite to any Texas District Court or 5th Circuit authority with similar facts that reached the result they seek. If the Moving Parties wants to challenge the claims asserted against them in the SAC, the proper time to address that would be in a Motion to Dismiss ***after*** the SAC has been filed.

Moving Parties cite to *VFD Consulting, Inc. v. 21st Servs., 21st Holdings, LLC*, No. C 04-2161, 2005 WL 1115870, at *4–5 (N.D. Cal. May 11, 2005) in support to its position. That case is inapplicable for two reasons. First, it is an unpublished California district court case that is not binding upon this Court. Second, the Court in that case allowed the non-party to intervene and oppose a motion for leave by the defendant to file a third party counter-claim against the non-party, because the same defendant was already in active litigation against the non-party in Pennsylvania for the same claims. The Court found that the non-party had had an interest that would be impaired if the Court granted the defendant's motion forcing the non-party to *litigate the same claims in two different courts*. Intervention was appropriate in that case in order to avoid a multiplicity of actions, which is one of the purposes of Rule 24. *See TPI Corp.*, 61 F.R.D. at 690-691. Here, there is no

7
PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BACKPAGE, LLC'S, PAYMENT SOLUTIONS, B.V.'S, ADTECH, B.V.'S, AD REPUTATIONS SOLUTIONS B.V.'S, AND CARL FERRER'S EMERGENCY MOTION TO INTERVENE AND SEAL DOCUMENTS

other action brought by Plaintiff against the Moving Parties, and there is no risk of a multiplicity of suits against the same parties. The sole purpose of the Moving Parties' Motion merely to seek permission to file a premature Motion to Dismiss, and nothing more.

Simply put, if the Motion for Leave is granted, the Moving Parties are free to defend their interests in the litigation. If it is denied, then the Moving Parties need not be concerned about their interests being unprotected. For these reasons, the Moving Parties are simply not entitled to intervention under Rule 24(a)

**B.     Permissive Intervention is Not Authorized Under These Facts**

The Moving Parties state that that they are, alternatively, entitled to intervene pursuant to Rule 24(b). Rule 24(b) addresses "permissive intervention" in two instances: (A) where the movant "is given a conditional right to intervene by a federal statute" or (B) where the movant "has a claim or defense that shares with the main action a common question of law or fact." Permissive intervention is also unavailable to the Moving Parties.

As discussed above, Plaintiff's Motion for Leave merely seeks to add the Moving Parties to the above-referenced action. If the Moving Parties want to assert a claim or defense with the main action relating to the facts alleged in the SAC, they may do so in an Answer or Counterclaim *after* Motion for Leave has been granted and the SAC is filed.

The Moving Party focuses its argument as to whether it can intervene under Rule 24(b) on the lack of prejudice to the original parties if intervention is granted. However, prejudice is irrelevant here because the Moving Parties simply aren't entitled to permissive intervention in the first place.

**C.     The SAC Does Not Contain Confidential or Trade Secret information**

The Motion fails to offer sufficient grounds for further sealing the record. To warrant sealing the SAC, the Moving Parties must present "compelling reasons" for overriding the strong public interest in the proceedings. However, the confidential information the Moving Parties seek to seal are not protectable.

8
PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BACKPAGE, LLC'S, PAYMENT SOLUTIONS, B.V.'S, ADTECH, B.V.'S, AD REPUTATIONS SOLUTIONS B.V.'S, AND CARL FERRER'S EMERGENCY MOTION TO INTERVENE AND SEAL DOCUMENTS

> In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. The strong presumption of access to judicial records applies fully to dispositive pleadings, including motions for summary judgment and related attachments.

*Apple Inc. v. Psystar Corp.*, 2012 WL 10852, *1-2 (N.D. Cal. 2012) (citations omitted).

The Moving Parties claim that the SAC discloses confidential or trade secret information, which they describe as (1) the identity of Backpage, (2) Backpage's business partners and affiliates, and (3) contracts and agreements.  Each of the claims rings hollow because these items are either not confidential because they are not protectable information (e.g., readily ascertainable) or simply are not disclosed in the SAC.

First, as a preliminary matter, the Motion only vaguely alludes to indistinct trade secrets and cites to publicly available information.  In so doing, the Motion completely fails to identify or describe any specific items deserving protection.

Second, Plaintiff must be able to name the defendants against whom it is stating its claim. Where Backpage breached its agreement with Plaintiff and did so in collusion with other identified individuals, aiders and abettors, alter egos and co-conspirators, Plaintiff must name them in order to plead a proper action. Therefore, the identities of Backpage's CEO, Carl Ferrer, Payment Solutions, B.V., AdTech, B.V., or Ad Reputations Solutions, B.V (d.b.a. Postfaster.com) as proposed defendants are not confidential.

