THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CHILLY DIL CONSULTING INC.**, a Florida corporation, | § § § § | |
| Plaintiff, | § § | |
| V. | § § | CIVIL ACTION NO. 3:14-cv-02749-P |
| **JETPAY ISO SERVICES, LLC**, a Texas limited liability company; **JETPAY, LLC**, a Texas limited liability company; **JETPAY CORPORATION**, a Delaware corporation; and **TRENT R VOIGT**, an individual, | § § § § § § § | |
| Defendants. | § | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL NON-PARTY BACKPAGE.COM, LLC TO COMPLY WITH SUBPOENA *DUCES TECUM* AND TO HOLD BACKPAGE.COM, LLC IN CONTEMPT**

# **TABLE OF CONTENTS**

I. OVERVIEW ........................................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................................. 1

III. LEGAL STANDARD ......................................................................................................... 5

IV. ARGUMENT ....................................................................................................................... 5

A. Backpage Has Waived Their Right to Assert Any Objections to the Subpoena ................ 6

B. The Subpoena Seeks Documents Relevant to Plaintiff's Claims Against the
   JetPay Defendants ............................................................................................................. 6

C. The Documents Produced by Backpage Thus Far Are Incomplete and Fail to
   Provide the Information Sought ........................................................................................ 8

D. Backpage Should Be Held In Contempt ............................................................................ 9

VI. CONCLUSION .................................................................................................................. 11

## **TABLE OF AUTHORITIES**

**Cases**

*Carroll v. The Jaques Admiralty Law Firm, P.C.,* 110 F.3d 290, 292 (5th Cir.1997).................. 10
*Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 2132 (1991)................................. 10
*Coleman* v. *District of Columbia,* 275 F.R.D. 33, 36 (D.D.C. 2011) ............................................ 5
*Convertino* v. *Us. Dep't of Justice,* 565 F. Supp. 2d 10, 12 (D.D.C. 2008 ..................................... 5
*Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1341 (8th Cir. 1975)…………………………9
*In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2nd Cir. 1998)......................................................... 6
*In re Rosenthal,* 2008 WL 983702, at *8 (S.D. Tex., Mar. 28, 2008) ........................................... 9
*Rendon Group, Inc.* v. *Rigsby,* 268 F.R.D. 124, 126 (D.D.C. 2010) ............................................. 5
*Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983)……………………9
*Senate Permanent Subcommittee on Investigations v. Ferrer* ...................................................... 11
*Toon v. Wackenhut Corrections Corp.,* 250 F.3d 950, 952 (5th Cir.2001) ................................. 10
*United States v. Bryan*, 339 U.S. 323 (1950)……………………………………………………..9
*Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 798, 107 S.Ct. 2124, 2132, 95 L.Ed.2d 740 (1987) ......................................................................................................... 10

**Statutes**

Fed. R. Civ. P 26(b)(1).......................................................................................................... *passim*
Fed. R. Civ. P. 37(a)(l)..................................................................................................................... 5
Fed. R. Civ. P. 45 ................................................................................................................... *passim*

**Other Authorities**

Charles R. Richey, Moore's Federal Practice § 45.02[1] (3d ed.2007............................................ 9

# I.
# OVERVIEW

Plaintiff Chilly Dil Consulting, Inc. ("Chilly Dil" or "Plaintiff") hereby submits this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 45, to compel compliance by non-party Backpage.com, LLC. ("Backpage") with the subpoena *duces tecum* issued on December 11, 2015 in connection with the above-referenced action, and hold Backpage in contempt. Chilly Dil submits a proposed order calling for such production concurrently herewith.

