Exhibit  A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CHILLY DIL CONSULTING INC., a** | § | |
| **Florida corporation,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 3:14-cv-02749-N** |
| | § | |
| **JETPAY ISO SERVICES, LLC, a Texas** | § | |
| **limited liability company; JETPAY, LLC, a** | § | |
| **Texas limited liability company; JETPAY** | § | |
| **CORPORATION, a Delaware corporation;** | § | |
| **and TRENT R. VOIGT, an individual,** | § | |
| | § | |
| **Defendants.** | § | |

_____

**BACKPAGE.COM, LLC'S <u>AMENDED</u> RESPONSE AND BRIEF IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO COMPEL NON-PARTY BACKPAGE.COM, LLC TO**
**COMPLY WITH SUBPOENA DUCES TECUM AND TO HOLD BACKPAGE IN**
**CONTEMPT, AND**
**BACKPAGE.COM, LLC'S CROSS-MOTION FOR PROTECTIVE ORDER AND**
**ATTORNEYS' FEES**

_____

Non-party Backpage.com, LLC ("Backpage.com"),[1] files this <u>Amended</u> Response and

Brief in Opposition to Plaintiff's Motion to Compel Non-Party Backpage.com, LLC to Comply

With Subpoena Duces Tecum and to Hold Backpage in Contempt, and Cross-Motion for

Protective Order and Attorneys' Fees, and would further show the Court as follows:

---

[1] Plaintiff erroneously identifies Backpage.com, LLC as "Backpage, LLC."

# TABLE OF CONTENTS

**Page**

I.  SUMMARY OF THE RESPONSE .................................................................. 1

II.  RELEVANT FACTS AND PROCEDURAL HISTORY ................................... 2

III.  ARGUMENT AND AUTHORITIES ............................................................. 6

  A.  Applicable Legal Standards ................................................................. 6

  B.  Plaintiff's Motion Is Not Properly Before This Court ......................... 8

    1.  The Central District of California has sole jurisdiction to hear or transfer this discovery dispute .................................................. 8

    2.  The Local Rules of the Central District of California contain extensive conference and briefing requirements to which Plaintiff has not adhered to prior to filing this Motion ......................................... 10

  C.  In the Alternative, the Court Should Deny Plaintiff's Motion as Untimely ........ 12

  D.  In the Alternative, the Court Should Deny Plaintiff's Motion and Grant Backpage.com's Request for a Protective Order .................................................. 14

    1.  Backpage.com's objections should not be considered "waived" under these circumstances ......................................................... 14

    2.  Plaintiff has not demonstrated the existence of any non-objectionable categories of documents purportedly withheld ................. 15

    3.  In addition to the grossly overbroad scope of the subject matter, compliance costs resulting from searching and producing the responsive data is staggering ................................................ 20

  E.  Backpage.com Should Be Awarded Its Reasonable Expenses, Including Attorneys' Fees ............................................................................... 21

IV.  CONCLUSION .............................................................................................. 22

**TABLE OF AUTHORITIES**

**Page**

CASES

*Agincourt Gaming, LLC v. Zynga, Inc.*,
2014 WL 4079555 (D. Nev. Aug. 15, 2014) ....................................................8, 9

*Alexander v. F.B.I.*,
186 F.R.D. 21 (D.D.C. 1998)......................................................................15

*Am. Fed'n of Musicians v. Skodam Films, LLC*,
313 F.R.D. 39 (N.D. Tex. 2015) ............................................................. passim

*Burris v. Brazell*,
351 F. App'x 961 (5th Cir. 2009) ..............................................................13

*Cargill Meat Sols. Corp. v. Premium Beef Feeders, LLC*,
2015 WL 3935726 (D. Kan. June 26, 2015)..................................................10

*Celanese Corp. v. E.I. duPont de Nemours & Co.*,
*58 F.R.D. 606* (D. Del. 1973) ....................................................................15

*Days Inn Worldwide, Inc. v. Sonia Invs.*,
237 F.R.D. 395 (N.D. Tex. 2006) ...........................................................12, 13

*Grey v. Dallas Indep. Sch. Dist.*,
265 F. App'x 342 (5th Cir. 2008) ..............................................................13

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
1991 WL 172930 (N.D. Ohio June 21, 1991).................................................15

*Johnson v. Simmons*,
2015 WL 2155714 (S.D. Miss. May 7, 2015) .................................................9

*Krause v. Nev. Mut. Ins. Co.*,
2014 WL 496936 (D. Nev. Feb. 6, 2014) ......................................................17

*Krewson v. City of Quincy*,
120 F.R.D. 6 (D. Mass.1988)....................................................................15

*Moon v. SCP Pool Corp.*,
232 F.R.D. 633 (C.D. Cal. 2005) ...............................................................19

*Paso Del Norte Motors, LP v. Kia Motors of Am., Inc.*,
2015 WL 4939948 (N.D. Tex. Aug. 19, 2015)..................................................9

## TABLE OF AUTHORITIES
(continued)

**Page**

*Semex All. v. Elite Dairy Genomics, LLC*,
  2014 WL 1576917 (S.D. Ohio Apr. 18, 2014) ........................................................10

*Semtek Int'l, Inc. v. Merkuriy Ltd.*,
  1996 WL 238538 (N.D.N.Y. May 1, 1996)...........................................................15

*Shaw Grp., Inc. v. Zurich Am. Ins. Co.*,
  2014 WL 204244 (M.D. La. Jan. 17, 2014)............................................................9

*SynQor, Inc. v. Vicor Corp.*,
  2014 WL 2519242 (N.D. Tex. June 3, 2014) ..........................................................9

*Tiberi v. Cigna Ins. Co.*,
  40 F.3d 110 (5th Cir. 1994) ....................................................................................7

