THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CHILLY DIL CONSULTING INC.**, a Florida corporation, | § § § § § | |
| **Plaintiff,** | § § | |
| v. | § § | CIVIL ACTION NO. 3:14-cv-02749-N |
| **JETPAY ISO SERVICES, LLC**, a Texas limited liability company; **JETPAY, LLC**, a Texas limited liability company; **JETPAY CORPORATION**, a Delaware corporation; and **TRENT R VOIGT**, an individual, | § § § § § § § | |
| **Defendants.** | § | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL NON-PARTY BACKPAGE.COM, LLC TO COMPLY WITH SUBPOENA *DUCES TECUM* AND TO HOLD BACKPAGE.COM, LLC IN CONTEMPT**

**TABLE OF CONTENT**

**HEADING**                                                                                           **PAGE**

I.   INTRODUCTION…………………………………………………………..1

II.  LEGAL ARGUMENT………………………………………………………1

   A.  This Court May Exercise Jurisdiction to Enforce the Subpoena……….1

   B.  The Court Should Grant Plaintiff's Motion…………………………….3

      1. Backpage Never Provided Any Objections to Plaintiff and
         Therefore Waived All Objections to the Subpoena…………….4

      2. Unusual Circumstances Are Not Present Here to Warrant
         Consideration of Backpage's Objections……………………….6

         a. Backpage did not challenge the subpoena and did
            not act in good faith………………………….…....…7

         b. The subpoena is not overbroad on its face or exceeds
            the bound of fair discovery…………………………...8

      3. Backpage Never Asserted That Costs to Comply with the
         Subpoena Would Be Staggering…………………………………11

   C.  The Court Should Deny Expenses and Fees to Backpage………………12

III. CONCLUSION………………………………………………………………13

# **TABLE OF AUTHORITIES**

**CASE**                                                                                          **PAGE**

*Alexander v. F.B.I.*,
    186 F.R.D. 21 (D.D.C. 1998)……………………………………………………..5

*Am. Fed'n of Musicians of the U.S. and Can. v. Skodam Films, LLC*,
    313 F.R.D. 39 (2015)……………………………………………………….4, 7, 8, 9, 11

*Apple, Inc. v. Samsung Electronics Co. Ltd.*,
    2013 WL 1942163, at *3 (N.D.Cal. May 9, 2013)…………………………….12

*Bell Inc. v. GE Lighting, LLC*,
    2014 WL 1630754, at *9 (W.D.Va. Apr. 23, 2014)……………………………4, 7

*Celanese Corp. v. E.I. DuPont de Nemours & Co.*,
    58 F.R.D. 606, (D. Del. 1973)…………………………………………………..5

*Concord Boat Corp. v. Brunwick Corp.*,
    169 F.R.D. 44 (S.D.N.Y. 1996)………………………………………………...5

*Isenberg v. Chase Bank U.S.A., N.A.*,
    661 F.Supp.2d 627 (N.D. Tex. 2009)…………..…………………………4, 12

*Krewson v. City of Quincy*,
    120 F.R.D. 6, (D. Mass. 1998)…………………………………………………6

*La. Generating, L.L.C. v. Ill. Union Ins. Co.*,
    2011 WL 6259052, at *2 (M.D.La. Dec. 14, 2011)………...…………………4

*Semtek Intern., Inc. v. Merkuriy Ltd.*,
    1996 WL 238538, *2 (N.D. NY 1996)………………………………………...7

**STATUTE**                                                                                       **PAGE**

Federal Rules of Civil Procedure 45et. seq…......................................................1-3, 5, 12

Federal Rules of Civil Procedure 45(c)……………………………………….......2

Federal Rules of Civil Procedure 45(d)………………………………………….2, 3

Federal Rules of Civil Procedure 45(c)(2)…….………………………………….2

Federal Rules of Civil Procedure 45(d)(2)(B)…………………………………….4

Federal Rules of Civil Procedure 45(d)(2)(B)(i)………………………………….1

# I.
# INTRODUCTION

In its Response ("Response") to Plaintiff Chilly Dil Consulting, Inc.'s ("Plaintiff") Motion to Compel Non-Party Backpage.com, LLC ("Backpage") to Comply with the Subpoena Duces Tecum and to Hold Backpage.com, LLC in Contempt ("Motion"), Backpage argues that the Court lacks jurisdiction to hear this matter, and that its untimely objections should be considered by the Court because the subpoena is overbroad and unduly burdensome. Backpage's arguments concerning jurisdiction fail because the parties mutually agreed to allow compliance with the subpoena to take place in Dallas, Texas, and because the policy behind Federal Rule of Civil Procedure ("FRCP") 45 confers jurisdiction to this Court under these circumstances.

