THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CHILLY DIL CONSULTING INC.**, a Florida corporation, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:14-cv-02749-N |
| **JETPAY ISO SERVICES, LLC**, a Texas limited liability company; **JETPAY, LLC**, a Texas limited liability company; **JETPAY CORPORATION**, a Delaware corporation; and **TRENT R VOIGT**, an individual, | § § § § § § § | |
| Defendants. | § | |

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT TESTIMONY AND NEW EVIDENCE ON DAMAGES**

# TABLE OF CONTENT

**HEADING**                                                                             **PAGE**

I. INTRODUCTION…………………………………………………………..1

II. RELEVANT FACTS…………………………………………………………..2

III. ARGUMENT…………………………………………………………..4

    A. Defendants' Fraud Has Deprived Plaintiff's Expert of Sufficient Information to Formulate an Opinion as to Damages and to Supplement His Report……………………………………….…..4

    B. Defendants Alone Are to Blame for Any Alleged Shortcomings in Plaintiff's Discovery Responses ………………...…………………..7

    C. Defendants Have Intentionally Concealed Relevant and Responsive Discovery Necessary to Plaintiff's Ability to Calculate Damages…………………………………………………..8

    D. Plaintiff's Corporate Representative's Testimony Merely Speaks to Defendants' Intentional Suppression of Relevant Responsive Discovery to Conceal Their Wrongful Conduct and Avoid Their Payment Obligations to Plaintiff………………….....10

    E. Plaintiff's Inability to Provide a Basis for Calculating Its Damages in Its General Discovery Responses is Due to Defendants' Own Concealment of Relevant Documents…………....11

    F. Plaintiff Can Now Calculate Some of Its Damages Gleaned On the Sparse Information Provided by Backpage, but not Defendants………………………………….....................................12

IV. CONCLUSION……………………………………………………………...13

# TABLE OF AUTHORITIES

**STATUTE**                                                                     **PAGE**

Federal Rule of Evidence 702…………...…..................................................4

Federal Rule of Evidence 702(b)…………….................................................4

I.  **INTRODUCTION**

From the inception of this action, the above-captioned Defendants JetPay ISO Services, LLC, JetPay, LLC, JetPay Corporation, and Trent Voigt (collectively, "Defendants") have carried out a fraudulent scheme to conceal the scope of Backpage.com, LLC's ("Backpage") processing and the fees they have realized from that activity to avoid their payment obligations to Plaintiff of its rightful 50 percent share of those fees as well as a portion of the transaction fees. As detailed in Plaintiff's Emergency Motion for Leave to Amend ("Emergency Motion") and Motion for Reconsideration of the Court's Order denying that Motion, Defendants' conduct came clearly to light only in April of this year when Backpage produced 17 American Express ("AMEX") statements showing beyond a doubt that Defendants had submitted *false* summary judgment papers and *false* discovery responses, and *actively concealed* processing statements reflecting over $12 million in processing through Backpage and $703,978.75 in fees to Defendants that should have been disclosed to Plaintiff. Defendants have also actively suppressed information evidencing their wrongful schemes to (i) authorize pre-paid cards domestically against JetPay, LLC's BIN while settling them in the EU through Bank Frick, and (ii) utilize "BP Credits" issued through ostensible third parties which are actually Backpage related companies, all of which is central to Plaintiff's damages claims. (*See* Dkt. 100-4 (proposed Second Amended Complaint ("SAC")), ¶¶48-58.)

Having wrongfully concealed this information, Defendants now seek to culminate their fraud by asking this Court to exclude Plaintiff's expert testimony and new evidence on damages. Yet any delay by Plaintiff in supplementing its expert report and discovery responses is solely the product of Defendants' malfeasance in obfuscating the scope of Backpage's processing along with the extent of the fees and transaction costs Defendants have realized from that activity in order to deprive Plaintiff of the information necessary to calculate its damages. Further, even the late production from Backpage and Defendants (who produced the exact same documents as Backpage one day after Backpage's production) is still incomplete as they fail to identify the full

1

PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S
EXPERT TESTIMONY AND NEW EVIDENCE ON DAMAGES

volume of credit card transactions processed through Backpage's affiliated entities – which are also subject to Plaintiff's fee sharing agreement with Defendants – or even what transaction costs or discount rates applied, both of which are necessary to calculate Plaintiff's damages.

