THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CHILLY DIL CONSULTING INC.**, a Florida corporation, | § § § § § | |
| Plaintiff, | § | |
| v. | § § | CIVIL ACTION NO. 3:14-cv-02749-N |
| **JETPAY ISO SERVICES, LLC**, a Texas limited liability company; **JETPAY, LLC**, a Texas limited liability company; **JETPAY CORPORATION**, a Delaware corporation; and **TRENT R VOIGT**, an individual, | § § § § § § § | |
| Defendants. | § | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S JULY 12, 2016 ORDER DENYING THE EMERGENCY MOTION FOR (1) LEAVE TO AMEND THE FIRST AMENDED COMPLAINT; (2) FILE A SECOND AMENDED COMPLAINT, AND; (3) TO EXTEND SCHEDULING ORDER DEADLINES**

# I.
# INTRODUCTION

In denying Plaintiff Chilly Dil Consulting, Inc.'s ("Plaintiff") Emergency Motion for Leave to Amend the First Amended Complaint ("FAC"); File a Second Amended Complaint ("SAC"); and Extend Scheduling Order Deadlines ("Emergency Motion") the Court relied heavily on Defendants Jetpay ISO Services, LLC, Jetpay, LLC; Jetpay Corporation; and Trent R Voigt's (collectively, "Defendants") assertion in their Response thereto that Plaintiff received notice in October 2015 that Defendants received fees for the processing of American Express ("AMEX") transactions for Backpage.com, LLC ("Backpage"). In its Order, the Court stated that Plaintiff failed to offer any explanation why it waited to move to amend the FAC to add new claims for fraud until May 2016 when it could have brought the claim in October 2015. Because Plaintiff was supposedly dilatory in failing to amend the FAC, the Court denied the Emergency Motion.

Plaintiff's Motion for Reconsideration ("Motion") clarifies the facts surrounding the documents produced by Esquire Bank in October 2015 that revealed Defendants' earnings from AMEX transactions, and Defendants' misrepresentations regarding the same to demonstrate why Plaintiff did not seek to amend the FAC earlier. In their Response, Defendants do not deny their misrepresentations. Instead, they claim that Plaintiff <u>should have known</u> that Defendants were hiding information and misleading Plaintiff in their discovery responses, and that when Defendants claimed that their earnings from AMEX transactions were at most $266/month, Plaintiff should have realized that Defendants were in fact concealing as much as $700,000. Further, Defendants argue that Plaintiff should have filed a motion to compel so that this information could have been uncovered. Based on this twisted logic, Defendants claim that Plaintiff could have sought to amend the FAC as early as November 2015. This proposition undermines legal ethics, professional conduct, and the federal discovery rules discouraging

1

counsel and parties to a litigation from making misleading representations to each other, the court and verified discovery responses and wasting judicial resources and attorney fees.

Defendants similarly argue that Plaintiff has not explained why it did not amend the FAC earlier to state a claim under its pre-paid card theory when it apparently knew about the emails supporting that claim as early as November 2015. Plaintiff, however, did not have sufficient facts to support its claim at that time, but once it received confirmation from Backpage in or about April 2016 as to those facts, Plaintiff sought leave to amend the FAC.

Defendants cannot claim any prejudice if the Court grants Plaintiff's Motion and gives Plaintiff leave to amend the FAC, as Defendants are the ones who repeatedly concealed evidence and made blatant misrepresentations to Plaintiffs and the Court that has caused Plaintiff to seek amendment to the FAC this late in the litigation. If anything, it is Plaintiff who has been prejudiced by Defendants' unethical litigation and discovery practices. If the Emergency Motion remained denied, it would be a manifest injustice to Plaintiff and an encouragement to Defendants to engage in their unscrupulous behavior moving forward in future litigation.

## II.
## LEGAL ARGUMENT

A.  **Plaintiff Has Demonstrated Good Cause for Not Seeking Leave to Amend the FAC in November 2015**

In their Response to the Motion, Defendants argue that Plaintiff knew as early as October 2015, when Esquire Bank produced documents to Plaintiff, that Defendants received fees from Backpage for AMEX transactions, and that Plaintiff therefore could have sought leave to amend the FAC at that time to add the new claim for fraud. Defendant's argument fails for several reasons.