Third, the identities and relationships between the Moving Parties are publicly available:

- Backpage's financial relationships are disclosed, among other places, in an order denying a motion for preliminary injunction issued in *Backpage.com LLC v. Dart*, Case No. 1:15-cv-06340, United States District Court, Northern District of Illinois, which is available publicly online.  (Rome Dec., ¶ 21(a), Exh. L.)

9

- Carl Ferrer is identified as CEO of Backpage in scores of internet search engine results. (Rome Dec., ¶ 21(b), Exh. M.)

- The "Privacy Policy" section of Backpage.com's public website lists "Payment Solutions, B.V." as the contact for all "International Correspondence." (Rome Decl., ¶ 21(c), Exh. N. )

- The "Terms of Use" found on Cracker.com's website state that the site is "provided by AD Tech B.V." (Rome Decl., ¶ 21(d), Exh. O.)

- The "Privacy Policy" section of Postfastr.com's website identifies its contact as "Ad Reputation Solutions B.V., Schijfstraat 26A, 5061 KB Oisterwijk, The Netherlands." (Rome Decl., ¶ 21(e), Exh. P.)

- AdTech, B.V.'s designated copyright agent is Carl Ferrer, its COO, and shares the same address as Backpage at 2501 Oak Lawn Ave. Suite #700. Dallas, TX 75219. This is a public document. (Rome Dec., ¶ 21(f), Exh. Q.)

- Postfaster.com (administered by Ad Reputation Solutions B.V.) has a designated copyright agent with the same address as Backpage at 2501 Oak Lawn Ave. Suite #700. Dallas, TX 75219. This is a public document. (Rome Dec., ¶ 21(g), Exh. R.)

- The Moving Parties' network of affiliation with Backpage is celebrated public knowledge online, e.g., from http://titsandsass.com/what-the-hell-is-going-on-with-backpage/: "Use your cards, including your AMEX at their sister site, http://www.postfastr.com/…it funds your BP account, then sign in and post your ads as usual!" (Rome Dec., ¶ 20, Exh. K.)

- Any customer initiating a chargeback for a refund from Backpage will be put in contact with Backpage's processor – in this case, JetPay. (Rome Decl., ¶ 22.)

Readily ascertainable information is not protectable. *Wysong Corp. v. M.I. Industries*, 412 F.Supp.2d 612, 626 (E.D. Mich. 2005); *Alliantgroup, L.P. v. Feingold*, 803 F.Supp.2d 610 623-4 (S.D. Tex. 2011). Given that the identities and relationships between the Moving

Defendants themselves and with Backpage is publicly available, that information should not be sealed. *Apple Inc.*, 2012 WL 10852 at *1-2.

As for the volume of the processing, that too is not confidential but, rather, bespeaks the dollar value of the fraud damages perpetrated upon Plaintiff by all defendants, current and proposed. S*ee Encyclopedia Brown Productions, Ltd. v. Home Box Office, Inc*., 26 F.Supp.2d 606, 613 (S.D.N.Y. 1998). (court denied motion to seal finding that licensing fee amounts are generally disclosed to third parties and that disclosure poses little if any harm.) Nevertheless, to the extent that any confidentiality exists in the statements alone, Plaintiff already filed those items under seal in the accompanying appendix, not in the SAC. (*See* Dkt. No. 101.)

Moving Parties incorrectly contend that Plaintiff learned about the matters alleged in the SAC "in the course and scope of Plaintiff's work for Backpage," and that these matters therefore require confidential treatment. (*See* Dkt. No. 102, Motion, p. 9.) However, the Moving Parties did not disclose any of this purported confidential information to Plaintiff during their work together, i.e., under their previous agreements. Rather, the Moving Parties fraudulently withheld all information from Plaintiff regarding their business with the JetPay Defendants, hoping Plaintiff would never find out. Plaintiff discovered the existence of the processing by way of a ***subpoena*** issued in this action and ***not*** by any confidential exchange during Plaintiff's work with Backpage.