# II.
# FACTUAL BACKGROUND

Chilly Dil filed the above-referenced action on July 31, 2014 alleging causes of action for Breach of Written Contract; Money Had and Received; Tortious Interference with Existing Contract; Violation of the Texas Theft Liability Act; and Negligence against JetPay ISO Services, LLC, JetPay LLC, JetPay Corporation, and Trent R. Voigt (collectively, "JetPay Defendants"). (Dkt. No. 1.) On February 3, 2016, Plaintiff filed its First Amended Complaint ("FAC") against the JetPay Defendants to add a claim for Breach of Oral Contract after seeking leave from the Court. (*See* Dkt. No. 95.) The basis of Plaintiff's Complaint is that the JetPay Defendants breached their written and oral contracts with Plaintiff by failing pay Plaintiff its share of fees they received for processing credit card payments for Backpage and its related entities. (*See Id.*)

On December 11, 2015, Plaintiff issued a subpoena to Backpage, seeking, *inter alia*, documents reflecting processing completed for Backpage by the JetPay Defendants, and communications and agreements between Backpage, its related entities, and the JetPay Defendants. (Appendix, pp. 2, 7-24; Rome Decl. ¶ 3, Exh. A.) After seeking several extensions,

Backpage eventually produced statements on or about January 28, 2016 for total payments processed and related transaction fees that were settled with third party financial institutions Bank Frick and EMS for the period 2014 and 2015. (Appendix, p. 2; Rome Decl., ¶ 4.) It was unclear if information in the statements provided included payments processed for Postfaster.com ("Postfaster") and Cracker.com ("Cracker") – related Backpage entities – in additional to Backpage. (*Id*.)

On February 15, 2016, David Steiner, counsel for Backpage, sent a letter to Backpage's general counsel, Liz McDougall, explaining that the production was deficient and demanding that further information needed to be provided. (Appendix, pp. 2, 25-26; Rome Decl., ¶ 5, Exh. B.) On February 18, 2016, Backpage produced two additional, but indecipherable spreadsheets that purportedly related to American Express transactions only. (*Id*. at p. 2; Rome Decl., ¶ 6.) Ms. McDougall further claimed that Cracker transactions were included in the statements that had previously been produced, and that Postfaster did not have any Visa or MasterCard transactions with JetPay. (*Id*. at pp. 2-3, 27; Rome Decl., ¶6, Exh. C.)

On February 19, 2016, Mr. Steiner responded that he believed that the production was still deficient. On February 29, 2016, Eugene Rome, also counsel for Plaintiff, emailed Ms. McDougall explaining that that were major gaps in Backpage's production and requesting that the parties meet and confer on this issue. Ms. McDougall refused to meet and confer, believing that Backpage had fully complied with its obligations under the subpoena. Mr. Rome explained that it was difficult to ascertain from the statements provided what were the discount rates and processing fees paid to the JetPay Defendants. In addition, Mr. Rome identified a 2004 financial document given by Backpage to Plaintiff that identified "discounts and processing fees" of $8,603,506. Mr. Rome asked for a breakdown of this number and to show to whom the money

was paid. Mr. Rome further stated that agreements with the JetPay Defendants that were requested in the subpoena also had not been produced. (Appendix, pp. 3, 28-32; Rome Decl., ¶7, Exh. D.)

On March 3, 2016, Mr. Rome sent a letter to Ms. McDougall, again explaining in detail what documents were missing from Backpage's production. Later that day, Backpage's newly retained outside counsel, Ann Marie Painter of Perkins Coie, contacted Mr. Rome and promised to look into Backpage's non-compliance. (Appendix pp. 3, 33-41; Rome Decl. ¶ 8, Exh. E.)

Still not having received any further production from Backpage, on March 29, 2016, Mr. Rome contacted Ms. Painter asking her for a status update on the production. Ms. Painter responded by proposing that if Backpage provided the breakdown of the $8,603,506, then Backpage wouldn't need to produce anything further. On March 30, 2016, Mr. Rome emailed Ms. Painter and rejected her proposal, explaining again that Backpage was still required to meet its legal obligations to comply with the subpoena. (Appendix pp. 3-4, 42-44; Rome Decl., ¶ 9, Exh. F.).

After further delay and continued probing by Plaintiff's attorneys, on April 12, 2016, Backpage finally produced seventeen (17) processing statements reflecting processing of only American Express transactions by the JetPay Defendants for Backpage. In the email that included the weblink to the production, Ms. Painter referred to a supposed "agreement" between Backpage and Chilly Dil's counsel as to what documents requested in the subpoena would be produced. (*Id*.) On April 12, 2016, Plaintiff's counsel, Eugene Rome, sent an email to Ms. Painter explaining that Backpage's production was still deficient because it failed to include (1) any statements reflecting Visa and MasterCard processing activity; and (2) any of the agreements between the Jetpay Defendants and Backpage and its related entities. Further, he stated that

Plaintiff never agreed to forfeit its right to demand proper compliance with the subpoena. (Appendix, pp. 4, 45-47; Rome Decl., ¶ 10, Exh. G.)