*Travelers Indem. Co. v. Metro. Life Ins. Co.*,
  228 F.R.D. 111 (D. Conn. 2005)..............................................................................7

*U.S. Risk Ins. Grp., Inc. v. U.S. Risk Mgmt., LLC*
  2014 WL 4055372 (N.D. Tex. Aug. 15, 2014)........................................................9

*Williams-Pyro, Inc. v. Warren Watts Tech., LLC*,
  2015 WL 9680265 (N.D. Tex. Aug. 6, 2015) .......................................................12

### OTHER AUTHORITIES

FED. R. CIV. P. 16......................................................................................................12

FED. R. CIV. P. 16(b) .................................................................................................12

FED. R. CIV. P. 26(b)(2)(C) ......................................................................................19

FED. R. CIV. P. 37................................................................................................9, 12

FED. R. CIV. P. 45 ............................................................................................. passim

FED. R. CIV. P. 45(c)(3).............................................................................................7

FED R. CIV. P. 45(d)(1) ...............................................................................15, 16, 22

FED. R. CIV. P. 45(f)..........................................................................................9, 12

## I.    <u>SUMMARY OF THE RESPONSE</u>

Plaintiff's motion to compel documents pursuant to its December 11, 2015, subpoena to Backpage.com (the "Subpoena") and to hold Backpage.com in contempt must be denied, and Backpage.com's cross-motion for a protective order and reasonable attorneys' fees should be granted, for multiple reasons.

First, this Court lacks jurisdiction to enforce the Subpoena. Under Rule 45, the *only* court with the power to enforce a subpoena (in the absence of a transfer) is the court in the jurisdiction where compliance with the subpoena was required. The Subpoena required the production of documents in Los Angeles, California – in the jurisdiction of the U.S. District Court for the Central District of California.  Plaintiff has filed its motion in the wrong court.  It must be denied for this reason alone.

Second, the motion is untimely under this Court's scheduling order.   The Court's November 5, 2015 Amended Scheduling Order set the discovery completion deadline of June 3, 2016, after extending that deadline by six months.  Plaintiff knowingly waited to file this motion until June 16, 2016, almost two weeks after the deadline.  Plaintiff has no excuse for this delay, and the motion should be denied as untimely.

Third, the sixty-six count Subpoena is egregiously over broad, unduly burdensome, and harassing. The Court has the inherent and statutory authority to prevent unjust and expensive activity by parties.  Should the Court exercise any authority on this motion, it should use its authority and discretion to quash the Subpoena.

Fourth, the motion runs directly afoul of Rule 45(d)'s requirement that Plaintiff and its counsel must seek to avoid imposing an undue burden on Backpage.com. The Subpoena is abusive even on its face. As such, Backpage.com is entitled to a protective order and should

further recover its reasonable attorneys' fees incurred due to the Subpoena and this related frivolous motion.

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

1.    On July 31, 2014, Plaintiff Chilly Dil Consulting Inc. ("Chilly Dil") filed this suit against JetPay ISO Services, LLC, JetPay LLC, doing business under the name JetPay Payment Services, JetPay Corporation ("JetPay"), as well as Trent Voigt ("Voigt"), JetPay's chairman (collectively, the "JetPay Defendants").

2.    Backpage.com operates an online classified advertising service. Backpage.com's services are available to users throughout the United States. Users of Backpage.com's website may post and review ads in a number of categories (*e.g.*, local places, community, buy/sell/trade, automotive, musician, rentals, real estate, jobs, dating, *et al.*) and numerous subcategories. Backpage.com charges users a fee for certain uses and features of its service.

3.    JetPay is an end-to-end credit and debit card processor providing payment processing services for eCommerce retailers on the internet, among other things.

4.    In the operative complaint, Chilly Dil alleged that it entered into an agreement with JetPay in 2011 through which Chilly Dil would be compensated for the referral of merchant clients to JetPay. First Am. Compl. ¶ 19 (Dkt. No. 95).

5.    In general terms, Chilly Dil further alleged that in March 2014, JetPay breached its contract with Chilly Dil to make payments for Chilly Dil's referral of Backpage.com to JetPay in conjunction with JetPay's processing of payments to Backpage.com. Additionally, Chilly Dil alleged that JetPay, through the actions of Trent Voigt, tortiously interfered with a contract between Chilly Dil and Backpage.com by alienating Backpage.com (including its main contact

person) from Chilly Dil.[2] Chilly Dil further asserted causes of action against the original JetPay Defendants for: (a) "money had and received," (b) claims under the Texas Theft Liability Act and (c) Texas common law for negligence. First Am. Compl. ¶¶ 61-68.

6.     On November 5, 2015, this Court issued an Amended Scheduling Order, which extended the discovery completion period by six months, to June 3, 2016. *See* Am. Scheduling Order (Dkt. No. 88).

7.     In the Subpoena, which is dated December 11, 2015, Plaintiff requested that Backpage.com produce documents responsive to 66 categories, many of them extremely broad, unlimited, and of no apparent relevance to the claims asserted at the time of its issuance. Plaintiff's appendix fails to establish evidence of the date of service of the Subpoena, or even that service of the Subpoena was properly effected, but represents that it was served on December 11, 2015.

8.     Despite the Subpoena's gross overreaching, Backpage.com has spent months communicating with Plaintiff's counsel in good faith efforts to identify and produce information and documents potentially relevant to Plaintiff's claims in this lawsuit. However, each time Plaintiff has agreed or appeared to agree to a scope of production, and Backpage.com has produced the corresponding documents, Plaintiff has turned around and asked for more. As demonstrated by Plaintiff's own appendix:

a.     Following a production of documents, Plaintiff's counsel sent a letter dated February 15, 2016, asserting that Backpage.com had not produced "any and all transactional records that relate to allegedly related entities Postfastr and Cracker."[3] The letter did not demand that Backpage.com otherwise respond to the

---

[2] *See* Pltf's First Am. Compl. ¶ 46.
[3] *See* Dkt. No. 118 at 30.