Further, the Court should deem Backpage's objections waived because, unlike the cases relied upon by Backpage in its Response, Backpage never communicated or articulated any concerns or objections related to the overbreadth or undue burdensome nature of the subpoena, or even the cost to comply therewith during the almost six months that Backpage met and conferred with Plaintiff concerning the subpoena. In short, Backpage has not acted in good faith. Even if the Court did consider Backpage's objections, the Court should still grant the Motion because the subpoena is not overbroad and unduly burdensome, and seeks documents relevant and discoverable to calculate Plaintiff's damages.

# II.
# LEGAL ARGUMENT

A.   **This Court May Exercise Jurisdiction to Enforce the Subpoena**

Backpage asserts that this Court lacks jurisdiction to enforce the subpoena according to FRCP 45(d)(2)(B)(i), which requires that a subpoenaing party seeking an order to compel compliance with a subpoena must do so with the court in the district where compliance is required. The subpoena served on Backpage required that documents be produced in Los Angeles, California, making the place of compliance – according to Backpage – the United

States District Court for the Central District of California. While a strict reading of the statute and the subpoena would seem to confer jurisdiction with the Central District of California, the agreement between Backpage and Plaintiff's counsel, as well as the policy behind FRCP 45, would allow this Court to exercise jurisdiction to enforce the subpoena.

Although the subpoena required Backpage to produce documents in Los Angeles, California, Backpage's principal place of business is in Texas. This means that the subpoena erroneously required compliance beyond the 100-mile geographic limit from where Backpage's offices are located. *See* Fed R. Civ. P. 45(c)(2). Plaintiff and Backpage, however, mutually agreed that Backpage might comply with the subpoena by emailing all the requested documents from Backpage counsel's office in Dallas, Texas, rather than delivering documents to Los Angeles, California. (*See* Steiner Decl., ¶ 6.) Indeed, despite the strictures of FRCP 45, Congress contemplated that parties may modify the place of compliance as needed to facilitate discovery, such as Plaintiff and Backpage did here. *See* Fed R. Civ. P. 45, Advisory Committee's Note – 2013 Amendment ("For other discovery, Rule 45(c)(2) directs that…production of documents, tangible things, and electronically stored information may be commanded to occur at a place within 100 miles of where the person subject to the subpoena resides... Under the current rule, parties often agree that production, particularly of electronically stored information, be transmitted by electronic means. Such arrangements facilitate discovery, and nothing in these amendments limits the ability of parties to make such arrangements.") As such, by agreement, the parties agreed to modify the subpoena to make the place of compliance to be Dallas, Texas.

Furthermore, the 2013 amendment to FRCP 45 that now requires motions related to a subpoena to be brought in the court for the district where compliance is required, was promulgated in order **to protect the non-parties served with a subpoena** such that issues concerning the same would be addressed at a court local to them. "Subpoenas are essential to obtain discovery from nonparties….To protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements in Rules 45(d)

2
PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL NON-PARTY BACKPAGE.COM, LLC TO COMPLY WITH SUBEPOENA DUCES TECUM AND TO HOLD BACKPAGE.COM, LLC IN CONTEMPT

and (e) that motions be made in the court in which compliance is required under Rule 45(c)." Fed R. Civ. P. 45, Advisory Committee's Note – 2013 Amendment.  By its terms, therefore, FRCP 45(d) contemplates the place of compliance for subpoenas to be within 100 miles of the subpoenaed party.