Plaintiff has been diligent in its prosecution of this action, and fundamental fairness dictates that Plaintiff must be allowed to complete discovery to ascertain the true facts regarding these matters so that Plaintiff's expert may make an informed opinion as to damages. Any other result would work a manifest injustice by rewarding Defendants for their unethical tactics and repeated acts of deceit in lying to Plaintiff and this Court to conceal directly relevant and responsive discovery. Wherefore, Plaintiff respectfully requests that Defendants' motion be denied.

## II.     RELEVANT FACTS

Plaintiff filed this action on July 31, 2014, alleging claims for breach of written contract; money had and received; tortious interference with existing contract; violation of the Texas Theft Liability Act; and negligence against the JetPay Defendants and their chief executive officer, defendant Trent Voigt ("Voigt"). (Dkt. No. 1.) On March 16, 2015, Plaintiff served its First Set of Requests for Production of Documents and a First Set of Special Interrogatories to Defendants. (*See* Dkt. No. 41, pp. 6-23.) On April 17, 2015, Defendants served their Objections and Responses to Plaintiff's discovery requests. (*Id.*, at pp.24-43.) After attempts to meet and confer failed to yield appropriate supplemental responses and production, Plaintiff filed a Motion to Compel and Motion for Sanctions against the JetPay Defendants on June 17, 2015. (*See* Dkt. No. 39)**.**

On October 6, 2015, Plaintiff filed its expert designation and expert report. (Dkt. No. 70.) On December 21, 2015, the Court issued its ruling granting in part and denying in part Plaintiff's Motion to Compel. (Dkt. No. 92.) Per the Court's order, on January 4, 2016, Defendants served amended discovery responses identifying by bates number which of the previously produced documents were responsive to each request for production, and an amended

2

response to special interrogatory no. 6 requiring Defendants to state "all facts regarding the process employed by you to find a processing solution for [Backpage]." (Rome Decl., ¶ 4, Exh. A.)

On or about October 5, 2015, Plaintiff served their First Set of Requests for Production and Special Interrogatories on JetPay LLC. (Dkt. No. 101, pp. 6-24.) On or about November 2, 2015, in response to an email discussion regarding Defendants filing a sur-reply to Plaintiff's Emergency Motion to Extend Trial Date and Scheduling Order Deadlines (Dkt. No. 72), Defendants' counsel attached a copy of processing statements related to AMEX transactions for Plaintiff's review, that showed a total of $1,427.10 in credit card processing. (Rome Decl., ¶ 5, Exh. B.) According to Defendants' counsel, **Defendants only received $266** "as a small fee for clearing AMEX transactions", and that "this would not be included in any residual split under any contract" with Plaintiff. (*Id*.)

On or about November 5, 2015, JetPay LLC served their responses and production to Plaintiff's First Set of Requests for Production and Special Interrogatories. (Dkt. No. 101, pp. 25-48.) In response to Plaintiff's requests regarding commissions paid to each of the Defendants for processing through Backpage or Backpage's affiliated entities, JetPay LLC responded that either no monies were received or that all documents reflecting such payments were previously produced. (*See Id*. at pp.29-30.)

In the meantime on November 5, 2015, Plaintiff served their First Set of Special Interrogatories on Voigt, the JetPay Defendants' CEO. (Rome Decl., ¶ 6, Exh. C.) On December 4, 2015, Voigt served his responses to the same, asserting that he lacks any knowledge of the information sought, but that that information was retained by the other Defendants in the action. (Rome Decl., ¶ 7, Exh. D.)

On or about January 21, 2016, Plaintiff served their second set of Requests for Production on JetPay, LLC. (Rome Decl., ¶ 8, Exh. E.) On February 19, 2016, JetPay, LLC served their responses and a document production that included heavily redacted samples of Bank Frick

3

PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT TESTIMONY AND NEW EVIDENCE ON DAMAGES

statements and commissions Defendants had paid to Plaintiff under the JetPay Solutions Ltd. agreement that is not the operating agreement between the parties. (Rome Decl., ¶ 9, Exh. F.)