2

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S JULY 12, 2016 ORDER DENYING THE EMERGENCY MOTION FOR (1) LEAVE TO AMEND THE FIRST AMENDED COMPLAINT; (2) FILE A SECOND AMENDED COMPLAINT, AND; (3) TO EXTEND SCHEDULING ORDER DEADLINES

1. <u>*Defendants Misrepresented to Plaintiff That They Only Received a Negligible Amount of Fees from Backpage for AMEX Transactions*</u>

Although Plaintiff believed that Defendants earned commissions from processing $27 million in transactions for Backpage based upon the Esquire Bank production, on November 2, 2015, Defendants counsel sent an email to Plaintiff's counsel attaching the AMEX statements in question and explaining that the amount earned by Defendants were not commissions but simply fees of an insignificant amount paid to JetPay LLC for clearing AMEX transactions. (Dkt. No. 142, p. 29.) Further, in their Sur-Reply to Plaintiff's Motion to Extending Order Deadlines filed on November 4, 2015, Defendants explained how AMEX does not use an acquiring bank like Visa and MasterCard for processing credit card transactions:

> AMEX acquires its own transactions, therefore there is no pricing set by JetPay; it is set by AMEX. For Merchants to be paid, AMEX must wire the funds to a bank. JetPay directed them to Esquire Bank, but Esquire Bank was not the acquiring bank for Confidential Merchant funds and it did not process the funds on behalf of AMEX. In essence, AMEX was using this as a bank account to hold its own money and Esquire Bank was not taking on the liability normally associated with an acquiring bank

(Dkt No. 85-3, p. 6.) Defendants further stated how much Defendants received from Backpage to clear AMEX transactions, using Esquire Bank by way of example:

> ***JetPay received approximately $266.00*** for three (3) months of directing funds to Esquire Bank on behalf of AMEX. In March 2013, there were six (6) authorizations, so JetPay made $0.90 cents. In April 2014, $36,000 was transferred, JetPay made $265.00 and there were three (3) chargebacks that totaled $343.20. In May 2014, there was a negative processing volume of $(1,219) and eleven (11) chargebacks that totaled $1,105.70. ***Agents are liable for chargebacks, which would mean that if Chilly Dil's theory was correct, they would actually owe money***."

(*Id*. at p. 7 (emph. added).)

In essence, per Defendants, the amounts earned by them to clear AMEX transactions in total is almost zero regardless of whether the payments were processed through Wells Fargo or

3

Esquire Bank. Therefore, the amount Plaintiff could claim as damages for these transactions would be *zero*, which is less than the attorney fees it would have to expend to seek leave to amend the FAC.

Further, in its responses to Requests for Production served on November 5, 2015, JetPay LLC attested that all documents reflecting monies paid to it for any business activity with Backpage had already been produced. (*See* Dkt. No. 101, p. 29, Response to RFP No. 7.) This would necessarily include monies earned from the processing or clearing of AMEX transactions. Therefore, given that Defendants apparently received little or no money from AMEX transactions based on their representations, including their verified discovery responses, Plaintiff would have no damages to claim for those transactions. Thus, it did not make legal or economic sense for Plaintiff to seek leave to amend the FAC to add a claim for fraud at that time. Notably, as stated in the Motion, in September 2015, just before Defendants made the above representations of their almost negative earnings, they received $10,907.23 in fees from Backpage for AMEX transactions.

The effect of JetPay's representations is two-fold: (1) JetPay expressly informed Plaintiff that it made no money from the AMEX transactions; and (2) JetPay indicated that it had already produced documents related to those transactions, thereby leading Plaintiff to the only rational conclusion that could be reached, i.e. that all documents were produced. Under these facts, no motion to compel could be contemplated as useful, which is exactly what Defendants designed all along. In fact, JetPay simply and conveniently omitted to produce documents showing $12 million in processing and over $700,000 in processing fees. There is no conceivable way Plaintiff could have discovered this processing given the indication that a complete production had been made, other than to obtain the entirety of documents from a third party – Backpage – which itself made extensive efforts to conceal same until April of 2016. Plaintiff cannot and should not be faulted for this deliberate and deceptive conduct by Defendants and Backpage.