Plaintiff learned that Backpage breached its prior agreement with Plaintiff providing for exclusivity of setting up payment processing relationships and negotiating rates. (Dkt. Nos. 100-4, SAC, ¶¶ 50, 52-57.) Backpage completely cut Plaintiff out of its contractually mandated rights to set up processing relationships by entering into direct processing relationships with the JetPay Defendants and concealing the existence thereof, the amounts paid out, the other intermediaries and affiliates involved, and the instrumentalities they employed in effectuating these acts. (*Id*., SAC, ¶¶ 50, 52-58.) With this information, Plaintiff easily pieced together the network of potential defendants with other publicly available information.

11
PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BACKPAGE, LLC'S, PAYMENT SOLUTIONS, B.V.'S, ADTECH, B.V.'S, AD REPUTATIONS SOLUTIONS B.V.'S, AND CARL FERRER'S EMERGENCY MOTION TO INTERVENE AND SEAL DOCUMENTS

The Moving Parties point to, *inter alia*, page 7 of the Memorandum in Support of Motion for Leave, as well as the supporting declaration of Eugene Rome at paragraphs 10 and 15, and the SAC at paragraph 58, which describe the dollar amounts processed by the Moving Parties, and under which Plaintiff claims its entitlement to fees. Again, the statements themselves, which may contain confidential information, are not attached to the SAC. The dollar figures reflect Plaintiff's damages and therefore are not confidential. S*ee Encyclopedia Brown Productions, Ltd.*, 26 F.Supp.2d at 613.

Lastly, Moving Parties also generally aver that the subject information is confidential and could be used by a competitor "who would otherwise need to invest time and resources developing such relationships, contracts and agreements." (Dkt. 102, Motion, p. 9; Dkt No. 103, Ferrer Decl. ¶3.) Yet, under scrutiny, these are just legal conclusions and generalized statements, devoid of actual meaning. It is impossible to discern from these general allegations what the trade secrets actually are, which relationships are confidential, how they could amount to trade secrets, and which agreements constitute trade secrets. As discussed above, nothing confidential is at issue here.

The fact remains, Plaintiff did not receive this information when the parties were working together. It was only after Plaintiff's repeated production demands in this litigation that the Moving Parties and the JetPay Defendants produced the seventeen (17) processing statements now at issue. Similarly, the Plaintiff learned the identities of Backpage's alter egos and affiliated companies from public records readily ascertainable online. The Motion should therefore be denied.

**D.** **The Moving Parties Will Not Be Prejudiced if Named as Defendants at this Time**

The Moving Parties argue that they will be prejudiced if they brought into this action with trial only five months away. However, in its Motion for Leave, Plaintiff was also requested a continuance of trial to permit sufficient opportunity for all parties to conduct additional discovery and motion practice with respect to the Moving Parties and to permit additional time to

prepare for trial. (Dkt. Nos. 100, 101, Motion for Leave, pp.15-18.) Should the Court grant the Motion for Leave, the Moving Parties will have sufficient opportunity to pursue discovery and prepare for trial, and so will not be prejudiced.

//

///

///

///

## IV.
## CONCLUSION

For the reasons stated above, the Moving Parties' Motion should be denied the Motion.

Respectfully submitted,

**David Steiner & Associates, PLC**

BY:  */s/David P. Steiner*
     David P. Steiner
     California Bar No. 64638
     dpsartnetlaw@gmail.com
     DAVID STEINER &
     ASSOCIATES, PLC
     1801 Century Park East, Suite 1600
     Los Angeles, CA 90067
     Telephone: (310) 557-8422
     Facsimile: (310) 556-0336
     Attorneys for Plaintiff

**LEHTOLA & CANNATTI PLLC**

BY:  */s/Patricia Beaujean Lehtola*
     Patricia Beaujean Lehtola
     State Bar No. 01997700
     plehtola@lc-lawfirm.com
     Phillip E. Cannatti
     State Bar No. 00793456
     pcannatti@lc-lawfirm.com

>Patrick C. Joost
>State Bar No. 24078759
>pjoost@lc-lawfirm.com
>LEHTOLA & CANNATTI PLLC
>5001 Spring Valley Road,
>Suite 400 East
>Dallas, Texas 75244
>(972) 383-1515 (Telephone)
>(866) 383-1507 (Facsimile)
>*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      This is to certify that on June 1, 2016, the foregoing was served upon counsel of record in accordance with the Federal Rules of Civil Procedure as set forth below by U.S. Mail or electronic filing.

COOPER& SCULLY, P.C.
Timothy Micah Dortch
Founders Square
900 Jackson Street, Suite 100
Dallas, Texas 75202
Tel.: 214/712-9501
Fax: 214/712-9540
**COUNSEL FOR DEFENDANTS**

                                        BY:   */s/Eugene Rome*
                                                Eugene Rome