In response, on April 27, 2016, Jason Elliott, also of Perkins Coie, served additional processing information that Backpage claimed to be "all remaining processing information that has not previously been produced" to Plaintiff. That same day Mr. Rome sent an email again explaining that the production was still deficient because the agreements requested were needed to interpret the statements. He also noted all the other documents requested in the subpoena that have still not been produced, including emails and correspondence between Carl Ferrer of Backpage and Trent Voigt of JetPay LLC and their representatives. Backpage's counsel stated that he would get back to Mr. Rome with answers to his questions. (Appendix, pp. 4-5, 48-53; Rome Decl., ¶11, Exh. H.)

Significantly, throughout these exchanges, Backpage's counsel repeatedly acknowledged that additional responsive documents existed and were in the possession of Backpage. However, Backpage's attorneys attempted to condition production of said documents upon Plaintiff's agreement not to name Backpage (or its related companies) as defendants in any subsequent legal proceeding. (Appendix, p. 5; Rome Decl., ¶12.) Mr. Rome explained that the two matters were entirely separate and that Backpage had an existing obligation to produce the entirety of responsive documents in its possession, custody and control as a result of being served with a subpoena for the subject documents. (*Id*.) Mr. Rome elaborated that, as a matter of law, conditioning the compliance with a valid subpoena upon a forfeiture of claims was not proper. (*Id*.) Still, Backpage refused to make the production, insisting that Plaintiff first agree to waive any rights it had against Backpage. Plaintiff was not willing to do so and Backpage, for its part, has steadfastly refused to produce documents it acknowledged to be both in its possession and

responsive to the Subpoena.  (*See e.g.* Appendix, pp. 3-5, 42-53; Rome Decl., ¶¶9 -12, Exhs. F, G, H.)

To date, more than six months since the subpoena was issued, no further production has been made by Backpage. (Appendix, p. 5; Rome Decl., ¶ 13.)

## III.
## LEGAL STANDARD

The scope of the federal civil discovery statutes is broad, allowing for the discovery of "any non-privileged matter that is relevant to any party's claim or defense." *See* Fed. R. Civ. P 26(b)(1).  Rule 45 of the Federal Rules of Civil Procedure ("Rule") provides the framework for securing from non-parties, through the use of subpoenas, documents, electronically stored information, testimony and tangible things relevant to a pending litigation.  Fed. R. Civ. P. 45 (a), (b). It is well settled that the scope of a Rule 45 subpoena is informed by Rule 26.  *E.g., Coleman* v. *District of Columbia,* 275 F.R.D. 33, 36 (D.D.C. 2011); *Rendon Group, Inc.* v. *Rigsby,* 268 F.R.D. 124, 126 (D.D.C. 2010) ("Rule 26 of the Federal Rules of Civil Procedure defines and governs the scope of discovery for all discovery devices, and, therefore, Rule 45 must be read in light of it.").  Therefore, federal courts recognize that the "scope of discovery in civil actions is broad [and the] term 'relevance' at the discovery stage is [to be] broadly construed." *Convertino* v. *Us. Dep't of Justice,* 565 F. Supp. 2d 10, 12 (D.D.C. 2008).

The Federal Rules also provide federal courts with the power to compel compliance with subpoenas and disclosure requests that seek relevant information. *See* Fed. R. Civ. P. 45(c)(2)(B)(i); Fed. R. Civ. P. 37(a)(l).

## IV.
## ARGUMENT

### A. Backpage Has Waived Their Right to Assert Any Objections to the Subpoena

Rule 45 provides that a non-party witness may serve the subpoenaing party objections to the subpoena and the requests for documents sought therein. Fed. R. Civ. P. 45(d)(2)(B). The deadline to serve such objections is 14 days from the date the subpoena is served or the time specified in the subpoena. *Id*. Failure to serve objections within this time limit waives all grounds for objections, including privilege. *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2nd Cir. 1998).