Subpoena as the Plaintiff is now asking the Court to compel and for which Plaintiff argues Backpage.com should be held in contempt.

b.    On February 18, 2016, Backpage.com responded, producing documents that detail American Express transactions, and notified Plaintiff that "relevant Cracker transactions would have been included in the previously produced omni pay statements and Postfastr had no VISA or MasterCard transactions with JetPay."[4] Backpage.com's counsel further noted that, "[w]ith this information, we consider our obligation to respond to your subpoena complete."

9.    On February 29, 2016, Plaintiff's counsel wrote that they had "further reviewed some of the items requested in the subpoena itself" and asked for a telephone conference to discuss those items.[5]

10.    The following day, on March 1, 2016, Backpage.com's counsel responded and expressed surprise given the previous discussions, supplemental production, and Plaintiff's insistence on discussing other "gaps," but nonetheless agreed to cooperate, and requested time to retain outside counsel in Texas.[6]

11.    On March 2, 2016, Plaintiff's counsel wrote asking for a "breakdown" of a figure in a document, already possessed by Plaintiff, that purported to show a sum for "discounts and processing fees." Plaintiff insisted on documentation showing to whom that money was paid. Plaintiff also requested "all agreements with Trent Voigt and the JetPay entities"—information easily obtainable directly from the parties already before the Court in this the litigation.[7]

---

[4] *See* Dkt. No. 118 at 33, Pltf's APP 27.
[5] *See* Dkt. No. 118 at 36, Pltf's APP 29.
[6] *See* Dkt. No. 118 at 37, Pltf's APP 30.
[7] *See* Dkt. No. 118 at 38, Pltf's APP 31.

Plaintiff's counsel also indicated that they intended to "review the production again" and would have "additional specific items we think are missing" with a goal to "narrow the issues."[8]

12.    The following day, Plaintiff's counsel sent a lengthy letter identifying numerous other categories of documents purportedly responsive to a majority of the original requests, and provided Backpage.com with 11 days to meet these new demands.[9]

13.    Shortly thereafter, Backpage.com retained the undersigned attorneys as outside counsel on this dispute. On April 12, 2016, Backpage.com again supplemented its production with documents demonstrating fees paid to JetPay entities.[10] Plaintiff responded that it was entitled to everything detailed in the 66-part Subpoena.[11]

14.    By mid-April 2016, Plaintiff began threatening not only to seek to compel production of all documents described in the Subpoena, but then also suggested, unless Bakcpage.com complied, it would attempt to join Backpage.com as a defendant in this lawsuit and seek millions of dollars. Counsel for Backpage.com reached an agreement with Plaintiff's counsel that, if Backpage.com produced all of its processing documents, Plaintiff would forbear filing suit and engage in direct settlement negotiations with Backpage.com. On April 27, 2016, Backpage.com provided Plaintiff with demanded processing records pertaining to separately-owned entities not previously considered responsive to Plaintiff's Subpoena. Upon receipt of these additional documents, Plaintiff's counsel again reneged on the agreement and reverted to demanding compliance with the 66-part subpoena that had not even been mentioned during discussion with Backpage.com's outside counsel.[12]

---

[8] *See* Dkt. No. 118 at 38, Pltf's APP 31.
[9] *See* Dkt. No. 118 at 41-43, Pltf's APP 33-35.
[10] *See* Pltf's Brief, Dkt. No. 117-1 at 6.
[11] See Dkt. No. 118 at 55-58, Pltf's APP 45-48.
[12] *See* Dkt. No. 118 at 61-63, Pltf's APP 50-52.

15.     When Backpage.com said it would not comply, Plaintiff sought to file a Second Amended Complaint to, in essence, assert mirror-image claims against Backpage.com (and others), including claims for money had and received, aiding and abetting JetPay's fraud, breach of contract, and tortious interference with Plaintiff's contract with JetPay. *See* Proposed Sec. Am. Compl. (Dkt. No. 104-1). The JetPay defendants and Backpage.com opposed the amendment, and the Court recently denied Plaintiff's request to amend the complaint and extend scheduling order deadlines. *See* Order (Dkt. No. 131).

16.     On May 6, 2016 Plaintiff requested leave to add Backpage.com as a party to this action and included its discovery grievances within the text of allegations of the proposed Complaint naming Backpage.com as a party ("Backpage acknowledged that it is in possession of statements from this processing but, to date, has inexplicably refused to produce"). *See* Dkt. No. 100-4.

17.     On June 16, 2016, nearly two weeks after the discovery completion deadline, six weeks after attempting to join Backpage.com as a Defendant, and six months after issuing the Subpoena, Plaintiff decided to file this motion.

18.     At this time, Plaintiff still has not articulated the basis upon which each one of the 66 categories of documents in the Subpoena are relevant or calculated to lead to admissible evidence vis-à-vis its pending claims against JetPay.

### III.    ARGUMENT AND AUTHORITIES

#### A.    Applicable Legal Standards

Federal Rule of Civil Procedure 45 governs the issuance of subpoenas and further determines which court has authority to enforce or grant protection from a subpoena. Under amendments to Rule 45 established in 2013, the court having jurisdiction over this subpoena is not this Court. Despite the fact that the underlying litigation is pending here, Rule 45 specifies

that the court having authority to determine a motion such as Plaintiff's (or to transfer it to another Court) must be the court located in the district where compliance with the subpoena is required—in this case, the Central District of California (Los Angeles, California).