Here, although the subpoena erroneously listed Plaintiff counsel's office in Los Angeles as the place of compliance, the parties agreed that compliance could be met if Backpage emailed the requested documents from Dallas, Texas, thereby modifying the subpoena to make the place of compliance in Dallas.  Even if the Court were to still read the subpoena as requiring the place of compliance to be Los Angeles, Backpage would not be able to enjoy the protections afforded by FRCP 45(d) because the Central District of California is a not a local court for Backpage, and therefore the "local non-party" would not be protected by "local resolution of disputes".  Since Backpage is local to Dallas, Texas, it would be protected by "local resolution of disputes" related to the subpoena if this Court, located in Dallas, Texas, exercised jurisdiction over this matter.  Therefore, the policy and purpose behind FRCP 45's amendment requiring motions to compel to be brought before the court for the district where compliance is required would only be met if this Court exercised jurisdiction over the subpoena.

Backpage has argued that only the Central District of California can hear this matter. However, the practical effect is that if this Motion were brought before that court, Backpage would move to transfer the Motion back to this Court for the very reason that it is not a court local to Backpage.  Such an exercise of having the Motion transferred back and forth between the Central District of California and this Court would be a waste of juridical time and resources, as well as attorney fees for everyone involved.

For these reasons, this Court should exercise jurisdiction over this matter.

B.     **The Court Should Grant Plaintiff's Motion**

Backpage asserts that although it didn't timely object to the subpoena, the Court should still deny Plaintiff's Motion and grant Backpage a protective order because the subpoena is

overbroad and unduly burdensome. However, unlike the cases Backpage have relied upon, Backpage simply never articulated any objections at any time to Plaintiff's subpoena. For this reason alone, Backpage's objections asserted for the first time in its Response should be deemed waived. Nevertheless, even if the Court were to consider Backpage's objections, the Motion should be granted because it is not overbroad and does not exceed the bounds of fair discovery

> *1.  Backpage Never Provided Any Objections to Plaintiff and Therefore Waived All Objections to the Subpoena*

FRCP 45(d)(2)(B) states that a non-party served with a subpoena may serve objections thereto "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Courts within the Fifth Circuit have routinely waived all grounds for objections, including privilege, if untimely served. *La. Generating, L.L.C. v. Ill. Union Ins. Co.*, Civ. A. No. 10–516–JJB–SCR, 2011 WL 6259052, at *2 (M.D.La. Dec. 14, 2011); *Isenberg v. Chase Bank U.S.A., N.A.*, 661 F.Supp.2d 627, 629 (N.D. Tex. 2009) ("If Isenberg believed the subpoenas were objectionable, she could have argued that she has a right or privilege in relation to the documents and filed a motion to quash the subpoenas. Isenberg did not file such a motion and, therefore, waived any objection she could have raised therein.").

**In unusual circumstances**, some courts have not barred consideration of untimely objections and for good cause shown. *Bell Inc. v. GE Lighting, LLC*, No. 6:14–cv–00012, 2014 WL 1630754, at *9 (W.D.Va. Apr. 23, 2014). "Unusual circumstances warranting consideration of objections have included those 'where counsel for the nonparty and for the subpoenaing party were in contact with respect to the nonparty's compliance prior to the time the nonparty challenged the subpoena.'" *Id.* (citations omitted). Courts have also found such unusual circumstances where (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery or (2) the subpoenaed witness is a non-party acting in good faith. *Am. Fed'n of Musicians of the U.S. and Can. v. Skodam Films, LLC*, 313 F.R.D. 39, 44 (2015).

This exception to the waiver rule for untimely objections does not apply to Backpage. The basic premise underlying this exception is that objections must be served or, at minimum, communicated to the serving party by the subpoenaing party, albeit untimely. Indeed, each time the waiver exception was applied by the courts, the non-party had asserted objections *prior* to the serving party filing a motion to compel. *See Id.* (objections served beyond FRCP 45's 14 day period); *Concord Boat Corp. v. Brunwick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (non-party communicated to plaintiff that subpoena was overbroad and sought to limit scope of subpoena); *Alexander v. F.B.I.*, 186 F.R.D. 21, 34 (D.D.C. 1998) (deponent served objections to subpoena); *Celanese Corp. v. E.I. DuPont de Nemours & Co.*, 58 F.R.D. 606, 609-610 (D. Del. 1973) (non-party contacted subpoenaing party to limit scope of production and for extension of time to produce given the costs in producing the documents).