On April 12, 2016, pursuant to a subpoena, Backpage made a partial production of documents to Plaintiff reflecting $12,000,000 in credit card processing, for which Defendants earned $703,908.75 from AMEX transactions. (Dkt. No. 101, pp.3, ¶15.) On April 13, 2015, Plaintiff's counsel sent a letter to Defendants' counsel explaining his intent to file the Emergency Motion to include a claim for fraud against Defendants based, in part, on the concealment of production by Defendants, and attached a red-lined and clean copy of the proposed SAC. (Dkt. No. 101, pp.4-5, ¶ 20.) The very next day, on April 14, 2016, Defendants produced the exact same documents as Backpage's April 12, 2016 production to Plaintiff. (Dkt. No. 101, pp.3-4, ¶15.)

On June 16, 2016, Plaintiff filed a Motion to Compel compliance of the Backpage subpoena. That motion is currently pending before this Court.

### III. ARGUMENT

**A. Defendants' Fraud Has Deprived Plaintiff's Expert of Sufficient Information to Formulate an Opinion as to Damages and to Supplement His Report**

Federal Rule of Evidence 702 provides that a duly qualified individual may provide opinion testimony as to "scientific, technical, or other specialized knowledge" if such information "will assist the trier of fact to understand the evidence or to determine a fact in issue." According to the rule, such evidence is limited to testimony that is both based upon sufficient facts or data and is the product of reliable principles and methods. Fed. R. Evid. 702(b). Defendants attack Plaintiff's expert report, filed on October 6, 2015, on the grounds that it offered no opinion as to damages or any methods for calculating damages. Yet as the expert report plainly states, Plaintiff's expert required additional documentation to form an opinion regarding the extent of Plaintiff's damages. (*See* Dkt. No. 70, pp. 9-16.) While that documentation exists within Defendants' control, Defendants have lied in sworn discovery

responses and submissions to this Court to fraudulently conceal those documents and deprive Plaintiff of the true facts regarding the scope of their processing on behalf of the Backpage entities and the revenues they have realized from that activity. As such, Plaintiff's expert can only supplement its report once the Court rules upon Plaintiff's Motion to Compel compliance with the Backpage subpoena (Dkt. No. 117), or when Defendants voluntarily produce all relevant documents they have been fraudulently concealing from Plaintiff and this Court.

Defendants disingenuously suggest that most of the documentation needed to calculate Plaintiff's damages was part of Plaintiff's Motion to Compel (Dkt. No. 39.), and that Defendants "promptly" produced such additional documentation following the Court's December 21, 2015 Order on that Motion. However, Defendants' suggestion ignores the fact that the Court denied the bulk of Plaintiff's Motions to Compel based on Defendants' demonstrably false representations that, "***in this case, there are no documents to inspect; therefore, "none" is the appropriate answer.***" (*See* Dkt. No. 45 p. 3, ¶1 (emphasis added).) Indeed, the Hon. Renee Harris Tolliver specifically relied on those false representations in concluding that Defendants' "response 'None' clearly indicates that there is no responsive discovery, especially in light of the explanation given in response to the motion to compel, and no further explanation is required or warranted." (*See* Dkt. No. 92, p. 3.) Defendants even moved the Court for summary judgment on the basis that Backpage did not do business with Defendants, but only did business with Defendants' European counterpart, JetPay Solutions, Ltd., which is not a party to this action. (*See* Dkt. No. 34; Dkt. No. 98, pp. 5-6.) Again, Backpage's belated production of the AMEX statements one year later unequivocally demonstrates those representations were false. As a result, Defendants' document productions to date have been so calculatedly and woefully incomplete as to deprive Plaintiff's expert of a sufficient basis to form an opinion as to damages.