4

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S JULY 12, 2016 ORDER DENYING THE EMERGENCY MOTION FOR (1) LEAVE TO AMEND THE FIRST AMENDED COMPLAINT; (2) FILE A SECOND AMENDED COMPLAINT, AND; (3) TO EXTEND SCHEDULING ORDER DEADLINES

Defendants next argue that under their theory of the case, Plaintiff is simply not entitled to the earnings from AMEX transactions.[1] Thus, in their discovery response cited above, they also included a relevancy objection. (*See Id.*)  This objection was part of the same blank objections asserted to virtually every request set forth in Set One of Plaintiff's Requests for Production to JetPay, LLC. (*Id.*, pp. 27-42.)  According to Defendants, Plaintiff should have challenged this relevancy objection through a motion to compel, which may have eventually revealed the approximately $700,000 concealed by Defendants. (*See* Dkt. No. 145, ¶7.)  In other words, Defendants are blaming Plaintiff for believing Defendants' misleading representations, and for failing to waste judicial resources and expend unnecessary attorney fees to unveil this fraud through a discovery motion.  Such a position is so ridiculous to bear any comment.

Regardless of what their theory of the case is, Defendants were required to produce the documents reflecting the amounts earned for AMEX transactions under the broad federal discovery rules.  If they believed that the documents were irrelevant, they could have produced the documents that they chose to conceal and later contested their relevance to prevent their inclusion at trial or otherwise challenge their contents as inapplicable to this case.  Instead, Defendants chose to mislead the Court and Plaintiff and to conceal relevant evidence by making a partial production until, without elaboration, Defendants produced the entirety of the documents in April 2016.  Their choice to conceal the documents has caused a waste of the Court's time and resources and has delayed resolution of this action.

---

[1] Defendants point to the Merchant Application submitted by Backpage to JetPay showing that Backpage already had an account with AMEX's Merchant Department in support of its theory of the case, and so Plaintiff is not entitled to any fees related to those transactions. This application is of no moment.  First, by JetPay's own admission, the application was rejected by JetPay.  Second, there is no question that JetPay earned fees from the AMEX transactions. Plaintiff was entitled to a split of whatever was earned by ***JetPay*** from Backpage due to Plaintiff's referral of Backpage to JetPay.  Finally, under the Breach of Oral Contract, Plaintiff is entitled to a portion of any fees earned by JetPay for Backpage transactions, regardless of the cred card company behind the processed transactions, i.e. Visa, MasterCard, Discover, Diners Club or AMEX.

5

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S JULY 12, 2016 ORDER DENYING THE EMERGENCY MOTION FOR (1) LEAVE TO AMEND THE FIRST AMENDED COMPLAINT; (2) FILE A SECOND AMENDED COMPLAINT, AND; (3) TO EXTEND SCHEDULING ORDER DEADLINES

> 2. *Plaintiff Brought the Emergency Motion as Soon as It Was Able to Ascertain the Legitimacy of Its Claim*

Defendants argue that in addition to the AMEX transactions, Plaintiff became aware in November 2015 of Defendants' and Backpage's scheme where pre-paid cards used on Backpage's website were authorized domestically against JetPay, LLC's BIN but settled in the E.U. through Bank Frick – all in direct violation of Visa and MasterCard Rules – to evade JetPay, LLC's payment obligations to Plaintiff. However, Plaintiff could not have brought a fraud claim at that time based upon this pre-paid card theory against Defendants because it did not have sufficient facts yet to support that claim.