Backpage was served with the subpoena on or about December 11, 2015. (Appendix, p.7; Rome Decl., Ex. A.) The subpoena demanded compliance by January 8, 2016. (*Id*.) Backpage has not served Chilly Dil with any objections to the subpoena between that time and the date of this motion, some six months later. (Appendix, pp. 2, 5; Rome Decl., ¶¶ 3, 13.) Therefore, Backpage has waived its right to assert any objections to the subpoena, including privilege, and must be ordered to comply with the subpoena.

### B. The Subpoena Seeks Documents Relevant to Plaintiff's Claims Against the JetPay Defendants

The documents requested by Plaintiff included:

- Communications by and between Backpage and JetPay (and its respective representatives). (*See* Appendix, pp. 15, 18-20; Rome Decl., Exh. A, Requests Nos. 1, 2, 32, 33, 34, 35, 37, 42, 45, 46.)

- Agreements by and between Backpage and JetPay entities. (*See* Appendix, p. 16; Rome Decl., Exh. A, Requests Nos. 3, 4.)

- Agreements by and between Backpage and third party financial institutions including Bank Frick, Catella Bank, S.A., European Merchant Services, Esquire Bank, and Omnipay Ltd. (*See* Appendix, pp. 16-17; Rome Decl., Exh. A, Requests Nos. 5, 7, 12, 17, 23.)

- All processing statements received from the above institutions for the relevant period. (*See* Appendix pp. 16-18, 20; Rome Decl., Exh. A, Requests Nos. 6, 8, 9, 10, 11, 13, 14, 15, 16, 18, 19, 20, 21, 23, 24, 25, 26, 28, 29, 30, 31, 45.)

- Documents showing how much money JetPay realized from its relationship with Backpage.com. (*See* Appendix, pp. 20-21; Rome Decl., Exh. A, Requests No. 49-57.)

- Documents related to processing for Postfaster and Cracker. (*See* Appendix, p. 21; Rome Decl., Exh. A, Requests Nos. 58, 59.)

- Documents related to the $5 million reserve (see Exhibit A). (*See* Appendix, p. 22; Rome Decl., Exh. A, Request No. 65.)

- Documents reflecting settlement and authorization of Backpage pre-paid card transactions. (*See* Appendix, pp. 19, 21; Rome Decl., Exh. A, Requests Nos. 36, 37, 38, 60, 61, 62, 63.)

These documents are unquestionably relevant to prove Plaintiff's claims against the JetPay Defendants. As stated above, Plaintiff has brought the above-referenced action against the JetPay Defendants due to the JetPay Defendants' breach of their written and oral contracts with Plaintiff by failing to pay Plaintiff its share of fees they received for processing credit card payments for Backpage. Plaintiff, who facilitated the processing relationship formed between the JetPay Defendants and Backpage, is entitled to these fees. Plaintiff is also entitled to fees it would have received for the processing of Cracker and Postfaster (related Backpage entities) payments by JetPay, as these relationships were only formed with JetPay due to Chilly Dil. As such, Plaintiff is entitled to all the processing statements requested for Visa, MasterCard, American Express, and any other credit cards processed by the JetPay Defendants for Backpage and its related entities. All agreements and communications between the JetPay Defendants and Backpage and its related entities are also discoverable as they may assist in deciphering the processing statements and determine the discounts rates and processing fees paid to the JetPay Defendants by Backpage.

Further, the documents reflecting settlement and authorization of Backpage pre-paid card transactions are necessary to ascertain the degree and volume of activity transacted by the JetPay Defendants for Backpage in authorizing and settling pre-paid cards in the U.S. during a period when Backpage was purportedly processing in the E.U. exclusively. The subpoena therefore asks for Backpage to produce all documents reflecting the settlement and authorization of Backpage pre-paid card transactions so that Plaintiff may determine which entity actually processed the payments and how much additional fees Plaintiff is owed.

Because all these documents are relevant to prove Plaintiff's claims and damages, Backpage is required to produce them. *See* Fed. R. Civ. P 26(b)(1), 45 (a), (b).