To protect parties or non-parties from potential abuse of the subpoena power, a federal district court is empowered to grant a motion to quash or modify a subpoena. FED. R. CIV. P. 45(c)(3). The decision to quash or modify a subpoena is within the Court's discretion; the Court is under no obligation to employ the lesser remedy of modification before it may quash. *Tiberi v. Cigna Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994) (district court's decision to quash and encourage party to file more narrowly drawn subpoena, rather than ordering modification by court, was within court's sound discretion).

Courts also have broad discretion in determining whether a subpoena is unduly burdensome. Whether a subpoena imposes an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Travelers Indem. Co. v. Metro. Life Ins. Co.,* 228 F.R.D. 111, 113 (D. Conn. 2005).

Although Backpage.com did not serve formal written objections to Plaintiff's subpoena, numerous courts—including those in this District—have concluded that no "waiver" of objections should be found under circumstances analogous to those presented here. Specifically, objections not timely served may be considered in circumstances where counsel for the nonparty and for the subpoenaing party have been in contact; where the subpoena is overbroad on its face and exceeds the bounds of fair discovery; or where the subpoenaed witness is a non-party acting in good faith. *Am. Fed'n of Musicians v. Skodam Films, LLC*, 313 F.R.D. 39, 44 (N.D. Tex. 2015).

These circumstances are present here. First, Chilly Dil issued facially overbroad requests exceeding the bounds of fair discovery that made no regard for, or attempt to avoid, burdens that the subpoena would impose on Backpage.com. Additionally, Backpage.com is a non-party that has acted in good faith and attempted to comply with Chilly Dil's reasonable complaints, and made multiple productions after follow up discussions. Specifically, during Backpage.com's discussions with Plaintiff's counsel, Plaintiff regularly went back-and-forth as to the need for the vast majority of the materials requested—requested items would be abandoned, only to be re-demanded as soon as Backpage.com produced the responsive information that Plaintiff had identified. Counsel for Backpage.com also made numerous and repeated contacts with counsel for Chilly Dil—and believed in good faith that dispositive agreements had been reached—before resorting to court action.  Accordingly, the Court should not consider Chilly Dil's lack of formal written objections, to be held as a waiver of those objections.

**B.**    **Plaintiff's Motion is Not Properly Before This Court**

   **1.**    **The Central District of California has sole jurisdiction to hear or transfer this discovery dispute.**

Rule 45 was substantially amended in 2013. Since the amendment, courts have routinely confirmed the plain language of the rule, as amended—that is, motions to compel filed anywhere other than in the court where compliance is required necessarily fail for lack of jurisdiction. "[W]hen a motion to quash a subpoena is filed in a court other than the court where compliance is required, that court lacks jurisdiction to resolve the motion." *Agincourt Gaming, LLC v. Zynga, Inc.*, 2014 WL 4079555, at *3 (D. Nev. Aug. 15, 2014) (transferring subpoena-related motions to the Northern District of California where they should have been filed). This Court cannot assume jurisdiction over Plaintiff's subpoena by transferring the discovery dispute to itself, because that is a decision left to the sole discretion of the court properly having such

authority—in California. "[W]hen subpoena-related motions are filed in the wrong court, Rule 45(f) does not provide a means for transferring those motions to the court that issued the subpoenas." *Agincourt Gaming*, 2014 WL 4079555, at *4.

Based on the unequivocal language Rule 45 and the litany of opinions concluding that similar motions have been filed in the wrong court, there can be no doubt that Plaintiff's present motion is not ripe for a decision by this court in the absence of a transfer from the Central District of California. "[T]he question of whether this Court can hear and decide [subpoena related motions] is <u>not</u> a matter governed by Rule 45(f)'s discretionary analysis" *SynQor, Inc. v. Vicor Corp*., 2014 WL 2519242, at *3 (N.D. Tex. June 3, 2014) (refusing to transfer motion to quash and instead dismissing the motion without prejudice to refiling in the proper district) (emphasis added); *Paso Del Norte Motors, LP v. Kia Motors of Am., Inc.*, 2015 WL 4939948, at *1 (N.D. Tex. Aug. 19, 2015) (denying motion to compel and for sanctions where the subpoena, "by its terms, required compliance in Costa Mesa, California […] a location in another district, [therefore] this Court has no basis or authority to address this subpoena under Rule 37 or Rule 45"); *U.S. Risk Ins. Grp., Inc. v. U.S. Risk Mgmt.*, LLC, 2014 WL 4055372, at *1 (N.D. Tex. Aug. 15, 2014) (where "subpoena commanded [respondent] to produce the documents in Dallas, Texas[,] the Northern District of Texas is the court proper court in which to seek relief because subpoena, by its terms, required compliance in Dallas, Texas."); *Johnson v. Simmons*, 2015 WL 2155714, at *1 (S.D. Miss. May 7, 2015) (denying motion to compel and for contempt where the state of Washington was the place of compliance because "even though the subpoena must issue from the court where the action is pending, the court of compliance still presides over disputes concerning production of the documents"); *Shaw Grp., Inc. v. Zurich Am. Ins. Co*., 2014 WL 204244, at *1 (M.D. La. Jan. 17, 2014) (holding that the court "cannot compel compliance with

[the] subpoena or otherwise provide the relief requested" where nonparty was commanded to produce documents at a location within the Eastern District of Louisiana); *Cargill Meat Sols. Corp. v. Premium Beef Feeders, LLC*, 2015 WL 3935726, at *1 (D. Kan. June 26, 2015) (holding that the court was "without authority to rule on Defendants' motion [to quash] because the plaintiff "directed both [respondents] to produce the subpoenaed documents in Denver, Colorado. The 'district where compliance is required' is therefore the District of Colorado."); *Semex All. v. Elite Dairy Genomics, LLC*, 2014 WL 1576917, at *2 (S.D. Ohio Apr. 18, 2014) (denying motion for protection because the subpoena commanded compliance in Chicago, Illinois, thus, the Ohio court "lack[ed] the power to issue the order" sought, and held that motion must be filed "the court for the district where compliance is required, the U.S. District Court for the Northern District of Illinois.").