Unlike in those situations where the waiver rule applied, Backpage completely failed to articulate ANY objections to the subpoena, at any time prior to the filing of Plaintiff's Motion. In fact, the first time Plaintiff learned of Backpage's objections of undue burden and overbreadth was in Backpage's Response to the Motion. Had Backpage genuinely believed the subpoena to be overbroad and unduly burdensome, or that it would be costly for Backpage to search for and produce the documents, it would have informed Plaintiff of those concerns at some point during the almost six months that the parties met and conferred over the production. However, as letters and emails between Backpage and Plaintiff show, Backpage never once complained of the overbreadth or undue burden of any of the requests. See Dkt. No. 118, pp. 25-52.

After being served with the subpoena, Backpage's counsel Liz McDougall contacted David Steiner, co-counsel for Plaintiff, and stated that Backpage could readily produce certain processing statements. (Steiner Decl., ¶ 4.) Mr. Steiner said for Backpage to produce the statements, and depending what was produced, he would determine whether the subpoena was satisfied. (Id.) At no point did Mr. Steiner (or Eugene Rome later) agree to limit the scope of the subpoena to only the processing statements. (*Id.*, ¶ 5; Dkt. No. 108, p. 4, ¶10 and pp. 45-46.)

Nor did he or Mr. Rome waive Plaintiff's right to compel production of the other requests set forth in the subpoena. (*Id*.)

Thereafter, Backpage produced incomplete and sometimes incomprehensible processing statements, even after it retained outside counsel. During this time, Backpage never even mentioned the other requests or their objections to it. In fact, despite Plaintiff's insistence that Backpage produce these other documents, Backpage ignored these demands. Indeed, the emails and letters between Plaintiff and Backpage reflect this silence by Backpage. *See* Dkt. No. 118, pp. 31-52. Instead, Backpage simply tried to negotiate a deal where Plaintiff would not sue it if it produced processing statements, or where Plaintiff would agree that Backpage's obligations under the subpoena had been met after production of the statements. *See Id*., pp. 43, 50. Plaintiff never agreed to these arrangements. *See Id*., pp. 42, 48-49.

Serving objections provides an opportunity to the serving party to address the objections and modify the scope of the subpoena as necessary to facilitate discovery. Backpage did not seek to limit the scope of the subpoena or provide any basis (reasonable or otherwise) for doing so during its communications with Plaintiff. By asserting objections in its Response for the first time, Backpage never even gave Plaintiff an opportunity to address or rectify Backpage's undue overbreadth and burden concerns.

Courts have granted motions to compel and found objections to have been waived where a subpoenaed party never bothered to assert objections, such as with this case. *See e.g. Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1998) (court waived objections and granted motion as no objections were served to subpoenaing party). As Backpage never communicated any objections to the subpoena until it filed its Response, the Court should grant Plaintiff's Motion and rule that Backpage waived all their objections to the subpoena.

  2. *Unusual Circumstances Are Not Present Here to Warrant Consideration of Backpage's Objections*

Even if the Court were to deem Backpage's objections timely, it still should not consider the objections because the "unusual circumstances" that would normally warrant such consideration are not present here. As stated above, such unusual circumstances would include where the subpoenaed nonparty and the serving party were engaged in communications concerning the nonparty's compliance prior to the time the nonparty challenged the subpoena, (*Bell Inc.*, 2014 WL 1630754, at *9); where the subpoena is overbroad on its face and exceeds the bounds of fair discovery (*Am. Fed'n of Musicians of the U.S. and Can.*, 313 F.R.D. at 44); or the subpoenaed witness is a non-party acting in good faith (*Id.*). None of these circumstances applies here.

      (a)    <u>Backpage did not challenge the subpoena and did not act in good faith</u>

Backpage never challenged the subpoena. As stated above, it never submitted any objections, timely or untimely, or even communicated to Plaintiff that it was concerned with the overbreadth or undue burdensome nature of the discovery. Nor did it file a motion to quash. It simply chose not comply with the subpoena that required it to make a full production of the document requests.