Defendants' suggestion that Plaintiff has failed to offer a theory of damages, or list specific documents needed to form an opinion as to damages, is equally disingenuous. Defendants' own misconduct in intentionally withholding and concealing relevant and

responsive discovery has deprived Plaintiff of the ability to calculate damages, much less list the specific documents detailing its damages, all of which remain within Defendants' unique knowledge and control despite Plaintiff's repeated requests for the necessary categories of documents it requires. Again, on November 2, 2015, Defendants' counsel forwarded AMEX statements to Plaintiff's counsel showing a total of $266 in processing fees collected by them in connection with their processing for Backpage as the purported universe of such documents. (Rome Decl., ¶ 5, Exh. B.) According to Defendants, Plaintiff would not be entitled to a split of these fees under any contract because the fees were related to "clearing" AMEX transactions, which were specifically excluded from the parties' agreement. (*Id*.)

Yet on or about April 12, 2016, after months of stonewalling, Backpage (and two days later, Defendants) belatedly produced AMEX statements showing that Defendants had, in fact, collected $703,908.75 in unreported and concealed commissions in connection with processing AMEX transactions for Backpage, thereby directly contradicting Defendants' sworn discovery responses that no such processing was conducted and no fees were due to Plaintiff. Thus, Defendants' fraudulent concealment of documents that unquestionably should have been produced in response to the clear call of Plaintiff's discovery is the sole cause of any failure on the part of Plaintiff's expert to identify "specific documents" needed to quantify Plaintiff's damages.

Likewise, Defendants' own actions have prevented Plaintiff from filing a supplemental expert report. As discussed above, the Plaintiff's expert stated in his report that additional documentation was necessary to calculate Plaintiff's damages. Defendants assert that it "promptly" made additional discovery productions pursuant to the Court's Order regarding Plaintiff's Motion to Compel and that Plaintiff should have been able to use this information to supplement its expert report. Per the ruling, the Court ordered Defendants to provide a full response to a single special interrogatory, and to identify by bates number which of the previously produced documents were responsive to each of Plaintiff's requests for production.

Therefore, no production was made by Defendants pursuant to the Court's Motion to Compel ruling.

JetPay LLC did provide additional documents with respect to two other sets of Requests of Production served on Plaintiff. (*See* Dkt No. 101, pp. 25-48; Rome Decl., ¶ 9, Exh. F.) However, the production consisted of emails between Defendants and Backpage, heavily redacted Bank Frick statements, and a summary of commissions already paid to Plaintiff by Defendants under an agreement with JetPay Solutions Ltd that is not the operative agreement between the parties. (*Id.*) This new production failed to provide information necessary to determine Plaintiff's damages including Defendants' costs per transaction negotiated with Backpage and its related entities. Notably, JetPay, LLC's response to Plaintiff's requests regarding commissions paid to each of the Defendants for processing through Backpage or Backpage's affiliated entities, was that either no monies were received or that all documents reflecting such payments were previously produced (i.e. the $266 for AMEX transactions). (*See* Dkt. No. 101, pp.29-30.) We now know this to be a complete fabrication and was part of Defendants' scheme to conceal relevant documents from Plaintiff.

Therefore, none of the documents produced by Defendants could have assisted Plaintiff to calculate its damages and to file a supplemental expert report.[1]

## B. Defendants Alone Are to Blame for Any Alleged Shortcomings in Plaintiff's Discovery Responses

Defendants misleadingly argue that Plaintiff refused to provide deposition dates for its expert despite numerous requests by Defendants' counsel to suggest that Plaintiff refused to produce its expert for deposition. Yet the simple fact is that Defendants never noticed the

---

[1] Plaintiff is currently seeking additional documents needed to assist Plaintiff's calculation of damages through its Motion to Compel compliance of the subpoena served on Backpage that is currently pending before this Court. Until such time as the Court rules on that motion or full production is made by Backpage, Plaintiff simply will not have all the documents or information it needs to calculate its damages and submit a supplemental expert report.

7
PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT TESTIMONY AND NEW EVIDENCE ON DAMAGES

deposition of Plaintiff's expert. Had Defendants bothered to serve such a notice, Plaintiff would have complied with the notice and produced its expert for deposition. They did not.