The documents produced by JetPay LLC on November 5, 2015 included two or three pages of emails between Carl Ferrer and Trent Voigt suggesting that there was some underhanded scheme involving pre-paid cards in place as well as an attempt to circumvent Visa and MasterCard rules. However, it was unclear based on the emails what were the details of this scheme. Without any facts to support a claim for fraud based on this scheme, Plaintiff could not seek leave to amend the FAC. If it did, the Court would deny its motion for lack of any basis or Defendants would have successfully moved to dismiss that claim. Moreover, at the time Plaintiff received the production from JetPay, LLC, it had already pending before this Court a motion for leave to amend the original complaint to add a cause of action for breach of oral contract. (*See* Dkt. No. 76, 83, 89.) It could not seek leave to amend again without obtaining further facts to support its claim.

The more prudent course of action was to conduct discovery to determine if the pre-paid card theory for fraud had any validity. Plaintiff did this by serving a subpoena on Backpage and discovery on Trent Voigt, CEO of JetPay LLC. While Voigt stonewalled Plaintiff by serving non-substantive responses (Dkt No. 143, pp. 46-55), Backpage admitted that it had documents showing additional processing revenue. Although Backpage failed to produce correspondence

6

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S
JULY 12, 2016 ORDER DENYING THE EMERGENCY MOTION FOR (1) LEAVE TO AMEND THE FIRST
AMENDED COMPLAINT; (2) FILE A SECOND AMENDED COMPLAINT, AND; (3) TO EXTEND
SCHEDULING ORDER DEADLINES

that would flesh out this scheme by conditioning the production to a valid subpoena upon Plaintiff's agreement to forego bringing any claims against Backpage whatsoever, Backpage's confirmation on April 2016 provided Plaintiff with enough facts to support its fraud cause of action against Backpage and Defendants.

As such, Plaintiff sought leave to amend the SAC to add its pre-paid card theory as soon as it had sufficient facts to support that claim.

### B.   Defendants Would Not Be Prejudiced If the Court Granted Plaintiff's Motion

Defendants argue that it will be prejudiced if the Court grants Plaintiff leave to amend the FAC because it will incur significant costs to reopen discovery so late in the litigation. Yet, it was Defendants that concealed relevant, discoverable information of the approximately $700,000 earned from AMEX transactions alone, and misled Plaintiff and the Court as to their existence. Defendants' culpability is further underscored by the fact that they finally produced documents reflecting these earnings on April 14, 2016, two days after the exact documents were produced by Backpage, and one day after Plaintiff's counsel notified Defendants' counsel that of his intent to file the Emergency Motion to include a claim for fraud against Defendants based, in part, on their concealment of the AMEX transactions. (Dkt. No. 101, pp.4-5, ¶ 20.)

Indeed, if anyone would be prejudiced it would be Plaintiff if the Motion were denied. Due to Defendants bad faith discovery tactics in this action, Plaintiff has been denied the ability to ascertain the extent of its damages and has only been able to uncover additional claims against Defendants so late in the litigation. To deny Plaintiff's Motion would only encourage Defendants and their counsel to engage in such behavior in future litigation before this Court.

Plaintiff will certainly suffer a manifest injustice if it is not given leave to amend the FAC to add its new claims, and if the Court does not allow discovery to be reopened so that Plaintiff may take Defendants' depositions. Not only will it be deprived of asserting its legitimate claims

7

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S JULY 12, 2016 ORDER DENYING THE EMERGENCY MOTION FOR (1) LEAVE TO AMEND THE FIRST AMENDED COMPLAINT; (2) FILE A SECOND AMENDED COMPLAINT, AND; (3) TO EXTEND SCHEDULING ORDER DEADLINES

against Defendants, but also it would be denied the opportunity to depose Defendants about these documents, which in turn impair Plaintiff's preparation for trial.

For these reasons, Defendants will not suffer any prejudice whether or not the Motion granted.

### C. Defendants Have Repeatedly Concealed Relevant Documents to Assist Plaintiff in Calculating Damages

In a last ditch effort, Defendants attempt to draw a very tenuous connection between Plaintiff's discovery of the approximately $700,000 of earnings concealed by Defendants and the fact that Plaintiff has not yet amended its damages disclosures and expert report to draw the conclusion that Plaintiff cannot establish any damages. Regardless of the nonsensical conclusion, as Plaintiff has argued in its Response to Defendants' Motion to Exclude Plaintiff's Expert Testimony and New Evidence on Damages, that it has not amended its damages disclosures and expert report because it has pending before this Court a motion to compel compliance of the subpoena served on Backpage to obtain additional documents needed to assist Plaintiff's calculation of damages. (*See* Dkt No. 141, fn. 1.) Until the Court rules on that motion to compel or Backpage makes a full production, Plaintiff simply will not have all the documents or information it needs to calculate its damages and submit a supplemental expert report. As with the documents produced by Backpage concerning the AMEX transactions, Defendants have these same documents that Plaintiff seeks in its possession but have either refused to produce them or denied their existence.