## C.    The Documents Produced by Backpage Thus Far Are Incomplete and Fail to Provide the Information Sought

Between January 28 and April 27, 2016, Backpage has produced some processing statements in response to the subpoena. (Appendix, pp. 2, 4; Rome Decl., ¶¶ 4, 6. 10, 11.) However, these documents are indecipherable without the assistance of agreements and other documents to explain them. Specifically, the processing statements fail to show (1) which JetPay entity (or entities) were being paid; (2) for which Backpage entity the payments were being processed; (3) whether the payments processed were for Visa, MasterCard, American Express or any other credit card; (4) what processing fees were paid to the JetPay Defendants; and (5) the discount rates applied to the JetPay defendants.

Despite Plaintiff repeatedly noting these deficiencies and demanding that a full production of the agreements, etc. be made, Backpage has refused to comply with its obligations under the subpoena. Rather than provide a full production as it is required to do, Backpage has

instead chosen to cherry pick what it will and will not produce to Plaintiff. Such behavior runs contrary to the clear intention of Rule 26 and 45. *See* Fed. R. Civ. P. 26(b)(10, 45(a), (b).

Backpage has not stated any basis for their refusal to comply with the full production demanded under the subpoena other than its desire that Plaintiff waive all existing claims against it in exchange for the production. Further, it has waived all objections that it may assert to the demands therein. *See* Part IV(A). As such, the Court should grant Plaintiff's Motion and order Backpage to produce all documents sought by the Subpoena in full, and without any objections.

### D. Backpage Should Be Held In Contempt

A subpoena is a court order that requires a person to whom it is directed to give testimony or produce evidence. *In re Rosenthal,* 2008 WL 983702, at *8 (S.D. Tex., Mar. 28, 2008) Backpage, a non-party to the underlying suit, was served with a subpoena under Rule 45 of the Federal Rules of Civil Procedure. "Rule 45 authorizes a court to hold a person in contempt who fails, without adequate excuse, to obey a subpoena. Thus, if a person disregards a subpoena and fails to comply without filing timely objections, the person may be found in contempt of court regardless of whether a court order is in effect." *Id*. (citing 9 Charles R. Richey, Moore's Federal Practice § 45.02[1] (3d ed.2007).)[1] The record is clear that the subject

---

[1] Charles R. Richey, Moore's Federal Practice § 45.62[3] (3d ed. 2007) ("Because the subpoena is an order of the court ... contempt sanctions are available merely for the initial disobedience of the subpoena, and a prior court order compelling compliance with the subpoena is not invariably required"); *see also Pennwalt Corp. v. Durand-Wayland, Inc.,*708 F.2d 492, 494 (9th Cir.1983) ("A subpoena [under Rule 45] is itself a court order, and non-compliance may warrant contempt sanctions");*United States v. Bryan,* 339 U.S. 323 (1950) ("A subpoena is a lawfully issued mandate of the court issued by the clerk thereof. It is the responsibility of every citizen to respond to this mandate"); *Fisher v. Marubeni Cotton Corp.,* 526 F.2d 1338, 1341 (8th Cir.1975) (Failure by any person without adequate excuse to obey a subpoena served upon him may be deemed a contempt of the court from which the subpoena issued"); *Waste Conversion, Inc. v. Rollins Envtl. Srvcs. (NJ), Inc.,* 893 F.2d 605, 608 (3d Cir.1990) (en banc) (assuming "for purposes of this appeal" that a failure to comply with a Rule 45 subpoena could subject a person to contempt").

subpoena was served on Backpage on December 11, 2015. The record is equally clear that Backpage *never* objected to the subpoena. Moreover, the record is clear that responsive documents exist and that Backpage has simply elected to withhold production based on its expressed requirement that it be released from any future claim.