In short, Plaintiff has filed its motion with this Court, seeking to circumvent the requirements and procedures of Rule 45. For that reason, by itself, Plaintiff's motion is due to be denied without further consideration of its underlying merits or lack thereof.

### 2.    The Local Rules of the Central District of California contain extensive conference and briefing requirements to which Plaintiff has not adhered to prior to filing this Motion

While the possibility that Plaintiff simply failed to read or comprehend Rule 45 when filing their motion here, rather than in California, is one that cannot be entirely negated, the fact that "Rule 45" is mentioned and cited more than a dozen times in Plaintiff's brief suggests otherwise. Plaintiff's counsel are from Los Angeles and, presumably, have intimate familiarity with the Local Rules applicable to discovery motions filed in the Central District of California. With that familiarity, Plaintiff's counsel is assuredly acquainted with the Central District's Local Rules 37-1through 37-4 and Local Rule 45, which mandate a rather extensive set of pre-

requisites, requirements, and jointly prepared pleadings applicable to discovery motions such as this one, including the following excerpts:

- *Pre-Filing Conference of Counsel*. Unless relieved by written order of the Court upon good cause shown, counsel for the opposing party shall confer with counsel for the moving party within ten (10) days after the moving party serves a letter requesting such conference. The moving party's letter shall identify each issue and/or discovery request in dispute, shall state briefly with respect to each such issue/request the moving party's position (and provide any legal authority which the moving party believes is dispositive of the dispute as to that issue/request), and specify the terms of the discovery order to be sought. C.D. Cal. L.R. 37-1.

- *Form of Joint Stipulation.* If counsel are unable to settle their differences, they shall formulate a written stipulation, unless otherwise ordered by the Court […] The stipulation must be set forth in one document signed by both counsel. The stipulation shall contain all issues in dispute and, with respect to each such issue, the contentions and points and authorities of each party. The stipulation shall not refer the Court to any other documents […] When a party states its contentions with respect to a particular issue, such party shall also state how it proposed to resolve the dispute over that issue at the conference of counsel. C.D. Cal. L.R. 37-2.1.

- *Preparation of Joint Stipulation.* Following the conference of counsel, counsel for the moving party shall personally deliver, e-mail, or fax to counsel for the opposing party the moving party's portion of the stipulation, together with all declarations and exhibits to be offered in support of the moving party's position. Unless the parties agree otherwise, within seven (7) days of receipt of the moving party's material, counsel for the opposing party shall personally deliver, e-mail, or fax to counsel for the moving party the opposing party's portion of the stipulation, together with all declarations and exhibits to be offered in support of the opposing party's position. C.D. Cal. L.R. 37-2.2.

- *Failure to File Joint Stipulation*. The Court will not consider any discovery motion in the absence of a joint stipulation or a declaration from counsel for the moving party establishing that opposing counsel (a) failed to confer in a timely manner in accordance with L.R. 37-1; (b) failed to provide the opposing party's portion of the joint stipulation in a timely manner in accordance with L.R. 37-2.2; or (c) refused to sign and return the joint stipulation after the opposing party's portion was added. C.D. Cal. L.R. 37-2.4.

- ***Cooperation of Counsel - Sanctions***. The failure of any counsel to comply with or cooperate in the foregoing procedures may result in the imposition of sanctions. C.D. Cal. L.R. 37-4.

- ***Motions Relating to Discovery Subpoenas***. Except with respect to motions transferred to this district pursuant to F.R.Civ.P. 45(f), L.R. 37 applies to all motions relating to discovery subpoenas served on (a) parties and (b) non-parties represented by counsel. Cal. L.R. 45-1

By comparison, the requirements for the Northern District of Texas are not nearly so onerous. However, inasmuch as Rule 45 required Plaintiff to file this motion in California, if anywhere, Plaintiff should not be excused from following the specific procedures and requirements applicable in that jurisdiction simply through forum-shopping not contemplated by the Rules. Plaintiff's insistence on compliance with the subpoena in California was a matter of its own choosing, at the time that it issued the subpoena. Plaintiff's motion should, thus, be dismissed so that it may seek relief in the Central District of California and, accordingly, follow all applicable procedures and requirements set forth in the local rules of that jurisdiction.

## C.    <u>In the Alternative, the Court Should Deny Plaintiff's Motion as Untimely</u>

If the Court determines, contrary to terms of Rule 45, that it may rule on the motion to compel, the Court should find, nonetheless, that Plaintiff's motion is untimely for failing to comply with this Court's Amended Scheduling Order. While the Federal Rules of Civil Procedure do not provide a deadline for the filing of motions to compel, Rule 16 permits trial courts to set deadlines, including deadlines for the completion of discovery. *See* FED. R. CIV. P. 16(b); *see also Days Inn Worldwide, Inc. v. Sonia Invs.*, 237 F.R.D. 395, 396 (N.D. Tex. 2006). Courts routinely deny motions to compel where the motions are filed after the deadline for the completion of discovery. *See, e.g., Days Inn*, 237 F.R.D. at 397-98 (Ramirez, Magis. J.) (denying motion to compel as untimely and collecting cases); *Williams-Pyro, Inc. v. Warren Watts Tech., LLC*, 2015 WL 9680265, at *2 (N.D. Tex. Aug. 6, 2015) (O'Connor, J.) (denying motion to

compel as untimely). Additionally, the Fifth Circuit has regularly affirmed denial of motions to compel filed outside the discovery period. *See, e.g., Grey v. Dallas Indep. Sch. Dist.*, 265 F. App'x 342, 348 (5th Cir. 2008) (affirming denial of motion to compel filed on the day of the discovery deadline); *Burris v. Brazell*, 351 F. App'x 961, 963 (5th Cir. 2009) (same).