Similarly, Backpage is not a party acting in good faith. In situations where the Court considered the non-party's good faith actions as a factor in considering untimely objections, the non-party was in touch with the subpoenaing party to "seek more time to amass and review the documents responsive to the subpoena and, later, [to] challenge to the legal basis for the documents sought." *See Semtek Intern., Inc. v. Merkuriy Ltd.*, 1996 WL 238538, *2 (N.D. NY 1996). Here, Backpage was not seeking more time to review all the documents responsive to the subpoena or to challenge the legal basis for the requests. Instead, all it did was produce incomplete processing statements and attempt to negotiate an arrangement with Plaintiff where it would produce a fraction of the requested production in exchange for an agreement that the subpoena had been fully complied with. *See* Dkt. No. 118, pp. 30, 43, 48-50. Even when Mr. Rome explained that the processing statements were incomplete because they did not comport

with Backpage's 2014 financial statement provided to Plaintiff's principal, Patricia Carlin, showing $8,603,506 in "discount and processing fees", Backpage still did not address this obvious gap in the production.

Indeed, Backpage did not even attempt to act in good faith by reviewing all the documents responsive to the requests in its possession so that it may determine which it could produce and which it had a legal basis to challenge. The declaration submitted by Christopher Kempel, Backpage's Information Systems Manager, shows that he never conducted a search for the documents sought under the subpoena, and only now surmises that such a search would yield 51 million documents. *See* Dkt. No. 129-1, ¶¶7-8. As Backpage readily admits, it did not respond to or address many of Plaintiff's requests in the subpoena such as the agreements and communications sought between JetPay and Backpage, even though Mr. Rome made multiple requests for these particular documents in Plaintiff's meet and confer letters to Backpage. See Dkt. No. 129, p. 17.) Simply put, Backpage did not intend to fully comply with the subpoena, not because it believed the subpoena to be overbroad and unduly burdensome, but because it merely did not want to provide documents that would be damning to it and to Defendants. As such, Backpage did not act in good faith.

      (b)    <u>The subpoena is not overbroad on its face or exceeds the bounds of fair discovery</u>

Backpage attempts to analogize this case to *American Federation of Musicians of the United States and Canada v. Skodam Films, LLC* ("Skodam Films") for the proposition that the subpoena is overbroad and exceeds the bounds of fair discovery. In that case, the plaintiff sued Paramount Pictures Corporation for breaching a collective bargaining agreement by failing to score a certain movie in the United States or Canada. Paramount claimed that non-party Skodam Films was the producer of the movie. Skodam Films was created for the sole purpose of making the movie that was the subject of the legal action. The plaintiff served Skodam Films with a 46-page subpoena seeking documents referring to or relating to the movie in question, which was

8

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL NON-PARTY BACKPAGE.COM, LLC
TO COMPLY WITH SUBEPOENA DUCES TECUM AND TO HOLD BACKPAGE.COM, LLC IN CONTEMPT

virtually every document in Skodam Film's possession. The Court found that given that the action was limited to the issue of scoring for the film, the subpoena was overbroad in its face and exceeded the bounds of fair discovery. *Skodam Films*, 313 F.R.D. at 41-42, 47.

This case is not similar to the *Skodam Films*. Unlike in that action, Plaintiff's subpoena to Backpage is 15 pages (as opposed to 46 pages), of which 6 ½ pages consists of document requests. Further, Skodam Films was created for the sole purpose of making the movie at issue. Since the subpoena sought all documents related to the movie, virtually every document in Skodam Films' possession was responsive to the subpoena, not just the documents relating to the scoring of the movie. Therefore the subpoena was overbroad and unduly burdensome.

Conversely, the subpoena to Backpage only seeks a small fraction of documents in Backpage's possession and only seeks documents relevant to Plaintiff's claims against Defendants JetPay ISO Services, LLC, JetPay, LLC, JetPay Corporation, and Trent Voigt (collectively, "Defendants"). Backpage runs the second largest online classified ad listing service in the United States after Craigslist. Defendants are credit card payment processors who provide merchant services to online merchants (such as Backpage) and serve as the intermediaries between acquiring banks (such as Bank Frick, Esquire Bank, and Catella Bank) and online merchants for the processing of customer credit card payments. Defendants are merely one of the many vendors Backpage contracts with to conduct its business, and does not represent the entirety of Backpage's business.

The above-referenced action concerns breach of contract, tortious interference with an existing contract, negligence, and violation of the Texas Theft Liability Act and seeks money owed by Defendants to Plaintiff related to commissions earned by Defendants for the payment processing conducted by Backpage and its affiliated companies (such as Postfastr and Cracker). Even if the subpoena served on Backpage sought all documents referring to or relating to Defendants as Backpage contends, those documents would only concern Backpage and its affiliated entities' payment processing relationship with Defendants and the amounts earned by

Defendants from that relationship, all of which is relevant to Plaintiff's claims against Defendants and is discoverable. As there are no services provided by Defendants to Backpage other than processing services and all processing services are subject of Plaintiff's claims against Defendants in this action, the subpoena is not overbroad.