Defendants also criticize Plaintiff's discovery responses related to its expert report as vague and failing to produce documents. Yet Plaintiff's responses plainly articulate the fact that, at the time Plaintiff's expert submitted his report on October 6, 2015, he did not have enough information to formulate an opinion as to damages due to Defendants' own refusal to produce relevant documents and information. Moreover, the expert report was filed more than two months before the Court ruled on Plaintiff's Motion to Compel, and even after that ruling, Defendants failed to produce any documents that could have assisted the expert in supplementing his report. Indeed, Defendants' false representations in sworn discovery responses, false representations to this Court in connection with Plaintiff's motions to compel, fraudulent concealment of the AMEX Statements, and continued withholding of other relevant documents, combined with Backpage's own malfeasance in withholding documents that should properly have been produced more than six months ago in response to Plaintiff's valid subpoena, have continued to deprive Plaintiff's expert of sufficient information to formulate an opinion as to damages through no fault of Plaintiff.

Thus, Defendants' claims that Plaintiff has refused to allow them to conduct necessary discovery on Plaintiff's expert are both misleading and frivolous.

## C.    Defendants Have Intentionally Concealed Relevant and Responsive Discovery Necessary to Plaintiff's Ability to Calculate Damages

Defendants' assertion that Plaintiff has received "thousands of pages of documents" belies the fact that Defendants have conspired with Backpage to stonewall Plaintiff's legitimate discovery efforts, and unjustifiably withhold and conceal documents demonstrating the true scope of Backpage's processing and the fees and transactional costs realized by Defendants in connection with that activity, thereby thwarting Plaintiff's ability to calculate its damages.

For example, in September 2015, Plaintiff served Defendants with discovery pointedly asking them to produce "[a]ll documents which evidence, refer or relate to monies paid to [Defendants] for any business activity with the Confidential Merchant." (Rome Decl., Requests Nos. 8-12.) Notwithstanding the fact that Defendants' own records demonstrate that they processed $132,159.93 for Backpage and realized associated processing fees of $10,907.23 that very same month, Defendants flatly lied and disclaimed the existence of any responsive documents or corresponding processing activity. (*See* Dkt. 101, p. 3, ¶10; Dkt. 101, p.94.) Such fabrications led the Hon. Renee Harris Tolliver to deny the bulk of Plaintiff's Motions to Compel further responses, reasoning that Defendants' "response 'None' clearly indicates that there is no responsive discovery, especially in light of the explanation given in response the motion to compel, and no further explanation is required or warranted." (*See* Dkt. No. 92, p. 3.) The patent falsity of Defendants' misrepresentations only came to light more than four months later when, on April 12, 2016, Backpage finally turned over the AMEX Statements showing that, from June 2014 through September 2015, Backpage processed ***$12,107,957.15*** in AMEX transactions for an associated processing fee to Defendants of ***$703,908.75***.

Plaintiff has every reason to believe that the belated production of these AMEX statements is the mere tip of the iceberg, and that Defendants and Backpage continue to unjustifiably conceal and withhold a host of other responsive documents demonstrating the true scope of Backpage's processing, both directly and through related entities, including with respect to Defendants' efforts to conceal the domestic nature of their processing by setting up a system where transactions were pre-authorized domestically through Defendants' BIN but settled internationally at Bank Frick.

Defendants' suggestion that Plaintiff has obtained such necessary documents from third parties and improperly withheld them from Defendants is equally misplaced. Notwithstanding the fact that Plaintiff has served various third party subpoenas, Esquire Bank is the only party to make a straightforward production of responsive documents. Bank Frick – the European bank

used by JetPay Defendants to settle Backpage's pre-paid card transactions domestically authorized through JetPay, LLC's BIN in violation of Card Brand Rules – has refused to comply with Plaintiff's subpoena. Because Bank Frick is located in Europe, Plaintiff is unable to seek the Court's assistance to compel compliance with the subpoena. Further, attempts to serve a subpoena upon Processing Partners, a processor that subcontracts with Defendants to process Backpage transactions, were unsuccessful. (Rome Decl., ¶10.). And, of course, Backpage stonewalled Plaintiff's efforts to obtain responsive documents for more than five months before producing the AMEX statements, and continues to withhold other responsive documents. Plaintiff's pending Motion to Compel compliance of the subpoena by Backpage is aimed at uncovering such wrongfully withheld documents to bring the truth to light and enable Plaintiff's expert to formulate an opinion as to damages.