It is axiomatic for Defendants to evade producing documents for Plaintiff to calculate damages, and then claim that Plaintiff has no damages because it has not provided a damages amount. The bottom line remains that Defendants' bad faith acts in this litigation has caused unnecessary delay in resolution of this action, has wasted this court's time and judicial resources, and has caused Plaintiff to incur unnecessary attorney fees.

8

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S JULY 12, 2016 ORDER DENYING THE EMERGENCY MOTION FOR (1) LEAVE TO AMEND THE FIRST AMENDED COMPLAINT; (2) FILE A SECOND AMENDED COMPLAINT, AND; (3) TO EXTEND SCHEDULING ORDER DEADLINES

**D.    The Second Amended Complaint and the Emergency Motion for Leave to Amend Include a Number of Newly-Discovered Facts Unaddressed by the Court's Ruling or Defendants' Response**

Separate and apart from the AMEX processing fees, the Emergency Motion and the proposed SAC contained extensive allegations of newly discovered activity that were not addressed by Defendants in their Response to the Emergency Motion or the Court in its Order denying that motion. Specifically, Plaintiff identified newly discovered activity by and between Defendants and Backpage and its related companies that yielded processing fees that Defendants omitted to share with Plaintiff. The following allegations, as referenced in the Emergency Motion, are quoted directly from paragraphs 53 to 57 of the proposed SAC:

> 53.    Chilly Dil is further informed, believes and based thereupon alleges that since being terminated by the Associations in June of 2015 [http://www.chicagotribune.com/news/ct-sheriff-prostitution-visa-mastercard-met-20150630-story.html], Backpage has implemented a new methodology that allows it to charge users for posting on its website. This approach entails use of "BP Credits" through ostensible third parties. Specifically, a user wishing to post on Backpage cannot make a direct payment on the site due to the Associations' termination of Backpage. However, such a user can visit a third party site – that is not blocked by Visa and MasterCard – to purchase credits which can thereafter be redeemed on the Backpage website. These "BP Credits" are same as money and are used accordingly.
>
> 54.    Critically, Chilly Dil is informed and believes and based thereupon alleges that these alternative payment methods are, at least in part, supported by JetPay, LLC, which would create an obligation on JetPay, LLC's part to pay commissions to Chilly Dil for processing undertaken, as required under the 2011 Agreement. No such payments have been made.
>
> 55.    Further still, Backpage or is now a subsidiary of a number of companies, among them Doe 1, Postfastr and Cracker. Plaintiff is informed and believes and thereupon alleges that each of these companies is processing through JetPay. The website postfaster.com is, basically, a copy of Backpage and functions in the same way, with ads organized by city and country. Postfastr.com is owned and managed by Ad Reputation Solutions B.V., a Dutch limited liability company. Further, defendant AD Tech, B.V., is a Dutch limited liability company which, according to public filings operates from the same address as Backpage: 2501 Oak Lawn Ave., Suite 700, Dallas, Texas, 75219. AD Tech, B.V. owns and operates the website cracker.com, which is a website that has similar classifieds and personal ads as Backpage for a different geographic region and is an affiliated

9

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S JULY 12, 2016 ORDER DENYING THE EMERGENCY MOTION FOR (1) LEAVE TO AMEND THE FIRST AMENDED COMPLAINT; (2) FILE A SECOND AMENDED COMPLAINT, AND; (3) TO EXTEND SCHEDULING ORDER DEADLINES

company of Backpage, as disclosed to Patricia during the underwriting of Backpage.[2]

56.     With Backpage's processing cut-off by Visa and MasterCard, it has developed a number of approaches aimed at getting around the processing restrictions. For instance, any credits purchased on Postfastr – which is not blocked – immediately funds the credits available to users on Backpage. So the practical effect is that users can pay for Backpage posts by buying credits on its related site. Yet again, Plaintiff is entitled to but does not receive any payment in connection with this structure developed by JetPay, LLC and Backpage. Despite the fact that these companies are processing transactions and, upon information and belief, are doing so through the JetPay Defendants, Plaintiff has not been paid any referral fees on Postfastr or Cracker volume. Plaintiff is entitled to those fees.