Separate and apart from the powers under Rule 45, a federal court may also exercise its inherent power when necessary to ensure justice. "[I]t is firmly established that '[t]he power to punish for contempt is inherent in all courts." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 2132 (1991) (citations omitted). This inherent power reaches conduct demonstrated both in the presence of the court and conduct committed beyond the confines of the court, when "[t]he underlying concern that gave rise to the contempt power was not ... merely the disruption of court proceedings, [but are acts of disobedience], regardless of whether such disobedience interfered with the conduct of trial." *Id.* (quoting *Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 798, 107 S.Ct. 2124, 2132, 95 L.Ed.2d 740 (1987)) (internal citations omitted). Of particular significance in these instances, is the Court's inherent power to manage its own affairs and address conduct that both violates its orders and threatens the integrity of the judicial process. *Id*. at 43. In regard to inherent power, the Fifth Circuit has reasoned, "[w]hen a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions." *Toon v. Wackenhut Corrections Corp.,* 250 F.3d 950, 952 (5th Cir.2001) (quoting *Carroll v. The Jaques Admiralty Law Firm, P.C.,* 110 F.3d 290, 292 (5th Cir.1997)).

In this case, there is simply no valid legal justification for Backpage's conduct. Rather, armed with both in-house and capable outside counsel, Backpage has elected to disregard the subpoena, which is an order of Court, and insist that in exchange for complying with this order

Plaintiff simply waive its existing rights against Backpage. Backpage should be held in contempt.

Indeed, disregarding subpoenas has become something of a practice by Backpage. Most recently, Backpage's CEO, Carl Ferrer, has elected to disregard a subpoena from the United States Senate, leading to the Committee Chairman, Rob Portman, to designate the refusal to comply with the subpoena as "a clear act of contempt," and leading the Senate to hold a contempt hearing wherein by a vote of 96-0, the Senate held Ferrer in civil contempt after he refused to appear before the Senate Homeland Security and Government Affairs Committee's Subcommittee on Investigations. (Appendix, pp. 5, 54-55; Rome Decl. ¶ 14, Exh. I.) The Permanent Subcommittee on Investigations proceeded to commence a contempt action against Backpage's CEO, Carl Ferrer in order to enforce the subpoena entitled: *Senate Permanent Subcommittee on Investigations v. Ferrer*, United States District Court for the District of Columbia Case No.: 1:16-mc-00621-RMC. (Appendix, pp. 5-6, 56-64; Rome Decl. ¶ 15, Exh. J.)

This dilatory position exemplifies the circumstances under which contempt sanctions are to be issued. If ever a situation called for the initiation of contempt proceedings, this is it. The Court is respectfully requested to fashion a remedy that both holds Backpage accountable for its intentional wrongful disobedience of Court and, further, compensates Plaintiff for the fees and expenses it has incurred as a result of Backpage's 6-month long obstruction of Plaintiff's discovery efforts.

### VI.   CONCLUSION

For the reasons stated above, the Court should entered an order compelling Backpage to produce all the documents requested under the subpoena without any objection. The Court is

further requested to hold Backpage in contempt for its intentional disregard of its legal obligations under the subpoena.

          Respectfully submitted,

          **David Steiner & Associates, PLC**

BY:    */s/David P. Steiner*
        David P. Steiner
        California Bar No. 64638
        dpsartnetlaw@gmail.com
        DAVID STEINER & ASSOCIATES, PLC
        1801 Century Park East, Suite 1600
        Los Angeles, CA 90067
        Telephone: (310) 557-8422
        Facsimile: (310) 556-0336
        Attorneys for Plaintiff

**LEHTOLA & CANNATTI PLLC**

BY:    */s/Patricia Beaujean Lehtola*
        Patricia Beaujean Lehtola
        State Bar No. 01997700
        plehtola@lc-lawfirm.com
        Phillip E. Cannatti
        State Bar No. 00793456
        pcannatti@lc-lawfirm.com
        Patrick C. Joost
        State Bar No. 24078759
        pjoost@lc-lawfirm.com
        LEHTOLA & CANNATTI PLLC
        5001 Spring Valley Road, Suite 400 East
        Dallas, Texas 75244
        (972) 383-1515 (Telephone)
        (866) 383-1507 (Facsimile)
        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that on June 16, 2016, the foregoing was served upon counsel of record in accordance with the Federal Rules of Civil Procedure as set forth below by U.S. Mail or electronic filing.

COOPER& SCULLY, P.C.
Timothy Micah Dortch
Founders Square
900 Jackson Street, Suite 100
Dallas, Texas 75202
Tel.: 214/712-9501
Fax: 214/712-9540
**COUNSEL FOR DEFENDANTS**

BY: _/s/Eugene Rome_
Eugene Rome