For example, in *Days Inn*, the court issued a scheduling order setting a deadline for the completion of discovery, which was later extended. 237 F.R.D. at 398. Rather than file the motion to compel "sufficiently in advance of the discovery deadline . . . in order to allow it to be heard by a court, and if granted, to allow the compelled discovery to be produced prior to the deadline," the party waited until two weeks after the extended discovery deadline to file the motion to compel. *Id.* The court denied that motion as untimely. *Id.*

Similarly, Plaintiff inexplicably delayed in filing its motion to compel beyond the extended discovery completion deadline set by this Court. The Amended Scheduling Order (Dkt. No. 88) reset the discovery deadline to June 3, 2016, which was itself an extension of six months. Despite knowing of the June 3, 2016 discovery completion date, Plaintiff did not file its motion to compel before the discovery period lapsed. As Plaintiff concedes, it has been seeking these documents since December 11, 2015 and knew in April 2016 that Backpage.com considered its production complete. *See* Mot. to Compel (Dkt. No. 117-1), at 4.

Plaintiff's knowledge about the alleged discovery deficiency, prior to the deadline is directly spelled out in the amendment Plaintiff sought to file on May 6, 2016 (nearly a month before the discovery completion date). There, Plaintiff sought to add Backpage.com as a party to this action. *See* Dkt. No. 100-4. At any point prior to the discovery completion date, Plaintiff could have filed its motion to compel. It did not do so, and, instead, chose to assume that it would win its motion to add Backpage.com as a party and extend/revive the discovery deadline.

Because the Court has denied Plaintiff's request to add Backpage.com as a party and to further extend the time for discovery, Plaintiff's motion to compel must now also be denied as untimely.

**D.      In the Alternative, the Court Should Deny Plaintiff's Motion and Grant Backpage.com's Request for a Protective Order**

To the extent that the Court finds, contrary to terms of Rule 45, that it retains jurisdiction to enforce, quash or modify this subpoena, the Court should find, nonetheless, that all relevant aspects of the subpoena have been complied with and enter an Order protecting Backpage.com from further attempts to discover burdensome, harassing and irrelevant information. In the few instances where Backpage.com would concede that no responsive production has been attempted, those requests are so wildly overbroad and unduly burdensome on their face that any order requiring compliance would effectively require the Court to throw all judicial discretion to the wind.

**1.      Backpage.com's objections should not be considered "waived" under these circumstances.**

Although a party's failure to object within the time provided by Rule 45 can result in a waiver of objections, a waiver is not automatic, as Plaintiff implies. Instead, the concept of waiver is far from absolute, particularly in extreme, exceptional circumstances such as this case. Courts in this district have agreed with many others that "circumstances warranting consideration of objections have included those 'where counsel for the nonparty and for the subpoenaing party were in contact with respect to the nonparty's compliance prior to the time the nonparty challenged the subpoena.'" *Am. Fed'n of Musicians, LLC*, 313 F.R.D. at 44 (finding no waiver, including as to claims of privilege, and excusing failure to timely object to subpoena where the subpoena was "overbroad on its face and exceeds the bounds of fair discovery" where the subpoena contained 51 categories and modifying the subpoena to five discrete and specific categories of documents) (citations omitted). Other factors taken into consideration when

determining whether to consider untimely objections include those where: "(1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery or (2) the subpoenaed witness is a non-party acting in good faith." *Id.* (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)); *see also Alexander v. F.B.I.*, 186 F.R.D. 21, 34 (D.D.C. 1998); *Semtek Int'l, Inc. v. Merkuriy Ltd.*, 1996 WL 238538, at *2 (N.D.N.Y. May 1, 1996); *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass.1988); *Celanese Corp. v. E.I. duPont de Nemours & Co.*, 58 F.R.D. 606, 609–10 (D. Del. 1973); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 1991 WL 172930, at *1 (N.D. Ohio June 21, 1991)).

In the *Skodam Films* case, not only did the court fully <u>excuse</u> the lack of timely objections to the subpoena, and thereby substantially modify the subpoena, but it also went further granted the <u>respondent's</u> recovery of their reasonable attorneys' fees caused by the motion. *Skodam Films*, 313 F.R.D. at 59 (concluding that the plaintiff's "serving and pressing for an order requiring full compliance with a subpoena that requests essentially every document related to the Movie […] does not comply with Rule 45(d)(1)'s requirements" to take "reasonable steps to avoid imposing undue burden or expense" on the party subpoenaed).

### 2. Plaintiff has not demonstrated the existence of any non-objectionable categories of documents purportedly withheld

Plaintiff argues extensively that "the record is clear that responsive documents exist" and that "counsel repeatedly acknowledged that additional responsive documents existed." However, Plaintiff fails to specifically identify any such documents or the supposed acknowledgments of their existence. Rather than cut to the chase and identify the particular documents that are actually at issue, Plaintiff points to their numerous and broad requests, without acknowledging what response has been made, whether documents have been produced, or the evidence that

additional information was withheld. Backpage.com cannot, therefore, specifically address Plaintiff's complaints, but  can provide the following assessments of the requests.