Backpage makes much of the fact that some requests seek documents from 2011 or for an unspecified period of time. However, as Backpage contends, it did not form a relationship with Defendants prior to 2 ½ years ago. Therefore, no documents would exist prior to that time, making the search and production of the documents practicable such that it would not be unduly burdensome or harassing for Backpage to so produce.

Backpage also argues that the subpoena seeks documents that are not relevant to commissions earned by Defendants related to payment processing for Backpage. However, unlike in *Skodam Films*, all the discovery requests are relevant and necessary to determine and calculate Plaintiff's damages. For example, Request Nos. 5-16 and 27-31, seek documents concerning acquirer banks and Backpage, relationships for which were facilitated by Defendants and from which Defendants receive commissions for payment processing. The documents requested would show the volume of payment processing conducted by Backpage through the acquirer banks and the discount rates and commissions that Defendants would have earned from such processing. Request nos. 17-26 seek documents concerning OmniPay and EMS. These entities are payment processors that Defendants have subcontracted with and for which any processing conducted by these entities for Backpage would have yielding commissions to Defendants. The documents sought are therefore relevant to calculate Plaintiff's damages. Requests Nos. 1-4 and 43-56 concerning agreements and communications between Defendants and Backpage (or its affiliated entities) would reveal discount rates and commissions that Defendants would have received for payments processed for these entities. All this was specifically identified in Eugene Rome's letter to Liz McDougall. *See* Dkt. No. 118, pp. 33-35.

Backpage also argues that Request No. 65 requesting documents relating to $5 million of reserves at Bank Frick are not relevant to Defendants' commissions. Reserves are collected by an acquirer bank based on a percentage of credit card transactions conducted by the online merchant. The documents related to the reserves, therefore, would show the volume of credit card transactions conducted by Backpage and its related entities, and in turn will help calculate Plaintiff's portion of the processing fees to which it is entitled. [1]

In essence, unlike in *Skodam Films*, only a small subset of documents in Backpage's possession would be responsive to Plaintiff's subpoena and the documents sought are specific to and relevant to Plaintiff's claims and the calculation of Plaintiff's damages. Therefore, the subpoena is not so overbroad on its face or exceeds the bounds of fair discovery that would warrant consideration of objections asserted by Backpage for the first time in its Response.

> 3. *Backpage Never Asserted That Costs to Comply with the Subpoena Would Be Staggering*

In its Opposition, Backpage asserts that complying with the subpoena would yield 51 million documents because of generic search terms. Backpage has never before made this assertion to Plaintiff, as the meet and confer letters between them demonstrate. (*See* Dkt. No. 118, pp. 33-53; Steiner Decl., ¶ 7.) Nor did Backpage attempt to work with Plaintiff to limit the scope of the production or to choose other specific search terms that would reduce the volume of documents to be produced. For that reason alone, Backpage's purported objections appear disingenuous and are not made in good faith. [2]

---

[1] Backpage also argues that Requests 32, 35, 37, and 48 seek documents related to specifically identified emails between Trent Voigt and Carl Ferrer, Backpage's CEO, are not relevant as they do not concern funds paid by Backpage to Defendants. However, these documents are relevant to calculate Plaintiff's damages because the pre-authorization of pre-paid cards domestically while processing offshore is an artifice employed by Defendants to claim that all processing was completed offshore and, therefore, not subject to the processing agreement between Plaintiff and Defendants dealing with domestic processing. For this reason, the documents are directly relevant to the question of both damages and fraudulent concealment of the same by Defendants.

[2] As another example of Backpage's lack of good faith, Backpage argues that it has produced all Visa, MasterCard, and American Express processing statements related to Backpage or JetPay, and that no processing was conducted with other entities. Yet Backpage has not submitted an affidavit or declaration from its custodian of records stating just that.

Nevertheless, Plaintiff would have been willing to work with Backpage to choose more specific search terms that would assist in conducting a search through their database, and thereby reduce any undue burden that the subpoena as currently worded would impose and any associated costs. However, Backpage never made any such request to Plaintiff never requested to do so.