D.  **Plaintiff's Corporate Representative's Testimony Merely Speaks to Defendants' Intentional Suppression of Relevant Responsive Discovery to Conceal Their Wrongful Conduct and Avoid Their Payment Obligations to Plaintiff**

Defendants point to their request that Plaintiff's corporate representative, Patricia Carlin-Weber, testify as to the specific amount of damages and the basis for calculation of those damages as purported evidence of their efforts to determine Plaintiff's damages. Defendants then criticize Ms. Carlin-Weber's inability to state an estimate of the damages incurred, or the specific documents required to assess the damages. Yet once again, it is Defendants' own wrongful conduct that is to blame for Plaintiff's inability to determine the scope of its damages. The selected excerpts of deposition testimony cited in Defendants' motion is entirely consistent with the fact that Plaintiff lacks documents sufficient to form an opinion as to the entirety of damages sought. Defendants' conspiracy with Backpage to withhold responsive documents and adopt other fraudulent strategies to conceal the domestic nature of their processing has, regrettably, hampered Plaintiff's ability to identify all the entities involved in their unlawful

processing scheme, much less determine the extent of processing they have engaged in and the extent of fees Defendants have realized through those activities.

As mentioned, Plaintiff has every reason to believe that the AMEX statements belatedly produced by Backpage in April 2016 represent a small portion of Backpage's total processing activity with Defendants. According to general payment processing statistics, AMEX transactions constitute anywhere between 5% and 10% of the total transaction volume, with the balance composed of Visa and MasterCard transactions. Based on these statistical averages, Plaintiff reasonably anticipates that Backpage's total processing with Defendants may range anywhere from $120 million to $240 million, with associated processing fees to Defendants of between $7 million to $14 million. (*See* Dkt. 101, p. 4, ¶16.) Furthermore, the AMEX Statements represent transactions for Backpage alone, and do not account for the processing conducted through its related entities (such as Payment Solutions B.V., AdTech, B.V. dba Cracker.com, Ad Reputation Solutions B.V., dba Postfastr.com), which are also subject to Plaintiff's fee sharing agreement with Defendants. Because Defendants and Backpage have concealed the identity of the various Backpage-related entities used by them to circumvent Backpage's exclusion by Visa and MasterCard and evade their payment obligations to Plaintiff, and continue to conceal the statements detailing the associated processing activity, they have calculatedly deprived Plaintiff of the ability to formulate an opinion as to its damages.

E.  **Plaintiff's Inability to Provide a Basis for Calculating Its Damages in Its General Discovery Responses is Due to Defendants' Own Concealment of Relevant Documents**

Defendants argue that Plaintiff has failed to articulate a basis for calculating damages in its initial disclosures and discovery responses and therefore its expert's testimony and new evidence of damages should be excluded. Defendants' argument fails because Plaintiff was hampered from providing this damages formula due to Defendants' concealment of documents and information from Plaintiff for the course of this two-year litigation.

Plaintiff's damages and calculations thereof are directly related to the volume of processing conducted through Backpage and its related entities, as well as the costs per transaction and discount rates agreed upon between Backpage and each of its related entities and Defendants. While Backpage has produced some of this information to Plaintiff covering certain periods, despite repeated attempts to obtain all the information requested as to all the relevant entities from Defendants (and Backpage), which we have now learned that Defendants have actively concealed during this litigation, Plaintiff still does not know (1) which of Backpage's entities processed payments with Defendants; (2) what was the volume of transactions with each of these entities; (3) the transaction costs and discount rates applied for these transactions; and (4) how much Defendants received from all such processing for all major credit card companies. Because of the number of unknown factors, it is difficult for Plaintiff to create a formula to calculate its damages.

Further, the initial disclosures and the amended discovery responses relating to Plaintiff's formula for damages were served to Defendants on December 22, 2014 and September 16, 2015, so early in the action and prior to the time that Plaintiff had uncovered much of Defendants' fraud that it really had no ability to provide a formula for damages without additional documents from Defendants, much like Plaintiff's expert.