57.     Plaintiff is further informed and believes and based thereupon alleges that Backpage is administering various websites that allow those wishing to post on Backpage to purchase credits that can, thereafter, be redeemed on the Backpage website. For instance, sites like www.buybpcredits.com and www.backpagecredits.com (the "Credit Websites") allow users to purchase Backpage credits on those websites. However, the instant such a credit is debited on Backpage, the user is immediately prompted to add credits on these Credit Websites. Yet again, Plaintiff is not being paid referral fees on the transactions consummated through these channels.

(Dkt No. 100-4, ¶¶ 53-57)

These activities by Defendants and Backpage have absolutely nothing to do with AMEX transactions. Yet, each of these mechanisms generates substantial revenue for Defendants who have not paid Plaintiff a cent from these transactions. Defendants, for their part, conveniently omitted to comment upon these items in their Response to the Emergency Motion. Each identified newly discovered activity constitutes a basis for amendment.

### III.
### CONCLUSION

Plaintiff has established good cause to demonstrate why it could not seek leave from the Court to amend the FAC at an earlier time than when it filed the Emergency Motion in May 2016. Plaintiff requests that the Court grant Plaintiff's Motion, reopen discovery, and finally put a stop to Defendants bad faith conduct to Plaintiff and to the Court.

---

[2] With respect to Cracker.com, in its production in April of 2016, Backpage turned over documents showing considerable receipts for Australia volumes alone. Yet again, not a cent of the fees paid to Defendants were shared with Plaintiff.

10

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S JULY 12, 2016 ORDER DENYING THE EMERGENCY MOTION FOR (1) LEAVE TO AMEND THE FIRST AMENDED COMPLAINT; (2) FILE A SECOND AMENDED COMPLAINT, AND; (3) TO EXTEND SCHEDULING ORDER DEADLINES

Respectfully submitted,

**ROME & ASSOCIATES, A.P.C.**

BY: _____/s/Eugene Rome_____
      Eugene Rome
      California Bar No. 232780
      erome@romeandassociates.com
      ROME & ASSOCIATES, A.P.C.
      2029 Century Park East, Suite 450
      Los Angeles, CA 90067
      Telephone: (310) 282-0690
      Facsimile: (310) 282-0691

**LEHTOLA & CANNATTI PLLC**

BY: _____/s/Patricia Beaujean Lehtola_____
      Patricia Beaujean Lehtola
      State Bar No. 01997700
      plehtola@lc-lawfirm.com
      Phillip E. Cannatti
      State Bar No. 00793456
      pcannatti@lc-lawfirm.com
      Patrick C. Joost
      State Bar No. 24078759
      pjoost@lc-lawfirm.com
      LEHTOLA & CANNATTI PLLC
      5001 Spring Valley Road,
      Suite 400 East
      Dallas, Texas 75244
      (972) 383-1515 (Telephone)
      (866) 383-1507 (Facsimile)
      *Attorneys for Plaintiff*

11

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S JULY 12, 2016 ORDER DENYING THE EMERGENCY MOTION FOR (1) LEAVE TO AMEND THE FIRST AMENDED COMPLAINT; (2) FILE A SECOND AMENDED COMPLAINT, AND; (3) TO EXTEND SCHEDULING ORDER DEADLINES

## CERTIFICATE OF SERVICE

This is to certify that on August 17, 2016, the foregoing was served upon all counsel of record in accordance with the Federal Rules of Civil Procedure by ECF.

BY: /s/Eugene Rome
Eugene Rome