Backpage.com acknowledges that it has not responded to Plaintiff's global request for all "communications" where the subpoena is not limited in temporal scope, does not identify any communications from or to any ascertainable custodian and does not describe any reasonably specific subject matter. This part, and many others within Plaintiff's sprawling subpoena, embodies a flagrant disregard of Plaintiff's affirmative obligation under Rule 45 to "avoid imposing undue burden or expense on a person subject to the subpoena." FED R. CIV. P. 45(d)(1). For example, Requests 1, 2, 32, 34, 35, 37, 45, 46, 47, and 48 each seek any and all communications between Backpage.com and JetPay Defendants and "JetPay Solutions, LTD.," the latter of which is not even a party in this matter.  Moreover, the breadth the first two requests is sweeping:

1.    "Any and all DOCUMENTS referring to, relating to, or concerning JetPay LLC and/or JETPAY ISO between January 1, 2011 and the present."

2.    "Any and all COMMUNICATIONS referring to, relating to, or concerning JetPay LLC and/or JETPAY ISO between January 1, 2011 and the present."

The requests predate—by two and a half years—the period identified in the Complaint as the period when Backpage.com was first identified to JetPay (August 2013). The requests also do not limit the scope of the subject matter requested to any fact at issue in the litigation, making them overbroad, unduly burdensome and harassing on their faces. These requests evince no attempt to avoid imposing an undue burden by reasonably narrowing their scope to persons, time periods and/or subject matters having to do the issues in this litigation.  Request Nos. 1 and 2 are so broad that they are not even limited to documents provided *to/from JetPay* or communications *with JetPay*, but, instead, appear to encompass the entire universe of documents, internal and external to Backpage.com, having any possible reference to JetPay.

These requests—all by themselves—are in no way narrower than ones found to, in essence, "requests essentially every document related to the Movie" in the *Skodam Films* opinion. *See Skodam Films*, 313 F.R.D. at 59. Simply replace the word "Movie" with "JetPay," and the scope is almost interchangeable. Thus, the scope of communications and documents to be considered potentially responsive includes all documents possessed by any person employed with Backpage.com (or its "related entities"), requiring an inherently burdensome search and review process simply to ascertain what responsive documents potentially exist. *See Krause v. Nev. Mut. Ins. Co.*, 2014 WL 496936, at *6 (D. Nev. Feb. 6, 2014) (agreeing that a request for all documents and emails related to the allegations or defenses in the case is "impermissibly broad because response would require compilation and review of a vast array of material having no possible relevance to [the] lawsuit [and] would be unreasonably time-consuming, burdensome and unfair").

Likewise, Requests 32, 35, 37, 47 and 48 seek communications for an unspecified, unlimited period of time. Given the lack of any apparent connection between the subjects of each request and Chilly Dil's claim that JetPay has breached its contract, the requests appear to be nothing more than a broad, harassing fishing expedition, rather than an effort to obtain relevant and admissible facts for Plaintiff's claims against JetPay in this litigation. *Id.* Similarly, Requests 45 and 46 seek all documents and communications concerning the relationship between JetPay, Voight and Postfastr, an entity that is associated with Backpage.com, but that is not a party to or alleged to be involved in the contract between Chilly Dil and JetPay:

Again, the requests contain no reasonable limitation as to a relevant period of time. In addition to the fact that documents pertaining to Postfastr are overbroad and irrelevant, there have been no Visa or MasterCard transactions with JetPay related to Postfastr; therefore, there is

no "processing relationship" upon which any documents could exist. Backpage.com has directly informed counsel for Chilly Dil of this fact. However, despite being aware of the lack of documents, Chilly Dil still insists upon harassing Backpage.com related to this request.

Overriding all of these requests is the fact that Chilly Dil has sued Defendants on the claim that it has not received the commissions it is owed related to the referral of Backpage.com to JetPay. Despite the very narrow relevance that Backpage.com may have—regarding payments—Chilly Dil has not limited the scope to information related to money received by JetPay connected with Backpage.com or Chilly Dil's commissions. Requesting any and all communications related to multiple entities and topics over an unknown period of time is overbroad, harassing and overburdensome. Chilly Dil appears bent on conducting the broadest fishing expedition possible, imposing the maximum burden, and is simply asking for a wide range of facially irrelevant information.

Even the more "specific" requests, such as 32, 35, and 37 and 48[13] seek communications between Backpage.com and Defendant Trent Voigt for an unlimited period of time related to multiple broad topics having nothing to do with the funds Backpage.com paid to JetPay, communications regarding Chilly Dil, or any of the claims that are actually part of this litigation. (*e.g.,* "the method used […] to unblock the processing of credit card payments after they have been blocked or rejected by BNs for processing;" "VOIGT's 'efforts to disrupt economic censorship;'" and "regarding JETPAY LTD.").

In short, Plaintiff seeks to hold Backpage.com in contempt for not embarking on an expensive, time-consuming and needless fishing expedition. Plaintiff has provided the Court with no evidence of any effort to confer in good faith to resolve these clear deficiencies, and instead just stands by the mantra of "full compliance." Furthermore, the information requested of

Backpage.com is unduly burdensome because it is obtainable from a source that is more convenient, less burdensome or less expensive. FED. R. CIV. P. 26(b)(2)(C). Specifically, to the extent that Chilly Dil requests communications with Voight and JetPay (Request Nos. 32, 35, 37 and 45, 46 and 48), it should first seek to obtain those documents directly from Voight and JetPay, who are the parties involved in the litigation. *See*, *e.g.*, *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637-38 (C.D. Cal. 2005) (where "requests all pertain to defendant, who is a party […] plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from [the] nonparty") (citing *Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) (discovery restrictions may be even broader where target is nonparty)).