C.   **The Court Should Deny Expenses and Fees to Backpage**

FRCP 45 "explicitly contemplates the use of subpoenas in relation to non-parties." *Isenberg,* 661 F.Supp.2d at 629. "[T]ransparency and collaboration is essential to meaningful, cost-effective discovery," and a non-party's "attempt to stand outside of these tenets because of its third-party status is unpersuasive." *Apple, Inc. v. Samsung Electronics Co. Ltd.,* No. 12–CV–0630–LHK (PSG), 2013 WL 1942163, at *3 (N.D.Cal. May 9, 2013) "Although [a non-party] should not be required to 'subsidize' litigation to which it is not a party, [the non-party cannot] confuse[ ] undue burden with its obligations, once subject to a subpoena, to participate in transparent and collaborative discovery. Third-party status does not confer a right to obfuscation or obstinacy." *Id.* (citations omitted). Thus, once properly served with a subpoena, a non-party is subject to discovery obligations that the subpoena imposes, as limited by FRCP 45's protections that the non-party is entitled to invoke.

As described above, Backpage failed to provide or articulate any objections to Plaintiff concerning the subpoena during the six months it met and conferred with Plaintiff about the subpoena until Plaintiff filed its Motion to Compel last month. In fact, the first time Plaintiff learned about Backpage's objections to the subpoena was when it read Backpage's Response. Backpage did not attempt to work with Plaintiff to limit the time period of the subpoena or limit the scope to alleviate any supposed burden to Backpage. Instead, it merely attempted to secure a release of its obligations from producing all the documents in exchange for a few self-selected processing statements without making an effort to review its records and conduct a search for all

documents requested in the subpoena. It is clear that Backpage never intended to produce most of those documents. Backpage's late attempts to argue undue burden as a basis for its refusal to comply with the subpoena rings disingenuous and does not absolve it from its obligations under the subpoena.

Unusual circumstances are not present here for the Court to consider Backpage's objections. Further, the subpoena is not so overbroad to exceed the bounds of fair discovery. Indeed, Mr. Rome's letter to Liz McDougall specifically groups the requests into discrete categories and identifies the relevance of the information. *See* Dkt. No. 118, pp. 33-35. Given that Backpage has failed to act in good faith and has caused Plaintiff to bring its Motion, Backpage is not entitled to expenses and attorney fees for responding to the Motion. Instead, Plaintiff should be awarded sanctions for Backpage's refusal to comply with the subpoena.

## III.
## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court grant the Motion to (1) compel Backpage to comply with the subpoena; and (2) for sanctions against Backpage.

        Respectfully submitted,

        **David Steiner & Associates, PLC**

        BY:    */s/David P. Steiner*
              David P. Steiner
              California Bar No. 64638
              dpsartnetlaw@gmail.com
              DAVID STEINER &
              ASSOCIATES, PLC
              1801 Century Park East, Suite 1600
              Los Angeles, CA 90067
              Telephone: (310) 557-8422
              Facsimile: (310) 556-0336

                    Attorneys for Plaintiff

**LEHTOLA & CANNATTI PLLC**

BY:    */s/Patricia Beaujean Lehtola*
      Patricia Beaujean Lehtola
      State Bar No. 01997700
      plehtola@lc-lawfirm.com
      Phillip E. Cannatti
      State Bar No. 00793456
      pcannatti@lc-lawfirm.com
      Patrick C. Joost
      State Bar No. 24078759
      pjoost@lc-lawfirm.com
      LEHTOLA & CANNATTI PLLC
      5001 Spring Valley Road,
      Suite 400 East
      Dallas, Texas 75244
      (972) 383-1515 (Telephone)
      (866) 383-1507 (Facsimile)
      *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

  This is to certify that on July 22, 2016, the foregoing was served upon counsel of record in accordance with the Federal Rules of Civil Procedure as set forth below by U.S. Mail or electronic filing.

COOPER& SCULLY, P.C.
Timothy Micah Dortch
Founders Square
900 Jackson Street, Suite 100
Dallas, Texas 75202
Tel.: 214/712-9501
Fax: 214/712-9540
**COUNSEL FOR DEFENDANTS**

                 BY: */s/Eugene Rome*
                    Eugene Rome