## F. Plaintiff Can Now Calculate Some of Its Damages Gleaned On the Sparse Information Provided by Backpage, but not Defendants

However, while Defendants' fraud has successfully deprived Plaintiff of the ability to calculate its damages to date, due to some of the production by Backpage that revealed Defendants' active fraud on this Court and Plaintiff, Plaintiff can at least now calculate some of its damages. Specifically based on the statements produced by Backpage related to processing through Bank Frick between January 2014 and July 2015, Electronic Merchant Systems ("EMS") processing, and AdTech, B.V. dba Cracker.com processing, and based on a split of 70% to Plaintiff from transactions costs and processing fees with Defendants under their 2011

agreement, Plaintiff is entitled to $1,850,412.12 in Bank Frick Transaction Fees; $911,885.45 in Bank Frick Discount Fees; $100,065.00 in Bank Frick Chargeback Fees; $171,940.35 in EMS transaction fees; $5,070.00 in EMS Chargeback fees for a total of $3,215,478.29; which, reduced by $176,000 already paid to Plaintiff, equals:**$3,039,478.29**. An additional **$642,295.44** is owed on the Australian Cracker volume owed, at a minimum. (*Id.*, ¶22.)

Further, at a minimum, Defendants are processing for Cracker.com in the United States and, separately, for another related Backpage entity, Ad Reputation Solutions B.V., dba Postfastr.com. Plaintiff requested documents pertaining to this activity but both Defendants and Backpage pointedly refuse to produce them. As a result, Plaintiff's expert cannot render a decision as to these amounts through no fault of his own. (*Id.*, ¶23.)

As such, the only thing preventing Plaintiff from providing a full calculation of its damages is Defendants' fraudulent concealment of the processing numbers.

## IV.   CONCLUSION

Defendants' fraudulent suppression of information regarding the extent of Backpage's processing and the associated fees realized by Defendants has deprived Plaintiff of the facts necessary to form an opinion as to damages. Fundamental fairness dictates that Plaintiff must be afforded an opportunity to complete discovery regarding these matters before being forced to supplement its Expert Report and associated discovery responses. Defendants' suggestion that they have attempted to ascertain Plaintiff's damages numerous times is frivolous in light of Defendants' own wrongful conduct in actively concealing relevant and responsive discovery. As such, Plaintiff requests that Defendants' Motion to Exclude Plaintiff's Expert Testimony and New Evidence on Damages be DENIED.

Respectfully submitted,

**ROME & ASSOCIATES, APC**

BY:      */s/Eugene Rome*

        Eugene Rome
        California Bar No. 232780
        Erome@romeandassociates.com
        ROME & ASSOCIATES, A.P.C.
        2029 Century Park East, Suite 450
        Los Angeles, CA 90067
        Telephone: (310) 282-0690
        Facsimile: (310) 282-0691

*Attorneys for Plaintiff*

**LEHTOLA & CANNATTI PLLC**

BY:    */s/Patricia Beaujean Lehtola*
        Patricia Beaujean Lehtola
        State Bar No. 01997700
        plehtola@lc-lawfirm.com
        Phillip E. Cannatti
        State Bar No. 00793456
        pcannatti@lc-lawfirm.com
        Patrick C. Joost
        State Bar No. 24078759
        pjoost@lc-lawfirm.com
        LEHTOLA & CANNATTI PLLC
        5001 Spring Valley Road,
        Suite 400 East
        Dallas, Texas 75244
        (972) 383-1515 (Telephone)
        (866) 383-1507 (Facsimile)
        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

  This is to certify that on July 27, 2016, the foregoing was served upon counsel of record in accordance with the Federal Rules of Civil Procedure as set forth below by U.S. Mail or electronic filing.

COOPER& SCULLY, P.C.
Timothy Micah Dortch
Founders Square
900 Jackson Street, Suite 100
Dallas, Texas 75202
Tel.: 214/712-9501
Fax: 214/712-9540
**COUNSEL FOR DEFENDANTS**

                BY:  */s/Eugene Rome*
                   Eugene Rome