Backpage.com has produced all Visa, MasterCard and American Express processing statements related to Backpage.com or JetPay. Despite having received these processing statements, Plaintiff continues to insist that more processing statements must be produced. However, Plaintiff's request incorrectly assumes that there are processing statements from several entities with whom no processing ever occurred. As such, there are no "processing statements" that are related to those entities, and no additional responsive documents exist. Backpage.com also produced processing records related to Postfastr and Cracker.

Plaintiff's motion appears geared more toward Plaintiff's own inability to understand the documents produced than it does the actual failure to produce them, which comments such as "these documents are indecipherable"…"Backpage produced two additional, but indecipherable spreadsheets." However, Backpage.com's duty in responding to the subpoena was not to explain the documents or ensure that Plaintiff could comprehend them, but, rather, to produce documents that were, in and of themselves, responsive—which they were. The fact that Plaintiff may not understand the documents produced is not an issue that relates to the completeness of

Backpage.com's document production, nor is it grounds for finding that Backpage.com is in contempt of court.

Plaintiff also seeks for the Court to hold Backpage.com in contempt for failing to produce documentation related to "$5 million held in reserves at Bank Frick" under Request No. 65: However, Plaintiff makes no effort to explain the relevance of this request, which is akin to asking Backpage.com, "show me where all of your money came from." However, where Backpage.com got its money is not only none of Plaintiff's business, it cannot possibly have anything to do with whether JetPay has improperly failed to make commission payments to Chilly Dil.

Chilly Dil's request for Backpage.com's banking records and the sources of its funds is facially irrelevant, unduly burdensome and harassing. The amount held in reserves at Bank Frick has no possible relationship to Plaintiff's claim for commissions related to JetPay processing fees, nor does it apply to any of the claims brought by Chilly Dil. The request represents nothing more than a tool of harassment employed by Plaintiff for no discernible purpose.

### 3. In Addition to the Grossly Overbroad Scope of the Subject Matter, Compliance Costs Resulting from Searching and Producing the Responsive Data is Staggering

Gathering and identifying the documents requested by Chilly Dil would require an enormous undertaking by Backpage.com.  Backpage.com reasonably estimates that compliance with the subpoena, as written would involve compiling, copying and searching approximately 51 million documents (containing over two billion pages) within the universe of potentially responsive sources of electronically stored information.[14] Many of the necessary search terms are extremely generic and common ("Visa," "MasterCard," "American Express," "Wells Fargo," "reserves," and "bins"), which will result in the need to review a large volume of irrelevant and

---

[14] Ex. 1, Kempel Decl. ¶ 7.

non-responsive data that cannot be eliminated by technological means.[15] As a result, the substantial data search results generated will necessarily require a manual review of the "hits" to identify and separate the responsive and non-responsive documents.[16]

Based on the fact that the estimated amount of raw data to be processed is approximately 15 terabytes, and based on Backpage.com's recent experience with the cost a proportionally smaller set of data approximating 1 terabyte, the costs of compliance could be staggering. In an unrelated matter, such a search resulted in approximately 800,000 documents subject to application of relevant yielding approximately 100,000 documents to be reviewed even after queries were applied.[17] In that instance, outside vendor fees included approximately 1,550 hours of time reviewing and identifying responsive documents at a cost of nearly $300,000. Based on the larger base of documents at issue here, the costs of compliance here could easily exceed one million dollars.[18] Although Plaintiff's Subpoena is overly broad and unduly burdensome on its face, these estimates provide ample addition justification for protection against it.

E.    **Backpage.com Should Be Awarded its Reasonable Expenses, Including Attorneys' Fees**

Plaintiff has arrogantly insisted that Backpage.com be held in contempt for failing to "fully comply" with a massively overbroad subpoena, while at the same time providing the Court with nothing more than conclusory statements about the relevance and need for all of this information. Plaintiff, as the party issuing the subpoena, had a duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the Court "must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Skodam Films*, 313

---

[15] Ex. 1, Kempel Decl. ¶ 8.
[16] Ex. 1, Kempel Decl. ¶ 8.
[17] Ex. 2, McDougall Decl. ¶3-5.
[18] Ex. 2, McDougall Decl. ¶3-5.

F.R.D. at 58 (citing Fed. R. Civ. P. 45(d)(1)). In *Skodam Films*, the party issuing the subpoena "did not comply with Rule 45(d)(1) based on the breadth of the documents that it sought through its Subpoena […] which the Court has found to be as facially overbroad and has been required to narrow itself." *Id.* In short, Plaintiff's "serving and pressing for an order requiring full compliance with a subpoena that requests essentially every document related to [JetPay…] does not comply with Rule 45(d)(1)'s requirements." *Id.* Inasmuch as *Skodam Films* represents an indistinguishable example of the same kind of violation of Rule 45(d)(1) that is present here, Plaintiff here should, likewise, be ordered to pay Backpage.com their reasonable attorneys' fees necessitated in defending this Motion.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Backpage.com requests the Court to deny Plaintiff's motion to compel and for contempt, and to award Backpage.com its reasonable expenses, including attorneys' fees, necessitated by its defense of this Motion.

Dated: July 19, 2016

Respectfully Submitted,

*/s/ Ann Marie Painter*
Ann Marie Painter
Texas Bar No. 00784715
AMPainter@perkinscoie.com
Jason R. Elliott
Texas Bar No. 24050558
jelliott@perkinscoie.com

PERKINS COIE LLP
500 N. Akard St., Suite 3300
Dallas, Texas  75201
Telephone:  214.965.7700
Facsimile:  214.965.7773

ATTORNEYS FOR BACKPAGE.COM, LLC

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing to all counsel of record for all parties via the Court's CM/ECF system on the 19th day of July, 2016.

                                                    */s/ Ann Marie Painter*
                                                    Ann Marie Painter